**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| PAMELA G. CAPPETTA )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>GC SERVICES, LP )<br>)<br>  Defendant. )<br>_____ ) | Civil Action<br>No. 3:08cv288 |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
<u>HER MOTION FOR LEAVE TO AMEND</u>**

The Defendant's opposition to Plaintiff's motion to amend her Complaint attacks each of the claims found in Plaintiff's first Amended Complaint, as if these consumer protection statutes contained some ambiguity as to their enforceability, or were on the cutting edge of the law.

While it accuses the Plaintiff of "bad faith" for having the temerity to move to amend her Complaint consistent with their joint letter to the Court, and this Court's August 11, 2008 order which resulted, the Defendant itself has filed a brief which skirts its Rule 11 obligations and that would have this Court consider whether the Defendant is truly a "person" pursuant to CROA, or whether Plaintiff has properly alleged that the Defendant used a report from a "consumer reporting agency" despite the numerous references to the same through the First Amended Complaint.

In short, and despite the very liberal Rule 15(a) standard which governs motions such as this, the Defendant has chosen to make every possible argument that it can creatively craft, apparently in an effort to keep the core issues in flux for as long as possible and run out the clock in discovery. The Plaintiff regrets that the Defendant has chosen to impose on the Court in this fashion and will address each of its points as succinctly as possible.

# ARGUMENT

**I.   The Plaintiff has properly alleged a claim against the Defendant pursuant to the Texas Debt Collection Act.**

The Defendant argues that when a court exercises supplemental jurisdiction over state law claims, federal courts must apply the choice of law principles of the forum state in determining which law governs those claims (but incorrectly cites *Klaxon* which relates to cases predicated on diversity jurisdiction), and then attempts to reach the result that because this case is pending in a federal court situated in Virginia, this Court may only exercise supplemental jurisdiction over claims arising from Virginia law.  However, there is a simple and fundamental problem with the Defendant's analysis – there simply is no conflict of laws or choice of laws determination to be made here.

The TDCA claim alleges multiple commissions of a unique statutory tort enacted by the Texas legislature in its regulation of Texas based debt collectors.  The Defendant is headquartered in Houston and is therefore regulated by this statute.  As there is no statutory limitation as to where this statute may be enforced, the Defendant is subject to suit in any forum in which a Court has personal jurisdiction over it.

On brief, the Defendant appears to confuse the enforcement of a statutory tort with the enforcement of a common law tort.  A statutory tort is a unique creation of the legislature of a specific jurisdiction in the exercise of regulating businesses within its state or protecting its consumers.  A state's consumer protection statutes can have the effect of accomplishing one or the other of these purposes, or both.  In this case, Plaintiff has not alleged a common law tort such as intentional infliction of emotional distress, or intrusion upon seclusion, for example, which would require the Court to make a threshold determination of where the "wrong" occurred, and subsequently, the requisite elements of that claim as developed through disparate Texas and Virginia case law. Instead, each of the five claims found in the First Amended Complaint seeks to enforce a discrete and unique state or federal consumer protection statute.  It

is the statutes themselves that provide the definitions of the regulated entities and the prohibited conduct.

Additionally, Congress took steps when enacting the federal FDCPA to acknowledge the simultaneous enforceability and non-preemption of state laws that regulate debt collectors, to the extent that the state laws are not inconsistent with the provisions of the federal statute, and in that instance, are only pre-empted to the extent of the inconsistency.  No other limitations are imposed.  Specifically, the FDCPA provides that "[f]or purposes of this section, a state law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter".  15 U.S.C. §1692n.  The Texas statute offers considerable additional protection and remedies to consumers over and above the remedies found within the FDCPA, including for example, a provision that a consumer may recover treble damages upon a finding of a willful violation under the parallel remedies provision of the broader Texas UDAP statute, and providing for a $100 floor for statutory damages.  Texas Finance Code §392.403(e).  Thus, the simultaneous prosecution of both state and federal statutes that regulate debt collectors was expressly contemplated by Congress.

It is remarkable that the Defendant argues that the Plaintiff may not enforce this statute against it, given that the Defendant has acknowledged that it is subject to the Act.  The TDCA claim as pled in the First Amended Complaint alleges the commission of acts by the Defendant which constitute violations of this statute, crafted by the Texas legislature in the exercise of its inherent right to prevent criminal activity and to regulate the conduct of debt collectors, such as GC Services - headquartered squarely in downtown Houston, Texas - as to their contacts with "consumers" and "persons".  Texas Finance Code §392.001.  Notably, the TDCA requires that:

```
(a) A third-party debt collector or credit bureau may not engage in
debt collection unless the third-party debt collector or credit
bureau has obtained a surety bond issued by a surety company
authorized to do business in this state as prescribed by this
section. A copy of the bond must be filed with the secretary of
state.
```

**3**

```
(b) The bond must be in favor of:

    (1) any person who is damaged by a violation of this chapter;
    and (2) this state for the benefit of any person who is damaged by
    a violation of this chapter.

(c) The bond must be in the amount of $10,000.
```

Texas Finance Code §392.101 (emphasis added)

Despite the creative position adopted by its counsel for purposes of this motion, the Defendant has apparently contemplated that it was subject to this statute, given that it posted the bond required by the TDCA[1] with the Texas Secretary of State, File Number 20030160, listing its business address as "6330 Gulfton, Houston TX 77081" and its Houston phone number as (713)777-4441.

It is also noteworthy that the clear statutory language here dictates that the Act may be enforced by "any person damaged". This theme is prevalent throughout the statute in that it consistently uses the phrase "any person" in defining the prohibited conduct, and the rights of consumers to enforce the Act. For example, the Texas legislature did not choose to limit its application to "any Texas resident", "person with a Texas mailing address", or any other similar variation that appears in other similar state consumer protection statutes, despite that it clearly knew how to do so. See, e.g., Texas Bus. & Comm. Code, §35.121 (limiting definition of regulated matchmaking organizations to those that offer services to Texas residents); Texas Bus. & Comm. Code §91.053 (requiring car rental companies to provide notice to Texas residents regarding damage waivers); Texas Insurance Code §83.104 (providing remedies to Texas residents for violations of cease and desist orders).

The restriction that the Defendant urges, presumably that the Act should only apply to debt collectors situated in Texas who collect debts from consumers who are also physically in Texas at the time of the collection attempts, is nowhere to be found within the statute's

---

[1] The records relating to the filing of this bond may be found at:
**http://direct.sos.state.tx.us/debtcollectors/DCSearch.asp**

4

definitional language.  Id.   Courts in a variety of jurisdictions have found in a variety of contexts that a given state's consumer protection laws are properly applied to out-of-state victims, barring some geographical or residential limitation in the statute.  See, e.g., Perry v. Household Retail Services, Inc., 953 F.Supp. 1370 (M.D. Alabama 1996)(holding that the Illinois Consumer Fraud and Deceptive Business Practices Act is not limited solely to the protection of Illinois residents); Cirone-Shadow v. Union Nissan of Waukegan, 1995 WL 238680 (N.D. Illinois 1995)(finding that the Illinois Consumer Fraud Act contains no geographical limitations and prohibits fraud in the conduct of any trade or commerce); Fry v. UAL Corporation, 136 F.R.D. 626 (N.D Illinois 1991)(holding that the Illinois Consumer Fraud Act was enforceable by non-residents, given that the Act prohibits fraud "in the course of any trade of commerce"); Brown v. Market Dev., Inc., 322 N.E.2d 367, 368 (Ohio, 1974)(concluding that the intention of the Ohio Consumer Sales Practices Act was to prohibit and to provide civil remedies to enforce the prohibition of deceptive and unconscionable acts and practices by Ohio suppliers in connection with consumer transactions irrespective of the location of the consumer, whether within or outside Ohio).

Accordingly, as the TDCA contains no definitional limitations that would exclude the Plaintiff from its coverage, and as this Court may properly exercise personal jurisdiction over this Defendant, it should find that the Plaintiff has properly stated a claim pursuant to the Texas Debt Collection Act.

**II.     The Plaintiff has properly alleged a claim against the Defendant pursuant to the Credit Repair Organizations Act and the Virginia Credit Services Businesses Act.**

The Defendant contends that the Plaintiff's allegation that it is a "person" as defined by the CROA fails as a matter of law.  (Opp. Br. at 5).  This argument is nothing short of incredulous.  The statute regulates both "credit repair organizations" and "persons".  The statute does not define the word "person".  The dictionary defines the word "person" as:

```
Law. a human being (natural person) or a group of human beings, a
corporation, a partnership, an estate, or other legal entity (artificial
```

**5**

`person or juristic person) recognized by law as having rights and duties.`

Random House Unabridged Dictionary, 2006.

As the Defendant is clearly a legal entity (specifically, a limited partnership) recognized by law as having rights and duties, it is a "person". This is not a difficult analysis. The statute prohibits "persons" from making false statements to consumer reporting agencies which regard a consumer's credit worthiness, credit standing or credit capacity. The Complaint alleges that the Defendant made false statements to at least two consumer reporting agencies, Experian and Lexis-Nexis. These false statements would include the certifications required by the FCRA as to the Defendant's permissible purpose for accessing the Plaintiff's credit report.[2] The Defendant's opposition brief reveals the certification that the Defendant will claim that it made regarding the Plaintiff. It will apparently later argue that it certified to the credit reporting agencies that it had a permissible purpose pursuant to 15 U.S.C. §1681b(a)(3)(A) for accessing the Plaintiff's credit file on at least the two occasions that Plaintiff know of at this early stage.

However, tellingly, the Defendant glosses over the very language of the statute on brief -- coyly phrasing the supposed permissible purpose as merely "the collection of an account" (Opp. Br. at 12). The Defendant apparently would seek to mislead the Court into believing that the FCRA permits any entity to obtain a consumer report regarding any individual that it wants, providing that it is attempting to collect on an account from another arbitrary person. However, the FCRA isn't as forgiving as the Defendant might wish.

Instead, it requires that an entity that seeks to use a consumer report must certify its permissible purpose. The full permissible purpose upon which the Defendant apparently relies is that the Defendant "intend[ed] to <u>use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished</u> and involving the extension

---

[2] As discovery has just opened, the Plaintiff will soon learn the content of other statements made by the Defendant to consumer reporting agencies regarding her. Nonetheless, she has certainly satisfied her Rule 8 pleading obligations.

of credit to, or review or collection of an account of, the consumer". 15 U.S.C. §1681b(a)(3)(A) (emphasis added).  If the Defendant certified to any consumer reporting agency that it had a permissible purpose under this section to obtain the Plaintiff's credit report, then the Defendant made a false statement to the consumer reporting agency.  Certainly, a statement that the Plaintiff was subject to the collection of an account which she owed and that she failed to pay would bear on her credit worthiness, credit standing or credit capacity, thus bringing the conduct of this "person" within the purview of the CROA.

The Plaintiff will also seek to prove that the Defendant's conduct in this case brings it within the definition of a "credit repair organization" and a "credit services business".  The CROA does not exclude debt collectors, although Congress certainly could have included such an exclusion if it desired. The Plaintiff has alleged that the Defendant is a "credit repair organization" and that this Defendant provided credit advice to her over the phone, for example, stating that her failure to pay the account would result in the placement of a collection notation which would have "the same effect on her credit score as a bankruptcy", and further, that she could maintain her immaculate credit rating by paying the money.  The crux of the issue is that the Defendant offered advice to the Plaintiff regarding her credit score and Plaintiff was told that if she paid money to the Defendant, the result would be a higher credit score than if she did not pay the money.  The Defendant cites to a handful of cases which hold that a debt collector does not violate the act merely by collecting money, but the facts of this claim are much different and stronger than those of the White and Plattner Plaintiffs.

First, this Plaintiff never had an obligation to pay this debt in the first place, to the Defendant or anyone else for that matter.  By contrast with the White decision and adopting its language, there was no request, reasonable or otherwise, that Plaintiff pay her own bill.  She was being threatened -- and truly extorted -- by the Defendant.  The sole lever or mechanism for extracting her hard-earned money from her was that if she did not pay the money, it had the

7

power to unilaterally destroy her otherwise pristine credit rating.  However, if she paid the money, the Defendant would not pull the trigger.  Thus, much like a loan shark's "associate" in a back alley, the Defendant not only provided her specific "advice" regarding the quantitative effect on her credit score if she did not pay, but it also promised a better credit score in exchange for payment.[3]  Thus, while it is clearly a "person", it also falls into the definition of a "credit repair organization" as well as a "credit services business" for purposes for the CROA and VCSBA, respectively.  In all regards, Plaintiff has certainly alleged the same, which is sufficient to satisfy her Rule 8 burden at this posture of the case, in any event.

### III. The Plaintiff has properly alleged a claim against the Defendant pursuant to the Fair Credit Reporting Act.

The Plaintiff has discussed the Defendant's permissible purpose argument above in conjunction with its false certification to at least Experian and Lexis-Nexis (if not others) regarding the same for purposes of the CROA claim, and will not belabor the point.  However, it is unclear as to why the Defendant would argue that the Plaintiff must prove that the Defendant is a <u>consumer reporting agency</u>, other than its failure to understand the interplay between 15 U.S.C. §1681b and §1681b(f).  The Plaintiff has alleged that the Defendant used one or more consumer reports that regarded her, including the reports that it obtained from Experian and Lexis-Nexis, and that it did so without a permissible purpose. (Compl at ¶7-10, 76).  She does not allege that the Defendant is a consumer reporting agency, because she is not required to.  Her claim alleges a violation of §1681b(f) which relates to "users" of consumer reports, and she has alleged that the Defendant used at least two consumer reports which regarded her when it had no permissible purpose to do so.  These allegations are sufficient to satisfy the Plaintiff's pleading

---

[3] The only distinction between the two scenarios is that while one might recover from a physical assault relatively quickly, the Defendant was threatened her with a financial assault which would affect nearly every area of her life for at least the next 7 and one-half years.

**8**

standard pursuant to Rule 8 which requires only that the pleader set forth a short and plain statement of the claim showing the pleader is entitled to relief.  Fed.R.Civ.P 8(a)(2).

The Plaintiff submits that she has far exceeded her Rule 8 obligations in her proposed First Amended Complaint as to each of the five claims at issue, and moves that the Court grant this motion and order the same to be filed.

Respectfully submitted,
**PAMELA G. CAPPETTA**,


_____/s/_____
Matthew J. Erausquin, VSB#65434
Leonard A. Bennett, VSB#37523
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
3615-H Chain Bridge Road
Fairfax, VA  22030
Tel:    703-273-7770
Fax:    888-892-3512
matt@clalegal.com

## CERTIFICATE OF SERVICE

      I hereby certify that on the 2nd day of September, 2008 I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:

Rebecca H. Royals
Butler Williams & Skilling PC
100 Shockoe Slip
4th Floor
Richmond, VA 23219
rroyals@butlerwilliams.com

James Curie Skilling
Butler Williams & Skilling PC
100 Shockoe Slip
4th Floor
Richmond, VA 23219
jskilling@butlerwilliams.com

                                                  /s/
                                Matthew J. Erausquin, VSB#65434
                                Leonard A. Bennett, VSB#37523
                                Counsel for the Plaintiff
                                CONSUMER LITIGATION ASSOCIATES, P.C.
                                3615-H Chain Bridge Road
                                Fairfax, VA  22030
                                Tel:    703-273-7770
                                Fax:    888-892-3512
                                matt@clalegal.com