**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| PAMELA G. CAPPETTA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | No. 3:08cv288 |
| GC SERVICES, LP | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION QUASH**
**SUBPOENAS TO HER MEDICAL PROVIDERS**

COMES NOW the Plaintiff, and as for her Memorandum in Support of her Motion to

Quash the Subpoenas issued to her Medical Providers, she states as follows:

Despite the Plaintiff's detailed testimony at her deposition regarding her medical history

and the identity of various prescriptions that she has taken over time, the Defendant has

nonetheless issued a flood of subpoenas to every medical provider and marriage counselor that

Plaintiff identified in her deposition, seeking Plaintiff's medical records for the past 10 years,

without regard to the subject matter of the information contained in the records or the length of

time for which the information is sought.[1]  It issued these subpoenas despite seeking the same

records from the Plaintiff in discovery.

On November, 20, 2008, the Defendant issued subpoenas directed to the following

medical providers:

Dr. James Madjic – Plaintiff's primary care physician;
Dr. Martha Karam – A marriage counselor that met with Plaintiff and her ex-husband for
8 sessions in the summer of 2006;

---

[1] **Despite the lack of any apparent or articulated need to do so, the Defendant also included Plaintiff's un-redacted social security number and date of birth within each subpoena, then transmitted this information into the public – including its process server and any natural persons that might come in contact with the subpoena before it reached Plaintiff's medical providers.**

       Dr. Donnie Connor – A professional advisor that Plaintiff consults with so as to more effectively counsel her own clients;

       Dr. Brigitte Fox – Plaintiff's officemate, an acupuncture therapist who does not treat Plaintiff clinically;

       Dr. Sue Crommelin – A counselor that Plaintiff met with over a five-year period (2000-2005), about 4 times a year, and has not seen since 2005;

       Plaintiff recognizes that she has alleged that she suffered emotional distress damages as a result of the Defendant's conduct and the need to engage in federal litigation to remedy its violations of the law.  She further recognizes that the Defendant will seek to argue at trial that she had other stressors in her life that contributed to her overall emotional distress.  However, the Defendant is required to "take the Plaintiff as it finds her" pursuant to the well-established "thin skull" doctrine, and it is difficult to understand why detailed information relating to a very personal feminine medical exam that the Plaintiff may have had in 1998 should be revealed to the Defendant's lawyers, an unknown number of the Defendant's employees, court personnel, the jury and even her own lawyers, or why it would have the slightest bit of relevance to this claim, other than to further embarrass or harass the Plaintiff, or to further exascerbate her otherwise fragile emotional state.

       The Defendant extracted Plaintiff's money from her in May of 2007.  Since then, Plaintiff has endured 18 months of pleading with aggressive and belligerent debt collectors for the return of her funds in excess of $10,000, attempting to convince numerous American Express employees to simply discuss the account with her[2], meeting with several attorneys, answering very broad discovery, submitting to a deposition, and waking up every morning to realize that this federal litigation remains ongoing and that she will ultimately have to endure a trial in which the Defendant presumably will force her to re-live every negative incident which has happened in her life, in her failed marriage to an unfaithful husband, and explain details of her private medical history since 1998.  Now, in December 2008, apparently satisfied with its unlawful

---

[2] **The American Express employees refused to discuss the account with the Plaintiff because she was not listed as an account holder in its records.**

intrusions into her consumer reports and financial privacy, the Defendant has taken it a step

further.  These subpoenas represent yet another attack on Plaintiff's emotional state and her right

to privacy prior to trial.  The Court should not permit them to stand.

In the spirit of open discovery, the Plaintiff informed the Defendant through her

objections to discovery that she was providing her medical and prescription records for the year

2007.  She is also producing a chart which shows all medications and their respective dosages

that she has been taking since the year 2000.  A copy of these documents produced by the

Plaintiff in discovery will be forwarded to the Court under separate cover for its review.

Thus, as more fully developed below, the issue before the Court are as follows:

(1) whether one or more of the therapist-patient privilege, the spousal privilege, or the physician-patient privilege would bar the production of all or a subset of these documents; and

(2) whether the scope of the subpoenas[3] is overly broad or exceeds the limit of what is discoverable as either "relevant" evidence, or reasonably calculated to lead to the discovery of admissible evidence, in light of Plaintiff's voluntary discovery production.

### ARGUMENT

I.      THE PHYSICIAN-PATIENT PRIVILEGE BARS THE PRODUCTION OF THE MEDICAL INFORMATION CONTAINED IN THE FILES OF PLAINTIFF'S PRIMARY CARE PHYSICIAN – DR. MAJDIC.

While discovery is broad, it is limited in part by a number of privileges which have been

developed throughout the common law and have evolved over the years.  The starting point for

the applicability of a privilege is within the Federal Rules of Evidence.  Where a claim is based

on federal law, the privilege is governed by federal common law, but where state law provides a

claim or a defense, the privilege shall be determined by state law.  In this case, the Plaintiff has

alleged federal, Virginia state law and Texas state law claims.   While no federal physician-

patient privilege exists, both Virginia and Texas have statutes which create an absolute privilege

---

[3] **Plaintiff's counsel has been informed that the individuals who received the subpoenas referenced in Exhibits C and D (Drs. Connor and Fox) have no documents to produce and that Dr. Crommelin entered the clergy in 2006 and is no longer practicing.**

for communications made by a patient to her doctor, subject to exceptions for limited disclosure

in civil actions:

The full text of both statutory sections[4] is attached as "Exhibit A", however the

applicable exceptions found in these statutes are as follows:

TRE 509(e)(4): as to a communication or record <u>relevant</u> to an issue of the physical, mental
or emotional condition of a patient in any proceeding in which any party relies <u>upon the
condition</u> as a part of the party's claim or defense; *Texas Evidence Rule 509(e)(4)
(emphasis added)*

Va. Code §8.01-399(B): If the physical or mental <u>condition</u> of the patient is at issue in a
civil action, the diagnoses, signs and symptoms, observations, evaluations, histories, or
treatment plan of the practitioner, obtained or formulated as contemporaneously
documented during the course of the practitioner's treatment, together with the facts
communicated to, or otherwise learned by, such practitioner in connection with such
attendance, examination or treatment shall be disclosed but only in discovery pursuant to
the Rules of Court or through testimony at the trial of the action. In addition, disclosure
may be ordered when a court, in the exercise of sound discretion, deems it necessary to the
proper administration of justice. However, no order shall be entered compelling a party to
sign a release for medical records from a health care provider unless the health care
provider is not located in the Commonwealth or is a federal facility. If an order is issued
pursuant to this section, it shall be restricted to the medical records that relate to the
physical or mental conditions at issue in the case. <u>No disclosure of diagnosis or treatment
plan facts communicated to, or otherwise learned by, such practitioner shall occur if the
court determines, upon the request of the patient, that such facts are not relevant to the
subject matter involved in the pending action or do not appear to be reasonably calculated
to lead to the discovery of admissible evidence.</u> Only diagnosis offered to a reasonable
degree of medical probability shall be admissible at trial. *Virginia Code §8.01-399(B)
(emphasis added)*.

To be perfectly clear, Plaintiff has not alleged a "condition" that has occurred as a result

of the Defendant's conduct. Instead, she has alleged what the U.S. Supreme Court and the

related case law has referred to as "garden variety" emotional distress in the context of the

related psychiatrist-patient privilege which clearly exists under the federal common law. *Jaffee v.

Redmond*, 518 U.S. 1 (1996). Plaintiff is not seeking to call her physician or an expert witness to

opine as to the severity of her emotional distress. She is not seeking out of pocket consultation

damages. She seeks only to recover from the emotional distress, anxiety and frustration that

were proximately caused by the Defendant's violations of the law. She does not contend that a

specific diagnosed "condition" or "mental illness" has arisen as a result. Similarly, the

---

**[4] The Texas Rules of Evidence are incorporated into the Texas Code by reference.**

Defendant cannot articulate any alleged "condition" that Plaintiff had which would provide a defense to it in this action.  Indeed, despite propounding such creative affirmative defenses as "laches, waiver and estoppel", the Defendant has entirely failed to articulate "alternate causation" as an affirmative defense at all.[5]   In short, there is no "condition" here that is an element of Plaintiff's claim or of any defense that the Defendant could assert in good faith.

The Court should also determine that even if information beyond the Plaintiff's medication history, voluntarily produced, was discoverable, there must be a limit to this.  The Virginia statute specifically recognizes that medical records (presumably those which date as far back as the arbitrary 10-year period the Defendant created here) will inherently contain information that is either irrelevant to the pending matter or are not reasonably calculated to lead to the discovery of admissible evidence.  The Defendant's employees and attorneys are simply not entitled to know the details of every single internal medical exam that the Plaintiff has undergone since 1998, merely because she has asserted a claim for emotional distress damages.  Such evidence would not be admissible in any regard – the Defendant's opportunity has long ago missed any opportunity to disclose an expert of any sort which could interpret these records or draw some causal connection to the emotional distress that Plaintiff has experienced since the Defendant took her money from her.

Therefore, with regard to Plaintiff's medical records and the subpoena to Dr. Majdic, the Plaintiff asks the Court to determine (1) either that the records she has provided in discovery (and tendered to the Court) are sufficient to satisfy whatever interest the Defendant may have in their production and that it quash the subpoena in its entirety, or (2) alternatively, that the Court order that the records should only be produced from Dr. Majdic, *in camera* (as the Court has suggested it will do with regard to the Defendant's personnel files) so that the Court may

---

[5] **And it would be hard pressed to do so within the confines of Rule 11, unless it had a good faith basis in law or fact to believe that a different debt collection company lied to the Plaintiff about its possession of the original account application, accessed her consumer reports,  or absconded with $10,000 of her money.**

determine which records are properly discoverable given the totality of the circumstances.  The

Court should consider that:

(1)  the Plaintiff is not seeking to recover an unliquidated amount for anything other than

the generalized emotional distress, anxiety and frustration she has experienced as a result of the

Defendant's violations of the law and intrusions into her consumer report;

(2)  the Defendant has not set forth an affirmative defense which would permit it to argue

that her prior medical history was such that other factors were the cause of her emotional

distress; and

(3)  Plaintiff has voluntarily provided the Defendant with a complete history of her

prescriptions dating back to the year 2000, as well as the specific prescriptions that her doctor

wrote for her in 2007 when the event occurred and has testified in detail regarding her treatment

history and the medications she has taken over the years.

To the extent that the Court determines that any documents are properly discoverable by

the Defendant following such review, Plaintiff moves that the Court order that those documents

and the information contained therein should be provided to Mr. Skilling, Ms. Royals and their

legal assistant Leigh Redford for their eyes only and should not be shown or otherwise

communicated to any other Butler Williams staff member or other natural person, specifically

including any employee, officer or in-house attorney of GC Services.

II.     THE THERAPIST-PATIENT AND SPOUSAL PRIVILEGES BAR THE
PRODUCTION OF THE COUNSELING RECORDS CONTAINED IN THE FILES OF
PLAINTIFF'S 2006 MARRIAGE COUNSELOR – DR. KARAM.

By the Plaintiff's own testimony at her deposition, she visited Dr. Martha Karam with her

husband, Robert Cappetta, approximately 8-10 times during the summer of 2006 to discuss

various issues in their marriage.   The Defendant has yet to articulate a reason why Plaintiff's

marriage counseling records are relevant or why either of these two privileges would not apply.

6

Both the therapist-patient privilege and the spousal privilege exist within the federal common law and both clearly apply here.

The scope of the therapist-patient privilege in the context of a "garden variety emotional distress case" was clarified by the Supreme Court in the *Jaffee* opinion cited previously. *Id.* The issue before the Court was whether a privilege protecting confidential communications between a psychotherapist and her patient exists and promotes sufficiently important interests so as to outweigh a party's alleged need for probative evidence. The Court held that a privilege exists and rejected the Seventh Circuit's ruling that a balancing test applies to the privilege, (weighing the evaluation of the patient's interest in privacy against the evidentiary need for disclosure), and held that if the privilege holder could not predict with a degree of certainty whether the communication would be protected, "the privilege would be little better than no privilege at all." *Id at 17.*

Since the *Jaffee* decision, the subsequent case law has established that where a plaintiff alleges simple "garden variety emotional distress" in which the claim is limited to humiliation, embarrassment, injury to reputation, simple emotional distress, and other claims not related to specific mental damage, the psychotherapist/patient is not waived and the records are protected from discovery. *See John Doe I v. Mulcahy, Inc.*, No. 08-306 (D. Minn. Oct. 14, 2008)*. *Fitzgerald v. Cassil*, 216 F.R.D. 632 (N.D. Cal. 2003). *Jessamy v. Ehren*, 153 F.Supp.2d 398 (S.D.N.Y. 2001). *Jackson v. Chubb Corp.*, 193 F.R.D. 216 (D. N.J. 2000). *Ruhlmann v. Ulster County Dept. of Social Services*, 194 F.R.D. 445 (N.D.N.Y. 2000). *Sorenson v. H & R Block, Inc.*, 197 F.R.D. 199 (D. Mass. 2000). In addition, communications between spouses in the confidence of a marital relationship are also privileged. There are two types of spousal privilege: (1) the privilege against "adverse spousal testimony" which prevents a person from being compelled to testify against his or her spouse. This privilege is held by the testifying spouse; and (2) the "marital communications" privilege which protect information disclosed between

husband and wife in the confidence of the marital relationship. This privilege is held by either spouse. United States v. Parker, 834 F.2d 408, 411 (4th Cir.1987), cert. denied, 485 U.S. 938, 108 S.Ct. 1118, 99 L.Ed.2d 279 (1988).

It is the "marital communications" privilege that protects the confidential statements made by Plaintiff and her husband during their marriage counseling with Dr. Karam.  These records of Plaintiff's communications were made over a year before the Defendant's violations of the law and Plaintiff has made no claim here that would place them at issue.   The Defendant can make any argument at trial that it likes regarding how the Plaintiff's pending divorce affected her mental state on May 21, 2007 when it called her and since then as she struggled to obtain the return of her money and was ultimately forced to pursue litigation.   Indeed, the Defendant has served discovery requests that call for Plaintiff to turn over records regarding the divorce, including her property settlement agreement with her husband.  Plaintiff has adopted a much different approach than the Defendant with regard to discovery compliance and is producing them subject to the protective order.  However, the mere allegation of emotional distress damages does not entitle the Defendant to know the specifics of every intimate detail of Plaintiff's marriage problems, and it should be noted that this privilege is one that belongs to Robert Cappetta as well.

The subpoena directed to Dr. Karam calls for information that the Defendant knew to be irrelevant from the Plaintiff's deposition testimony, that Plaintiff had not seen Dr. Karam since 2006 (certainly not within the damages period of May 2007 to the present), and this subpoena is therefore overbroad, violative of Plaintiff's right to the confidentiality of marital communications and should be quashed.  In this instance, and in the alternative, Plaintiff moves that the Court review these records *in camera* prior to their production to the Defendant and with strict instructions as to the identity of those entitled to learn the very intimate and private details of Plaintiff's failed marriage.

Respectfully submitted,
**PAMELA G. CAPPETTA**,


                    /s/
_____
Matthew J. Erausquin, VSB#65434
Leonard A. Bennett, VSB#37523
Counsel for the Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
3615-H Chain Bridge Road
Fairfax, VA  22030
Tel:     703-273-7770
Fax:     888-892-3512
matt@clalegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of December, 2008 I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:

Rebecca H. Royals
Butler Williams & Skilling PC
100 Shockoe Slip
4th Floor
Richmond, VA 23219
rroyals@butlerwilliams.com

James Curie Skilling
Butler Williams & Skilling PC
100 Shockoe Slip
4th Floor
Richmond, VA 23219
jskilling@butlerwilliams.com

       /s/       
Matthew J. Erausquin, VSB#65434
Leonard A. Bennett, VSB#37523
Counsel for the Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
3615-H Chain Bridge Road
Fairfax, VA  22030
Tel:     703-273-7770
Fax:     888-892-3512
matt@clalegal.com
