IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| PAMELA G. CAPPETTA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | No. 3:08cv288 |
| GC SERVICES, LP | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
HER MOTION TO QUASH SUBPOENAS TO HER MEDICAL PROVIDERS**

COMES NOW the Plaintiff, by counsel, and as for her reply brief in support of her Motion to

Quash Subpoenas to her Medical Providers, she states as follows:

The Defendant makes several representations and arguments to the Court in its opposition brief

which require the Court's attention.  As a preliminary matter, the Defendant represents to the Court that

Dr. Conner and Ms. Fox "have both responded to the subpoenas issued".  *Def. Opp. Br. at 5, fn. 3*.  The

Plaintiff presumes that the Defendant's intention in using this language was not to create the impression

that either of these providers had supplied Plaintiff's medical records to the Defendant.

To clarify the status for the Court, Plaintiff was contacted by both of these providers who notified

her of the subpoena, advised that they had no records to provide, and informed her that the Defendant's

counsel was requesting an affirmative letter to that effect, stating that no documents exist.[1]  While the

Defendant has not provided the Plaintiff with a copy of the alleged "response" which it represents has

been made, the Court should be aware that, to the best of the Plaintiff's knowledge, Dr. Conner and Ms.

Fox have not provided any medical records regarding the Plaintiff to the Defendant.

Thus, the protection that the Plaintiff seeks from the Court in the instant motion is still very

---

[1] No affirmative obligation to provide a written letter or explanation exists within Rule 45 as to non-parties who are not in possession of responsive documents

necessary and is critically important to her with respect to the two providers that do maintain documents regarding her – Dr. Majdic (Plaintiff's primary care physician since approximately 1993) and Dr. Karem (Plaintiff's marriage counselor in 2006 for approximately 8 sessions).

**I.      THE COURT HAS DISCRETION PURSUANT TO BOTH STATE PRIVILEGE RULES TO RESTRICT THE SCOPE OF DISCOVERABLE DOCUMENTS TO THOSE RELEVANT TO THIS CASE, PURSUANT TO THE PHYSICIAN-PATIENT PRIVILEGE.**

At the outset of its opposition, the Defendant half-heartedly argues that the statutory physician-patient privilege found within the Virginia and Texas statutes are inapplicable in a federal question case. This argument is easily dispensed with.  The Defendant fails to acknowledge that the Court's jurisdiction in this case arises under <u>both</u> 28 U.S.C. §1367 and §1331.  This is not solely a federal question case, but rather one in which the Court has also exercised supplemental jurisdiction over Plaintiff's pendant state law claims.  Thus, subject to a determination that the physician-patient privilege is inherently a "substantive" issue for choice of law purposes, as discussed *infra*, the Virginia and Texas privileges would each independently provide the basis for Plaintiff's assertion of the physician-patient privilege.

The Defendant next argues that Rule 501 requires that the Court automatically apply Virginia's law of privilege because Virginia is the forum state.  However, this argument is not well-founded. Instead, the proper analysis found within the very same *Miller* and *Tartaglia* cases cited by the Defendant[2] is that the Court is to look to the <u>choice of law rules</u> of the forum state, determine whether the specific privilege issue is substantive or procedural, and then determine whether to use the *lex fori*, the law of the forum state, if substantive or the *lex loci*, the law of the place of the wrong, if procedural.  The point that the Defendant misses is that the Court should only take the next step to determine what the substantive privilege law of the forum actually is <u>after</u> it has conducted this choice of law analysis and chosen the appropriate forum.

---

[2] *Miller* and *Tartaglia* are both cases in which the Court's jurisdiction was based upon diversity of citizenship.

In the interest of judicial economy and because Plaintiff believes that the scope of the Texas and Virginia rules overlap extensively, perhaps entirely, she will concede that the Virginia statute applies and will not belabor the point here.  However, the Court should be aware that while the applicability of privileges which spring from the common law are typically procedural in nature, there is authority within this District that this particular statutorily created privilege is substantive, not procedural.  Thus, if it were to conduct this analysis as to a statutorily created privilege, the Court would then apply the law of the place of the wrong, or the *lex loci*.  *Hatfield v. New York Times,* 459 F.Supp.2d 462, 466 (E.D.Va. 2006).  Given that the Plaintiff has alleged violations of both Virginia and Texas consumer statutes, theoretically both state privilege rules would then be available for the Court's consideration, and Plaintiff should be entitled to rely on the more protective of the two.

Turning now to the Virginia statute, the Court should note that its clear language (attached as Exhibit A to Plaintiff's motion) protects the Plaintiff in several ways:

First, Va. Code §8.01-399 requires as a pre-condition to disclosure that the Plaintiff's mental or physical <u>condition</u> must be at issue in the case, and then the only discoverable records are those that relate to the physician's treatment of that condition (subject to the crosscheck for the relevancy determination discussed herein).  Here, Plaintiff has not alleged an ongoing medical condition or disorder that she suffers from as a result of the Defendant's conduct. Instead, she alleges that the Defendant's collection efforts, its threats against her credit rating, and her need to endure the stressors associated with this litigation have aggravated her existing anxiety and stress levels and have proximately caused her to endure emotional distress, on specific and discrete occasions, that she would not have suffered, but for the Defendant's conduct.

The Defendant's theory appears to be that the mere allegation of even a single incident of emotional distress, no matter how isolated it might be, would always open up the door to the

discoverability of ten years of all physical and mental health records.  This result is absurd and

disproportionate.   In recognizing the standard of fair, broad and open discovery[3], the Plaintiff has already

voluntarily provided the Defendant with her medical records for 2007, as well as her medication charts

going back to 2000. However, Plaintiff submits that there must be a limit to the Defendant's ability to

intrude into the most private of her medical records. This debt collector is simply not entitled to review

the results of Plaintiff's gynecological exams, blood screenings, or other private and personal documents

relating to her medical history from 1998 to the present merely because she has alleged emotional distress

as a category of damages.  Instead, to the extent that any of her medical or counseling records are

discoverable at all, the scope should be limited to only those documents that bear upon her mental state

from May 2007 to the present.

Next, beyond the requirement that a specific "condition" must be at issue, the Virginia statute

expressly contemplates that physicians may be in possession of medical information that does not relate to

the claims or defenses of the parties in a case and it accordingly vests the Court with broad discretion to

refuse to order the production of medical information that falls into two categories:  information that is

either (1) not relevant to the subject matter of the litigation or (2) not reasonably calculated to lead to the

discovery of admissible evidence.

It should be clear that Plaintiff is not seeking damages for any conduct that temporally occurred

prior to the Defendant's first contacts with her in May 2007.  Her damage claims arise from the

Defendant's conduct in May of 2007 and the associated disruption to her life and emotional well-being

from that point to the present in her pursuit of the recovery of her money and the vindication of her

statutory rights.  As to category (1), the Court is aware that relevant evidence is evidence having any

tendency to make the existence of any fact that is of consequence to the determination of the action more

---

[3] This view of discovery has not been reciprocated by the Defendant to date.

probable or less probable than it would be without the evidence. *Fed. R. Evid.* 401. Thus, given that Plaintiff has limited her emotional distress damages at issue in this case to the time period running from May 2007 to the present, there can simply be nothing in her medical records from January 1998 through April 2007 that would make it more or less probable that she did or did not suffer emotional distress damages resulting from the Defendant's conduct that had not yet occurred.

As to category (2), the Defendant is seeking medical information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff submits that the Defendant would be hard pressed to argue for the admissibility of any medical records predating May 2007, or that its inquiry into her medical history from 1998 to the present is somehow "reasonably calculated" to lead to the discovery of any such records. If the Defendant intends to argue that the Plaintiff was overly sensitive to its conduct because of some pre-existing psychological condition relating to other stressors in her life, these documents would not be admissible for that purpose. It is axiomatic that the Defendant is required to take the Plaintiff as it finds her, and that while it is not responsible for the pre-existing condition itself, it is nonetheless responsible for any aggravation of the condition caused by its tortuous conduct. *Bradner v. Mitchell*, 234 Va. 483, 489 (Va. 1987). Thus, the Court should determine that most, if not all, of the medical records which predate May 2007 are not discoverable given that they are irrelevant, they would not be admissible if discovered, and in that the Plaintiff has not alleged a diagnosable condition or disorder caused by the Defendant's conduct.

In the alternative, Plaintiff submits that to the extent that the Court were to find that some subset of her medical records are discoverable, the scope of the time period chosen by the Defendant (10 years) and the types of documents sought (all medical records, regardless of content) is grossly overbroad and the Court should strictly limit the scope to only Plaintiff's medical records that relate to her mental health from May 2007 to the present, directing the Defendant's counsel that these documents are to kept as

Confidential-AEO and are not to be shared with any natural person outside of Mr. Skilling's law firm, expressly including the Defendant's employees.

## II.    THE THERAPIST-PATIENT PRIVILEGE AND THE MARITAL COMMUNICATIONS PRIVILEGE EACH PROVIDE AN INDEPENDENT BASIS FOR THE COURT TO QUASH THE SUBPOENA DIRECTED TO DR. KAREM – PLAINTIFF'S MARRIAGE COUNSELOR IN 2006.

### A.    <u>THE MARITAL COMMUNICATIONS PRIVILEGE</u>

As to the marital communications privilege, and apparently out of thin air, the Defendant claims without support that "the Plaintiff is asserting two separate privileges" arising from the marital relationship – the adverse testimonial privilege and the marital communications privilege. *Def. Opp. Br. at 13.*

This false assertion is made without a proper basis, and is simply frivolous. Plaintiff's Motion to Quash made it absolutely clear that Plaintiff is only asserting the marital communications privilege in this motion, stating quite plainly that (*"[i]t is the 'marital communications' privilege that protects the confidential statements made by Plaintiff and her husband during their marriage counseling with Dr. Karem".*) *Pl's Mot. Quash* at 8.

Putting aside the Defendant's attempt to divert the Court's attention from the core issues of this dispute, Plaintiff has not waived the marital communications privilege. For example, she is not attempting to use those marital communications as both a sword and a shield. In fact, she does not attempt to use them at all or introduce them as evidence, as they are entirely irrelevant to this case. While she is confident that the Defendant is interested in dredging out the details of her failed marriage from those records to embarrass her at trial, the fact of the matter remains that both she and her husband have a right to assert the privilege with regard to them[4], and that, even barring the applicability of this privilege, Plaintiff's interactions with her marriage counselor a full year before the Defendant's conduct occurred

---

[4] For full clarity, the Court should note that Plaintiff's husband did not attend every session with her and some of these "session notes" will therefore fall only under the coverage of the therapist-patient privileg.

are simply irrelevant and are not reasonably calculated to lead to the discovery of admissible evidence.

### B.      THE THERAPIST-PATIENT PRIVILEGE

The Defendant does not dispute that the therapist-patient privilege articulated by the Supreme

Court in *Jaffee* exists, nor does the Defendant address the very strong public policy rationale articulated in

*Jaffee* which supports the need for such a privilege.  Instead, it merely asserts without further support that

"the Plaintiff has placed her emotional and psychological condition at issue in this case".  *Def. Opp. Br. at*

*11.*  However, such a claim might be made by a Defendant in <u>any</u> case in which the Plaintiff seeks

compensation for emotional distress, whether "garden variety" or otherwise.  Plaintiff instead suggests

that the Court should instead look to the distinction defined by the post-*Jaffee* case law between garden

variety claims and a prolonged medical or psychological "condition", and determine at what point a

Plaintiff can be said to have placed a psychological condition at issue.

The general rule is that the therapist-patient privilege may be waived only where a party places his

mental or emotional condition at issue by relying upon <u>the condition</u> as an element of his claim or

defense. 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 504.01 (2d ed.1997).

In *Koch v. Cook*, the D.C. Circuit addressed this issue head-on, surveying the landscape of the post-*Jaffee*

case law and succinctly clarified the "narrow", "broad" and "middle ground" positions which have

thereafter developed.  To summarize, the "narrow" position is that a Plaintiff only places her mental state

at issue when the communication with the therapist itself is relevant to the claim (e.g., a malpractice

claim); the "broad" position is that a Plaintiff places her mental state into issue upon any allegation of

emotional distress.  However, the "middle ground" position, which the Plaintiff asks the Court to adopt

here, is that: "[W]here a plaintiff merely alleges 'garden variety' emotional distress and neither alleges a

separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe distress, that

plaintiff has not placed his/her mental condition at issue to justify a waiver of the psychotherapist-patient

privilege." *Kock v. Cox*, 489 F.3d 384, 390 (D.C. Cir. 2007)(citing *Jackson v. Chubb Corp*, 193 F.R.D. 216, 225 (D. N.J. 2000).  This position is consistent with the Supreme Court's observation that "if the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.' " *Jaffee* at 18.

In this case, Plaintiff has not alleged a condition arising from the Defendant's conduct.  She has not, for example, claimed that the Defendant's conduct caused her to develop schizophrenia, a psychosis, or a personality disorder.  Instead, to the contrary, she has fully disclosed to the Defendant through her deposition and her voluntarily produced medical records and medication charts that she was treated for anxiety and depression for unrelated reasons for several years prior to May 2007, that she was on medication for the same at the time of the collection calls, and that she has continued to take this medication to help her cope with the stress related to this litigation in an attempt to mitigate her damages.

As discussed *supra*, Plaintiff is not claiming that the Defendant caused her any damage prior to May 2007, and she has simply not alleged a mental health disorder caused by the Defendant's conduct so as to put her mental state at issue here.  Thus, she has not waived these privileges.  Alternatively, if the Court were to find that Plaintiff has somehow waived this privilege, it should nonetheless find that the records sought are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, given that the records maintained by Dr. Karem of Plaintiff's eight marriage counseling sessions pre-date the Defendant's first collection contact by a year.[5]

---

[5] The Defendant speculates that because Plaintiff's contractual responsibility for payment on the American Express account is at issue here, it is entitled to learn the substance of the marriage counseling records because they are somehow relevant to Plaintiff's obligation to pay the debt.  The Defendant was well-aware at time it submitted its opposition brief that the clear and unambiguous deposition testimony of American Express was that Pamela Cappetta was not responsible to pay on the account and that she had never even used the card.  The Court should discount this speculation entirely for purposes of making the Rule 401 determination, should the Court reach this determination.

For each of these reasons, the Court should grant the Plaintiff's Motion to Quash the Subpoenas to her Medical Providers, or, in the alternative, it should significantly limit them temporally and substantively.

Respectfully submitted,
**PAMELA G. CAPPETTA**,


_____/s/_____
Matthew J. Erausquin, VSB#65434
Leonard A. Bennett, VSB#37523
Counsel for the Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
3615-H Chain Bridge Road
Fairfax, VA  22030
Tel:    703-273-7770
Fax:    888-892-3512
matt@clalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of December, 2008 I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:

Rebecca H. Royals
Butler Williams & Skilling PC
100 Shockoe Slip
4th Floor
Richmond, VA 23219
rroyals@butlerwilliams.com

James Curie Skilling
Butler Williams & Skilling PC
100 Shockoe Slip
4th Floor
Richmond, VA 23219
jskilling@butlerwilliams.com

_____/s/_____
Matthew J. Erausquin, VSB#65434
Leonard A. Bennett, VSB#37523
Counsel for the Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
3615-H Chain Bridge Road
Fairfax, VA  22030
Tel:    703-273-7770
Fax:    888-892-3512
matt@clalegal.com
