IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PAMELA G. CAPPETTA,

      Plaintiff,

v.

                                Civil Action No. 3:08CV288

GC SERVICES LIMITED PARTNERSHIP,

      Defendant.

## MEMORANDUM OPINION

Before the Court is Plaintiff Pamela Cappetta's Motion to Quash Subpoenas to Her Medical Providers. (Docket No. 54.) Defendant GC Services responded to the motion. (Docket No. 61.) The matter has been fully briefed, and the Court held a hearing on January 23, 2009. Accordingly, the Motion is now ripe for adjudication.

### I. Procedural Background

This matter arises out of the collection of a debt of $10,444.59 from Plaintiff by Defendant. The debt consisted of charges made to an American Express account by Plaintiff's ex-husband, who is not a party to this suit. Plaintiff denies ever having been an obligor on the account. She brought this action against Defendant, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Texas Debt Collection Act ("TDCA"), the Fair Credit Reporting Act ("FCRA"), the Credit Repair Organizations Act ("CROA"), and the Virginia Credit Service Businesses Act ("VCSBA").

Defendant issued subpoenas to five individuals who have provided medical care to Plaintiff:

- Dr. James Madjic, Plaintiff's longtime primary care physician;
- Dr. Martha Karam, a marriage counselor whom Plaintiff and her ex-husband consulted eight to ten times in the summer of 2006;
- Dr. Donnie Conner, a professional counselor who advises Plaintiff on effectively counseling her own clients;[1]
- Brigitte Fox, Plaintiff's coworker and an acupuncture therapist;
- Sue Crommelin, a counselor whom Plaintiff consulted several times a year from 2000-2005.

(Pl.'s Mem. Supp. Mot. Quash 1-2 & Exs. B, C, D, E, & F.)

Defendant's subpoena to Dr. Madjic seeks:

The complete medical records, including, but not limited to, all written documents, reports, any and all correspondence, patient questionnaire(s), memoranda, x-ray reports, invoices and billing information, etc., excluding nothing, regarding the plaintiff herein . . . **for the period beginning 01/01/1998 through the present.**

(Pl.'s Mem. Supp. Mot. Quash Ex. B.)

Defendant's subpoena to Dr. Karam seeks:

The complete medical, psychological, and/or psychiatric records, including, but not limited to, all written documents, reports, any and all correspondence, patient questionnaire(s), memoranda, x-ray reports, invoices and billing information, etc., excluding nothing, regarding the plaintiff herein . . . **for the period beginning 01/01/1998 through present.**

(Pl.'s Mem. Supp. Mot. Quash  Ex. F.)

---

[1] Although Defendant issued substantially similar subpoenas to Dr. Conner, Ms. Fox, and Dr. Crommelin, those subpoenas appear not to be at issue in this Motion. Both Plaintiff and Defendant discuss only the subpoenas to Dr. Madjic and Dr. Karam in their respective briefs. As to the other subpoenas, Defendant represents that Dr. Conner and Ms. Fox have responded to the subpoenas, while Ms. Crommelin has not. (Def.'s Mem. Opp'n 5 n.3.) (Docket No. 61.) Dr. Conner appears to have indicated that no responsive documents exist.

At oral hearing, Plaintiff informed the Court that Ms. Fox provided records to Defendant despite telling Plaintiff she had none to produce. Plaintiff indicated that, had she known about the records, she would have moved to quash those as well. She plans to move for a protective order for return of the documents. That issue will be addressed once properly brought before the Court. In the meantime, the Court ordered at oral hearing that Ms. Fox's records would be designated "Attorney's Eyes Only."

Plaintiff has provided Defendant with her medical records from Dr. Madjic for 2007, as well as a chart detailing her prescription medication history from November 15, 2000, through September 12, 2007. She provided copies of these documents to the Court on December 5, 2008.

## II. Facts Alleged

In her First Amended Complaint (Docket No. 38), Plaintiff states that her interactions over the phone with Defendant's employees during their efforts to collect the debt from her left her "collapsed emotionally in her office, while visibly shaking and crying uncontrollably" (Am. Compl. ¶ 43); that her "heartbeat was racing such that [a coworker] became extremely concerned for Plaintiff's health" (Am. Compl. ¶ 44); that her coworker "provided medical care to the Plaintiff in their office" (Am. Compl. ¶ 45); and generally that this was a "traumatic incident" (Am. Compl. ¶ 46).

Plaintiff's damages claim for Defendant's alleged violation of the FDCPA states that "Plaintiff suffered actual damages for emotional and mental anguish, fear, frustration, and anxiety in her attempts to recover the funds that were extorted from her." (Am. Compl. ¶ 63.) She states that Defendant's alleged violation of the TDCA caused her to experience "*severe emotional distress* evidenced by one or more of the following: anger, sleeplessness, crying, anxiety, fear, and humiliation," as well as "a loss of concentration *and the ability to perform her job properly*." (Am. Compl. ¶ 66 (emphases added).) Her damages claim for Defendant's alleged violation of FCRA states that Plaintiff "suffered various types of damage . . . including specifically, the intrusion into her privacy, and the emotional distress and anxiety associated with concern about future unauthorized inquiries into her personal financial information." (Am. Compl. ¶ 77.)

3

Plaintiff explained at her deposition that on the day Defendant collected the debt from her, she went into shock, and her coworker Ms. Fox cancelled all of Plaintiff's appointments for the day. (Cappetta Dep. 75:4-10.) Sometime thereafter she saw her primary care physician, Dr. Madjic, and received a prescription for antianxiety medication. (Cappetta Dep. 79:11-21.) Plaintiff regularly took this medication from June 2007 until June 2008. (Cappetta Dep. 81:15-25.) She now sees Dr. Madjic intermittently, as they agreed that she would remain on the medication until the subject matter of this lawsuit was resolved. (Cappetta Dep. 94:14-22.)

She had "difficulty focusing and concentrating at work," and a "hard time trying to maintain [her] professional demeanor" as a counselor. (Cappetta Dep. 85:8-18.) For a time after the collection of the debt, Plaintiff had to reduce her caseload at work because she was upset. (Cappetta Dep. 85:22-86:4.) During this time, Plaintiff would also take an afternoon off from work "every couple of weeks" in order to see Dr. Madjic. (Cappetta Dep. 93:12-15.)

### III.  Issue Presented

Plaintiff now moves to quash the subpoenas as to Drs. Madjic and Karam because the records sought are privileged, and because she has not put her mental state sufficiently at issue to warrant disclosure of those records. Plaintiff asserts for purposes of this motion that she "has not alleged a 'condition' that has occurred as a result of the Defendant's conduct. Instead, she has alleged what the U.S. Supreme Court and the related case law has referred to as 'garden variety' emotional distress in the context of the related psychiatrist-patient privilege which clearly exists under the federal common law." (Pl.'s Mem. Supp. Mot. Quash 4.) Plaintiff represents that she does not intend to call her treating physician or an expert witness to opine as to the severity of her emotional distress, and that she is not seeking out-of-pocket consultation damages. (*Id.*)

4

Rather, she seeks damages for the distress, anxiety, and frustration she claims Defendant's actions caused. (*Id.*) She does not seek reimbursement for any particular medical or psychiatric bills. Plaintiff clarifies in her reply brief that the scope of her emotional distress claim goes to her allegation that:

> Defendant's collection efforts, its threats against her credit rating, and her need to endure the stressors associated with this litigation have aggravated her existing anxiety and stress levels and have proximately caused her to endure emotional distress, on specific and discrete occasions, that she would not have suffered, but for the Defendant's conduct.

(Pl.'s Reply Br. Supp. Mot. Quash 3.)

Whether Plaintiff put her mental state in issue determines whether she may claim the psychotherapist-patient privilege as to the records sought by Defendant. Plaintiff urges the Court to take a middle-ground approach to waiver of the psychotherapist-patient privilege,[2] and find that Plaintiff has not waived that privilege. (Pl.'s Reply Br. Supp. Mot. Quash 7.) She asserts that she is entitled to protection of the privilege because she "is not claiming that the Defendant caused her any damage prior to May 2007, and she has simply not alleged a mental health disorder caused by the Defendant's conduct so as to put her mental state at issue here." (Pl.'s Reply Br. Supp. Mot. Quash 8.) (Docket No. 69.)

Defendant maintains that Plaintiff put her mental condition at issue by virtue of the allegations in her Amended Complaint and by alluding to various mental and emotional damages during her deposition. (Def.'s Mem. Opp'n 2, 11.) Also relevant to Defendant's position is the maxim that testimonial privileges are generally disfavored and are to be narrowly construed. *See Jaffee v. Redmond*, 518 U.S. 1, 9 (1996); *United States v. Nixon*, 418 U.S. 683, 711 (1974).

---

[2] *See infra* Part V.B.1.

## IV.  Standard of Review

The Federal Rules of Civil Procedure govern the scope of discovery: "Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added).  A court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).  The Court must determine which, if any, privileges preclude production of the records sought; whether Plaintiff has waived any otherwise applicable privileges either by putting her emotional or physical condition at issue or by producing privileged documents; and finally, the extent to which the records sought are relevant.

## V.  Analysis

Plaintiff asserts that the physician-patient privilege provides a basis for the Court to quash the subpoena to Dr. Madjic.  She relies on the psychotherapist-patient privilege and marital communications privilege as to Dr. Karam.  The Court finds that the subpoena to Dr. Madjic is overbroad and should be modified, and that the psychotherapist-patient privilege protects any records held by Dr. Karam.  Plaintiff's Motion to Quash will be GRANTED IN PART and DENIED IN PART.

A.    **Motion to Quash Medical Records in Dr. Madjic's Possession**

Plaintiff asserts that the subpoena to Dr. Madjic should be quashed because the physician-patient privilege bars the production of Plaintiff's records from Dr. Madjic.  (Pl.'s Mem. Supp. Mot. Quash 3.)  Plaintiff also contends that the ten-year period is overbroad.

6

1.    **Physician-Patient Privilege Does Not Apply in this Case**

Although Plaintiff concedes that "no federal physician-patient privilege exists," she

argues that because she has alleged Virginia and Texas state law claims in addition to her federal

FDCPA, FCRA, and CROA claims, the Virginia and Texas state law of privilege provide an

absolute privilege from disclosure that should apply in this case. (*Id.* at 3-4.) This view is

incorrect. Neither Texas Rule of Evidence 509(e)(4) nor Va. Code § 8.01-399(B) provide the

applicable law of privilege in this case.[3]

a.    **State Privilege Law Does Not Apply**

The Court's subject matter jurisdiction flows from Plaintiff's claims arising under federal

law, pursuant to 28 U.S.C. § 1331. The Court exercises supplemental jurisdiction over the

Virginia and Texas state law claims pursuant to 28 U.S.C. § 1367. Federal Rule of Evidence 501

governs the law of privilege in federal court. It provides:

> Except as otherwise required by the Constitution of the United States or provided
> by Act of Congress or in rules prescribed by the Supreme Court pursuant to
> statutory authority, the privilege of a witness, person, government, State, or
> political subdivision thereof shall be governed by the principles of the common
> law as they may be interpreted by the courts of the United States in the light of
> reason and experience. However, in civil actions and proceedings, with respect to
> an element of a claim or defense as to which State law supplies the rule of
> decision, the privilege of a witness, person, government, State, or political
> subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501.

---

[3] *See generally* Christopher Mueller and Laird Kirkpatrick, 2 Federal Evidence § 5:9,
State Privileges - Choosing Applicable Privilege Law Where State and Federal Issues are
Commingled (3d ed. 2007).

In a federal question case, federal common law supplies the applicable law of privilege. *See William T. Thompson Co. v. Gen. Nutrition Corp., Inc.*, 671 F.2d 100, 103 (3d Cir. 1982) ("Under [Rule 501], in federal question cases the federal common law of privileges applies."). This holds true even when a court exercises jurisdiction over pendent state law claims in addition to federal claims. Although it might seem that Rule 501 would require a federal court to apply federal privilege law to federal claims, and state privilege law to state claims, courts disfavor this approach because "the jury would be faced with a hopelessly confusing task" in distinguishing different rules of privilege as to the same evidence. *See Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 768 n.3 (D. Md. 2008).[4]

### b.   No Federal Common Law Physician-Patient Privilege Exists

Plaintiff's invocation of a physician-client privilege as to Dr. Madjic's records cannot prevail. Neither the Texas nor Virginia statutory privileges apply, and no such federal statutory or common law privilege exists. *See Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1977) ("The physician-patient evidentiary privilege is unknown to the common law."); *In re Grand Jury Subpoena John Doe No. A01-209*, 197 F. Supp. 2d 512, 514 (E.D. Va. 2002) ("[N]o federal

---

[4] *See also In re Sealed Case (Med. Records)*, 381 F.3d 1205, 1212 (D.C. Cir. 2004) (noting that, with respect to discovery, it would be "meaningless" to say a communication is privileged for one claim but not for another); *Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 n.3 (4th Cir. 2001) ("We agree with our sister circuits that in a case involving both federal and state law claims, the federal law of privilege applies."); *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (holding that in a federal question case, "the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege"); *Andritz Sprout-Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 632 (M.D. Pa. 1997) ("In a federal question case with supplemental state law claims, the federal law of privileges governs the entire case."); *see also* Senate Report to Federal Rule of Evidence 501, which notes, "It is also intended that the Federal law of privileges should be applied with respect to pendant [sic] State law claims when they arise in a Federal question case." S. Rep. No. 1277, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 7051, 7059 n.16 (1974).

8

statute creates a physician-patient privilege, and the federal courts have not recognized such a privilege."). The Court will not grant Plaintiff's Motion to Quash on physician-patient privilege grounds.

### 2.    Overbreadth of Subpoena and Sufficiency of Documents Produced

Nonetheless, the Court finds the subpoena to be overbroad. Defendant's subpoena to Dr. Madjic seeks the complete medical records, "excluding nothing," relating to Plaintiff from January 1, 1998, through the present. Plaintiff has provided the Defendant with a complete history of her prescriptions dating to 2000, as well as the specific prescriptions Dr. Madjic wrote for her in 2007 when Plaintiff's interaction with Defendant occurred. (Pl.'s Mem. Supp. Mot. Quash 6.) In response, Plaintiff has also given Defendant her medical records for 2007. (Pl.'s Reply Br. Supp. Mot. Quash 4.)

A plaintiff seeking emotional distress damages "has a right to have discovery limited to information that is directly relevant to the lawsuit. . . . '[D]efendants may not engage in a fishing expedition by inquiring into matters totally irrelevant to the issue of emotional distress.'" *Vasconcellos v. Cybex Int'l, Inc.*, 962 F. Supp. 701, 709 (D. Md. 1997) (*quoting Bridges v. Eastman Kodak Co.*, 850 F. Supp. 216, 223 (S.D.N.Y. 1994)). The scope of discovery "must be limited to whether, and to what extent," Defendant's actions caused Plaintiff to suffer emotional harm. *Id.* Defendant's subpoena as written seeks *all* medical records, regardless of content. The scope of discovery into the sensitive area of private medical information "'should be limited and confined to that information that is essential to a fair trial.'" *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 224 (D.N.J. 2000) (*quoting Fritsch v. City of Chula Vista*, No. Civ. 98-972, 1999

9

WL 799213, at *10 (S.D. Cal. Sept. 29, 1999). *See also* Fed. R. Civ. P. 26(b)(2)(C)(iii);[5] Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv).[6]

The Federal Rules of Civil Procedure provide that a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden," including specifying the terms for the disclosure or discovery and limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1)(B),(D). Thus, the Court will permit Dr. Madjic to produce only those medical records relating to Plaintiff's emotional distress claims. Because her deposition testimony indicates that her anxiety condition may pre-date the debt collection incident, Defendant may fairly be entitled to sufficient records so as to establish a baseline of Plaintiff's emotional condition at the time of the incident.

The subpoena to Dr. Madjic will be MODIFIED to require production of any and all records relating to Plaintiff's mental and emotional state for the two years prior to the filing of

---

[5] Rule 26(b)(2)(C)(iii) states:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

[6] Rule 45(c)(3)(A)(iii)-(iv) states:

> "***Quashing or Modifying a Subpoena.*** . . . On timely motion, the issuing court must quash or modify a subpoena that:
> > (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> > (iv) subjects a person to undue burden."

this federal action.  All documents produced will be designated "Attorneys' Eyes Only" so that only counsel for Defendant and their legal assistant will view them.

**B.**     **Motion to Quash Dr. Karam's Subpoena**

As to Dr. Karam, Plaintiff asserts that the psychotherapist-patient privilege recognized as part of federal common law by the Supreme Court of the United States in *Jaffee v. Redmond*, 518 U.S. at 15, precludes disclosure of the marital counseling records.  Dr. Karam, a Ph.D. psychologist, provided psychotherapeutic counseling services to Plaintiff and her husband in 2006.[7]

In *Jaffee*, the Supreme Court held that "confidential communications between a licensed psychotherapist and her [or his] patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id.*  In recognizing a psychotherapist privilege as part of federal common law, the Court determined that because confidentiality is crucial to successful psychiatric treatment, the interest in providing the protection of such a privilege outweighed the likely evidentiary benefit of compelled disclosure. *Id.* at 9-11.  The privilege is absolute in that it is not subject to any balancing test, because an "uncertain privilege" subject to later varying application by the courts "is little better than no privilege at all." *Id.* at 18 (*quoting Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)).

---

[7] Neither party addressed whether the privilege would apply to the subpoena issued to Dr. Madjic to the extent that he provided psychological and emotional treatment to Plaintiff.  One of the issues the Court considered in *Jaffee* was whether the psychotherapist-patient privilege should extend beyond psychiatrists to licensed social workers in the course of psychotherapy. 518 U.S. at 15.  The Court held that social workers providing psychotherapy services should be subject to the privilege, relying on the fact that the Judicial Conference Advisory Committee's 1972 proposed psychotherapist privilege defined psychotherapists as "psychologists and medical doctors who provide mental health services." *Id.* at 16 n.16.

### 1.    Waiver of the Psychotherapist-Patient Privilege

The *Jaffee* Court stated, "Like other testimonial privileges, the patient may of course waive the protection," but did not discuss what might constitute such a waiver. *Id.* at 15 n.14. The Court recognized that subsequent development of the psychotherapist-patient privilege would have to occur on a case-by-case basis. *See id.* at 18 ("Because this is the first case in which we have recognized a psychotherapist privilege, it is neither necessary nor feasible to delineate its full contours in a way that would 'govern all conceivable future questions in this area.'") (*quoting Upjohn*, 449 U.S. at 386).

Since *Jaffee*, courts have examined what constitutes a waiver of the psychotherapist-patient privilege. This issue has not been addressed by the United States Court of Appeals for the Fourth Circuit, and only one district court within the Fourth Circuit has examined the waiver issue. *Vasconcellos*, 962 F. Supp. at 707-09 (finding plaintiff waived psychotherapist-patient privilege by placing mental state at issue in sexual harassment suit claiming damages from "'severe emotional distress'" and by claiming intentional infliction of emotional distress, but nonetheless quashing subpoena to plaintiff's treating psychiatrist as overbroad and seeking irrelevant information).

Most courts addressing the waiver issue agree that "the psychotherapist privilege can be waived by a party who puts his or her mental state or condition at issue in the lawsuit as an element of a claim or defense." *Id.* at 708. Courts diverge, however, in taking a broad, narrow, or middle-ground approach as to what type of emotional distress claims will put a party's mental condition sufficiently "at issue" to constitute a waiver of the privilege. This analysis may require a court to distinguish between "garden variety" and severe emotional distress claims. *See Jessamy v. Ehren*, 153 F. Supp. 2d 398, 401-02 (S.D.N.Y. 2001) ("Claims of emotional distress

12

that are 'garden variety' are 'simple or usual'. . . . However, claims of emotional distress which

are not 'garden variety' include complex claims which 'result[] in a specific psychiatric

disorder' . . . . Generally, the distinction hinges on whether or not the claimed injury requires

medical attention.") (*citing Ruhlmann v. Ulster County Dep't of Soc. Servs.*, 194 F.R.D. 445, 449

n.6 (N.D.N.Y. 2000)). The three competing views of waiver appear below.

a.     <u>Broad View of Waiver</u>

The broad view of waiver considers a plaintiff to have waived the protection of the

psychotherapist-patient privilege merely by claiming emotional distress damages in a lawsuit,

regardless of whether the plaintiff intends to use his or her psychotherapist's records or testimony

in the suit. *See Jackson*, 193 F.R.D. at 220-21 ("In what has become known as the broad view,

courts have found waiver of the privilege where the plaintiff alleges emotional distress in his/her

complaint, thereby placing his/her mental or emotional condition at issue, and seeks monetary

damages for the psychological injury.").

In *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127 (E.D. Pa. 1997), a case frequently

cited for the broad waiver position, the plaintiff brought suit claiming that her employer fired her

in violation of the Americans with Disabilities Act ("ADA"), despite knowing that her chronic

tardiness was due to medication she took for clinical depression. *Id.* at 128. The defendant

employer sought Plaintiff's medical records in discovery, including those of her treating

psychiatrist. *Id.* Because the plaintiff would have to prove that she suffered from clinical

depression in order to succeed on her ADA claim, the *Sarko* court found that she had placed her

mental condition at issue and her psychiatrist's records were not privileged. *Id.* at 131. The

court reasoned that "allowing a plaintiff 'to hide . . . behind a claim of privilege when that

condition is placed directly at issue in a case would simply be contrary to the most basic sense of

13

fairness and justice." *Id.* at 130 (*quoting Premack v. J.C.J. Ogar, Inc.*, 148 F.R.D. 140, 144-45 (E.D. Pa. 1993)).

### b.  Narrow View of Waiver

Courts adopting a narrow view of waiver have held that when a plaintiff merely alleges "garden variety" emotional distress claims, no waiver of the psychotherapist privilege occurs. *See, e.g., Kunstler v. City of New York*, 242 F.R.D. 261, 264; *Sorenson v. H & R Block, Inc.*, 197 F.R.D. 199, 204 (D. Mass. 2000) ("Such terms as 'mental anguish, severe emotional distress, humiliation, personal indignity, emotional pain, anxiety embarrassment, and anxiety' and 'severe emotional distress, including physical and mental suffering, shame, humiliation' do not denote the type of psychic or psychological injury which would trigger a waiver.").

Courts adopting the narrow approach will find a waiver only if the party asserting the privilege affirmatively uses his or her mental condition in the case, such as when the cause of action relies on the diagnosis or advice of a party's psychotherapist. *See Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 229-30 (D. Mass. 1997) ("[S]o long as Plaintiff does not call as a witness a person who has provided her with psychotherapy, and does not introduce into evidence the substance of any communication with such a person, the communication between her and her psychotherapist is privileged.").

### c.  Middle Ground Approach to Waiver

Under either the broad view or the narrow view of waiver, a few guidelines emerge. First, a mere allegation of incidental "garden variety" emotional distress claims, without seeking to recover damages for the same, will not waive the privilege. *See Jackson*, 193 F.R.D. at 226 n.8; *see also Koch v. Cox*, 489 F.3d 384, 391 (D.C. Cir. 2007) (finding no waiver of privilege by acknowledging mental distress where plaintiff did not seek recompense for that mental distress).

14

Second, a plaintiff who intends to use affirmatively her psychotherapist's testimony or records waives the privilege, as does a plaintiff who alleges severe or extreme emotional distress damages as a result of defendant's conduct. *See Doe v. City of Chula Vista*, 196 F.R.D. 562 (S.D. Cal. 1999); *Doolittle v. Ruffo*, No. 88-CV-1175, 1997 WL 151799 (N.D.N.Y. Mar. 31, 1997). A plaintiff waives the privilege by claiming negligent or intentional infliction of emotional distress. *Green v. St. Vincent's Med. Ctr.*, 252 F.R.D. 125, 129 (D. Conn. 2008).

A middle ground approach to waiver also has emerged. The court's decision in *Ruhlmann* typifies such an approach. There, the court vacated the magistrate judge's finding that plaintiff waived the psychotherapist-patient privilege by seeking incidental emotional distress damages. In *Ruhlmann*, the court noted that a broad or automatic view of waiver requiring disclosure of psychotherapist communications in that ADA case "would be inconsistent with the purpose of the psychotherapist-patient privilege," which is "rooted in the imperative need for confidence and trust." 194 F.R.D. at 451 (*quoting Jaffee*, 518 U.S. at 10). Under this approach, some claims (such as intentional infliction of emotional distress) cause waiver, and some claims where "a large portion of the requested damages arise out of" claims of emotional distress also cause waiver. *See Vasconcellos*, 962 F. Supp. at 708. However, no waiver flows from emotional damage claims incidental to other claims, or from claims in which emotional distress damages do not predominate.[8]

---

[8] The *Ruhlmann* court identified that cases finding a broad or automatic waiver tend to involve claims with extremely severe emotional damages at issue, including those that might invoke a waiver under a narrow approach. *See, e.g., Jackson*, 193 F.R.D. at 217, 227 (adopting broad view of waiver where plaintiff alleged "critical need [for] mental health treatment" due to serious depression, hospitalization, and hallucinations).

2.    **Extent of Waiver by Plaintiff as to Dr. Karam**

In finding that no waiver of the privilege has occurred with respect to Dr. Karam, this

Court finds persuasive the reasoning in *Ruhlmann* and other so-called middle-ground waiver

cases. Plaintiff and her then-spouse went to Dr. Karam, a Ph.D. psychologist, for couples therapy

in the summer of 2006 "for about maybe eight visits, maybe ten." (Cappetta Dep. 96:8-10.)

The psychologist-patient privilege clearly applies to any records held by Dr. Karam detailing the

marital counseling sessions between Dr. Karam, Plaintiff, and Plaintiff's ex-husband. *See*

*Sorenson*, 197 F.R.D. at 203 (applying psychotherapist-patient privilege to both joint and

individual marriage counseling records).

Plaintiff affirmatively states that Dr. Karam's counseling bears no relation to her

emotional distress claims in this case. Plaintiff notes she has not alleged that Defendant caused

her any damage prior to May 2007. Plaintiff contends that she has not alleged a mental health

disorder caused by Defendant's conduct. (Pl.'s Reply Br. Supp. Mot. Quash 8.) Plaintiff seeks

no compensation for medical visits. Unlike Dr. Madjic's records, Plaintiff has not produced any

documents.

This record cannot support a finding that Plaintiff has waived the privilege as to

Dr. Karam. Although her mental state as to anxiety and its treatment remain an issue in this case

because Plaintiff seeks emotional distress damages, this record suggests Dr. Karam did not treat

those ailments. Dr. Karam provided marital counseling to Plaintiff and her ex-husband. Nothing

in Plaintiff's Amended Complaint or deposition testimony suggests that she will introduce

evidence relating to her relationship with her husband to prove her case or any damages, other

than that they were estranged at the time Defendant contacted her to collect the debt. Finally,

Plaintiff's contact with Dr. Karam predates the debt collection incident by nearly a year. The

16

Court will not disregard the important policy interest identified by the Supreme Court in *Jaffee* in allowing people to receive confidential counseling. *Jaffee*, 518 U.S. at 11-13.

Still, as a protection to Defendant's contention that they lack assurance about relevance until they see discovery,[9] the Court will order Dr. Karam to submit an affidavit confirming the irrelevance of the documents at issue. *See Greenberg v. Smolka*, No. 03-Civ-8572, 2006 WL 1116521 (S.D.N.Y. April 27, 2006). Plaintiff expressed no objection to submitting such an affidavit. *See Greenberg v. Smolka*, No. 03-Civ-8572, 2006 WL 1116521 (S.D.N.Y. April 27, 2006). This process properly balances the competing interests at bar.

Plaintiff's motion to quash the subpoena to Dr. Karam will be GRANTED because the psychotherapist-patient privilege applies to the records sought.[10] Plaintiff will be DIRECTED to provide an affidavit or declaration from Dr. Karam regarding the pertinence of her records to Plaintiff's claims. *See Greenberg v. Smolka*, No. 03-Civ-8572, 2006 WL 1116521 (S.D.N.Y. April 27, 2006).

---

[9] In addition to claiming Plaintiff has placed her mental condition at issue, Defendant also asserts that her marital difficulties pertain because the account at issue belonged to her husband. (Def.'s Mem. Opp'n 10.) Given Plaintiff's contention about the subject of the counseling here, the Court will find no waiver of the privilege, subject to the protection discussed above.

[10] Because the Court rests on the psychotherapist-patient privilege in its decision, it need not address Plaintiff's argument that the "marital communications" privilege applies to Dr. Karam's records of Plaintiff's couples therapy. *See Ziemann v. Burlington County Bridge Comm'n*, 155 F.R.D. 497, 506 (D.N.J. 1994) (in a pre-*Jaffee* case, finding no marriage counselor privilege as a matter of federal law, but noting that marriage counseling records should be protected as an outgrowth of the state psychotherapist-patient privilege).

## VI.  Conclusion

For the foregoing reasons, Plaintiff's Motion to Quash Subpoenas to Her Medical Providers will be GRANTED IN PART and DENIED IN PART.  The Motion to Quash the Subpoena as to Dr. Karam will be GRANTED.  The subpoena as to Dr. Madjic will be MODIFIED.

An appropriate Order shall issue.

/s/ _____
M. Hannah Lauck
United States Magistrate Judge

Date: **February 23, 2009**
Richmond, Virginia

18