IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| PAMELA G. CAPPETTA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:08-cv-00288 |
| ) | |
| GC SERVICES LIMITED PARTNERSHIP, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO VACATE REFERRAL TO THE MAGISTRATE JUDGE**

COMES NOW Defendant GC Services Limited Partnership ("GC Services"), by counsel, pursuant to 28 U.S.C. § 636(c)(4) and FRCP 73(b)(3), and in support of its Motion to Vacate Referral to the Magistrate Judge states as follows:

**PROCEDURAL BACKGROUND**

In May 2008, Plaintiff Pamela Cappetta filed an individual, single-violation Fair Debt Collection Practices Act ("FDCPA") Complaint against GC Services seeking approximately $10,000 in actual damages, $1,000 in statutory damages, and attorney's fees and costs. (*See* Compl. ¶¶ 7, 9, 13 [Document 1].) In her Civil Cover Sheet, Plaintiff did not check the box that would have indicated she was filing a class action. (*See* Civil Cover Sheet [Document 1-a].) GC Services filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [Documents 3, 4] and, in the alternative, a Motion for a More Definite Statement [Documents 7, 8]. In a memorandum filed in opposition to both motions, Plaintiff characterized her Complaint as "a clear and simple set of allegations in a case that could be tried in two hours …." (*See* Pl's Mem. in Opp. 4 [Document 9].)

In a Notice of Pretrial Conference dated July 11, 2008 [Document 11], the Clerk notified the parties that District Court Judge James R. Spencer would conduct a pre-trial conference on July 31, 2008. The Notice also stated as follows:

> It is possible that the Court may determine that this case is suitable for magistrate's jurisdiction. The parties shall be deemed to have consented and agreed to such jurisdiction unless a party informs the Court of its unwillingness to proceed before the Magistrate Judge in a pleading filed with the Clerk no later than two (2) business days before the scheduled pre-trial conference.

(*Id.* at 2.) Neither party filed a pleading stating it was unwilling to proceed before a Magistrate Judge. The pre-trial conference was conducted by Judge Spencer on July 31, 2008.

In a Memorandum Opinion dated August 1, 2008, Judge Spencer ruled that the Complaint was "poorly drafted" containing only "the barest outline of … recognizable [FDCPA] claim[s]." (*See* August 1, 2008 Mem. Opinion 5 [Document 13].) However, the Court declined to dismiss Plaintiff's individual FDCPA claims and, instead, directed Plaintiff to describe those claims "more specifically." (*Id.* at 5, 7.)

By Order entered August 4, 2008, Judge Spencer referred Plaintiff's individual case to United States Magistrate Judge M. Hannah Lauck "for all purposes." (*See* August 4, 2008 Order [Document 17].) Both parties were "deemed to have consented" to the referral due to their failure to file the pleading referenced in the Notice of Pretrial Conference.[1] *Id.* GC Services had not filed an opposition to a potential referral, as the case involved only an individual FDCPA

---

[1] FRCP 73(b)(1) provides as follows: (1) In General. When a magistrate judge has been designated to conduct civil actions or proceedings, the clerk must give the parties written notice of their opportunity to consent under 28 U.S.C. § 636(c). To signify their consent, the parties must jointly or separately file a statement consenting to the referral. A district judge or magistrate judge may be informed of a party's response to the clerk's notice only if all parties have consented to the referral.

claim with limited damages and, accordingly, did not raise concerns for GC Services under 28 U.S.C. § 636(b) or (c).  Likewise, Plaintiff did not file an opposition to the referral of her individual case to a magistrate judge.

Following entry of the Order referring the case to Magistrate Judge Lauck, Plaintiff twice sought leave to amend her Complaint.  In September 2008, Plaintiff was granted leave to file her First Amended Complaint, which, in addition to her original FDCPA claim, asserted individual claims under the Fair Credit Reporting Act ("FCRA"), the Texas Debt Collection Act, the Credit Repair Organizations Act, and the Virginia Credit Services Businesses Act.  (*See* September 19, 2008 Order [Document 37].)  In short, the First Amended Complaint alleges that GC Services impermissibly accessed a "skip trace" report and a consumer report on Plaintiff to collect from her a debt owed on her then-husband's American Express Optima Credit Card, on which she was a supplemental user.  (*See* First Am. Compl. ¶¶ 7-8 [Document 38].)

In December 2008, Plaintiff again sought leave to amend, this time to file a Second Amended Complaint asserting for the first time an FCRA claim against GC Services on behalf of a putative nationwide class.  (*See* Mot. Amend, Mem. Supp. Mot. Amend, Proposed Sec. Am. Compl. [Documents 49, 50, 50-2].)[2]  GC Services opposed the Motion to Amend on several grounds, and also argued that it had not consented to magistrate jurisdiction over a nationwide class action.  (*See* Mem. Opp. Mot. Amend. 3-4 [Document 60].)  On February 24, 2009, the

---

[2] The proposed Second Amended Complaint defines the class as: "All natural persons with addresses within the United States who were listed only as authorized users or supplemental cardholders on any accounts assigned by American Express to the Defendant for collection and regarding whom the Defendant obtained one or more of: an Experian Address Update consumer report; a Lexis-Nexis Accurint consumer report; a Lexis-Nexis Banko consumer report, or a MicroBilt Credit Commander consumer report within the two year period preceding the filing date of the Complaint." (*See* Sec. Am. Compl. ¶ 71 [Document 50-2].)

Magistrate Judge denied Plaintiff's Motion to Amend without prejudice, and gave Plaintiff until May 1, 2009 to renew her Motion to Amend if she is so inclined. (*See* February 24, 2009 Order [Document 97].)

Importantly, the Magistrate Judge also ruled that Plaintiff could engage in "discovery for the purpose of inquiring into the viability of a class claim" despite the fact that, upon the denial of Plaintiff's Motion to Amend, there is no longer even a putative class before the Court. (*Id.*) In a February 24, 2009 Memorandum Opinion, Magistrate Judge Lauck noted that GC Services had not yet moved to vacate the referral pursuant to Federal Rule 73(b) and 28 U.S.C. §636(c)(4), and until such time as it does the Magistrate Judge retains jurisdiction over the case. (*See* February 24, 2009 Mem. Opinion 7-8 [Document 96].)

As a result of the Court's February 24 ruling on Plaintiff's Motion to Amend, and over the continuing objections of GC Services, Plaintiff is engaging in class discovery on the "viability" of a proposed class. GC Services never consented to the jurisdiction of a Magistrate Judge to adjudicate the viability of a putative nationwide FCRA class. Certainly it did not "clearly, unequivocally, and unambiguously" do so when it was "deemed to have consented" to a "possible" determination that Plaintiff's vague and "poorly drafted" individual, single-violation FDCPA claim was suitable for magistrate jurisdiction.

In addition, GC Services respectfully submits that under the "extraordinary circumstances" of this case the referral to the Magistrate Judge should be vacated. In the alternative, GC Services submits that "good cause" exists for this Court to vacate the referral on its own motion.

## ARGUMENT

**I.     28 U.S.C. § 636(c)(4) and Federal Rule 73(b) provide this Court with the discretion to vacate a reference of a civil matter to a Magistrate Judge.**

In her February 24, 2009 Memorandum Opinion, Magistrate Judge Lauck indicated that a jurisdictional challenge under § 636(b) was not appropriate inasmuch as the parties had consented to her jurisdiction over "all proceedings" and "for all purposes." (*See* February 24 Mem. Opinion 4-5.)[3] "28 U.S.C. § 636(c) governs the jurisdiction of the undersigned Magistrate Judge in this case, not § 636(b)." (*Id.* at 5.) The Magistrate Judge also suggested the challenge was more properly styled as a motion to vacate under Federal Rule 73(b) which should be brought before the District Judge. (*Id*. at 5, 7-8).

In its Memorandum in Opposition to the Motion to Amend, GC Services argued that the motion should not be decided by the Magistrate Judge in light of 28 U.S.C. § 636(b)(1)(A), which provides in part that "a motion … to permit maintenance of a class action" may not be referred to a magistrate judge. (*See* Mem. Opp. Mot. Amend 3-4 [Document 60].) GC Services also argued that it had never consented to magistrate jurisdiction over a nationwide class claim in the first place. (*Id.*) This challenge was raised before the Magistrate Judge because GC Services (1) had not opposed magistrate jurisdiction over Plaintiff's individual FDCPA action, and (2) did not know whether Plaintiff's motion to amend in order to pursue claims on behalf of a putative nationwide class would be granted or denied and, if so, on what grounds. Thus, it was premature

---

[3] The August 1, 2008 referral order does provide that the case was referred "for all purposes." (See August 1, 2008 Order [Document 17].) However, GC Services respectfully disagrees with the Magistrate Judge's statement that the case was referred for "All Proceedings." (February 24 Mem. Opinion, 4 [Document 96] Section 636(c) provides that with the parties consent a case may be referred to a magistrate judge for "any *or* all proceedings." (Emphasis Added.) The August 1, 2008 Order does not address this distinction.

5

for GC Services to move to vacate the referral to the Magistrate Judge at that time.  However, the Magistrate Judge's ruling denying leave to amend without prejudice, while permitting Plaintiff to engage in class discovery, effectively permits the maintenance of a class action notwithstanding GC Services' lack of consent, and notwithstanding the absence of a putative class, thereby making this motion ripe:

> Here, the Plaintiff seeks amendment of the complaint only, not class certification.  The rules permit such a posture.  Moreover, this Court has before it a record bereft of specific facts regarding the nature of the class because no class claim exists in the case yet.  The record here cannot sustain a decision on the current motion [to amend] even under Fed. R. Civ. P. 12(b)(6).
>
> The Court sees as the best recourse the extension of discovery to allow discovery into the viability of the existence of a class that will meet the requirements of Rule 23.  This approach will allow both parties limited time to better place before the Court what it need consider regarding the viability of a class action claim.

(February 24 Mem. Opinion 11.)

As a result of the Court's ruling, GC Services finds itself litigating a putative nationwide FCRA class before the Magistrate Judge, a case extraordinarily different from that in which the parties were "deemed to have consented" to magistrate jurisdiction.  The District Court referred a case which, according to Plaintiff's counsel, "could be tried in two hours".  Manifestly, the "class" FCRA claim asserted in the proposed Second Amended Complaint bears no resemblance to the vague and "poorly drafted" individual FDCPA claim before the Court at the time of the referral to the Magistrate Judge.  In ruling on Plaintiff's Motion to Amend, Magistrate Judge Lauck noted that Plaintiff's proposed Second Amended Complaint "**obviously changes the nature of the case ….**" (*Id.* at 12 (emphasis added).)

As implicitly suggested by the Magistrate Judge in her February 24 Mem. Opinion, GC Services moves the District Court to vacate the referral and to exercise its right to have an Article

III judge hear the putative nationwide class action now effectively asserted against it. The District Court has the authority to grant this request. Section 636(c)(4) expressly provides that "[t]he court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate [judge] under this subsection." Similarly, Federal Rule of Civil Procedure 73(b)(3) provides that, "[o]n its own for good cause – or when a party shows extraordinary circumstances – the district judge may vacate a referral to a magistrate judge under this rule." Even when parties "consent to the exercise of case-dispositive jurisdiction by a magistrate judge … the district judge retains 'residual authority' under the statute and under Rule 73(b) to vacate the reference of the proceedings." Wright & Miller, FEDERAL PRAC. & PROC., § 3071.3 (2008). The jurisdiction conferred on magistrate judges by Section 636 is constitutional, in part, because "the district court retains sufficient control over the magistrate, including the authority to vacate the reference on its own motion, to render the magistrate a mere adjunct of the district court." *Gairola v. Department of General Services*, 753 F.2d 1281, 1285 (4th Cir. 1985). *See also Dowell v. Blackburn*, 1991 U.S. App. LEXIS 9402 *2-3 (4th Cir. 1991) (unpublished) ("The *power to cancel a reference*, taken together with the retention by Article III judges of the power to designate magistrate positions and to select and remove individual magistrates provides Article III courts with continuing, plenary responsibility for the administration of the judicial business of the United States" (citation omitted) (emphasis in original)).

United States magistrate judges play a crucial role in the federal judiciary, but their jurisdiction is limited as outlined in 28 U.S.C. § 636. In authorizing referral to magistrate judges, Congress specifically provided that a district judge may not designate a magistrate judge to "dismiss or to permit maintenance of a class action." *See* 28 U.S.C. § 636(b)(1)(A). This

7

limitation has been uniformly acknowledged and respected by the courts that have addressed it. *See, e.g., Carroll v. City of Detroit*, 410 F. Supp. 2d 615, 691 (E.D. Mich. 2006) (concluding that certification of class by magistrate judge was of no effect); *Gonzales v. Rakkas,* 846 F. Supp. 229, 232 (E.D.N.Y. 1994) (magistrate judge may not hear and determine motions that seek to dismiss or permit maintenance of a class action). In enacting § 636(b), Congress gave no indication that the limitation on magistrate jurisdiction applies only when the initial complaint asserts class claims, and not when a plaintiff seeks leave to assert class claims by amendment.

GC Services acknowledges that the case was referred to the Magistrate Judge pursuant to § 636(c) rather than § 636(b). However, GC Services submits that the limitations on magistrate jurisdiction contained in § 636(b) are relevant to this motion; at a minimum, they are informative in determining what GC Services was "deemed" to have "clearly, unequivocally, and unambiguously" consented to in the first place.

## II. GC Services did not consent to magistrate jurisdiction over a putative nationwide class action.

The Fourth Circuit has held that "a consent to proceed before a magistrate judge must be clear, unequivocal, and unambiguous." *U.S. v. Bryson*, 981 F.2d 720, 724 n. 4 (4th Cir. 1992) (citations omitted).

> A magistrate judge's authority under Section 636(b)(1) and Section 636(c) is quite different. Section 636 creates expansive magistrate judge authority only where the consent of the parties is present. Congress' reasoning behind this distinction was, quite obviously, to avoid potential Article III infirmities. … Indeed challenges to a magistrate judge's authority to decide civil cases under Section 636(c) have uniformly withstood constitutional scrutiny because Section 636(c) requires that all parties and the district court consent to the transfer of the case to a magistrate judge and the district court retains sufficient control over the magistrate judge.

(*Id*.) "[I]n most unambiguous terms," the scheme underlying § 636 dictates that consent must be "unambiguous and explicit." (*Id*. at 723.) *See also Murret v. Kenner*, 894 F.2d 693, 695 (5th

8

Cir. 1990) ("[A]ssuring the voluntariness of consent is of fundamental importance since parties consenting to trial before a magistrate are, in effect, waiving their right to trial before an Article III judge"); *Laracuente-Pabon v. Rodriquez et. al*, 1998 U.S. Dist. LEXIS 22430 (D.P.R. 1998) (the courts require that consent, "inasmuch as it constitutes a waiver of a constitutional right, be clear, express and unambiguous, and it cannot be inferred from the parties' conduct") (citing *U.S. v. Bryson* and others (additional citations omitted)).

In this case, GC Services was deemed to have consented to reference of an individual, single-violation FDCPA case. It did not consent to reference of a nationwide FRCA class action. The Plaintiff's proposed Second Amended Complaint "**obviously changes the nature of the case ….,**" as does permitting Plaintiff to engage in class discovery **"into the viability of the existence of a class that will meet the requirements of Rule 23.**" (February 24 Mem. Opinion 11, 12 (emphasis added)). Nothing in the record indicates that GC Services consented, expressly or impliedly, to referral of "all proceedings" regardless of what happens in the future.

Notably, the putative class also has not consented to magistrate jurisdiction. In her February 24 Mem. Opinion, the Magistrate Judge cited *Williams v. Gen. Elec. Cap. Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998), for the proposition that "[i]n a class action suit, the named parties may consent to § 636(c) jurisdiction on behalf of the entire class, even when the consent occurs prior to class certification." (February 24, 2009 Mem. Opinion 6.) The issue presented in *Williams* was whether unnamed class members are bound by a judgment rendered in a class action by a magistrate judge. GC Services respectfully submits that the situation presented in the *Williams* case is not present in this case. In the *Williams* case, consent to magistrate jurisdiction was given by the "named class representatives," when they were in fact "named class representatives." *See Williams*, 159 F.3d at 268. This is not the case here. When

9

Plaintiff consented to magistrate jurisdiction, she did so in her individual capacity, at a time when only her individual claim was pending. She was not acting as a class representative.

### III. Extraordinary circumstances exist to vacate the magistrate judge referral.

What constitutes "extraordinary circumstances" has no precise definition. (*See, e.g., Murret*, 894 F.2d at 694). GC Services submits, however, that such circumstances exist here.

Magistrate Judge James P. O'Hara discussed the subject of "extraordinary circumstances" at some length in the case of *Rivera v. Rivera*, 216 F.R.D. 655 (D. Kan. 2003). While not binding on this Court, his opinion is nevertheless instructive. In *Rivera*, the parties in a civil case expressly consented to magistrate jurisdiction. At trial, the jury rendered a verdict in favor of the defendant. Magistrate Judge O'Hara subsequently granted the plaintiff's motion for a new trial. Unhappy with this decision, the defendant moved for recusal of the Magistrate Judge and also moved to withdraw its consent to magistrate jurisdiction. After denying the recusal motion, Magistrate Judge O'Hara recommended that the district court deny the motion to withdraw consent, finding it "patently obvious that this motion was motivated by defendant's dissatisfaction with the court's recent order granting plaintiff a new trial." 216 F.R.D. at 661. The defendant contended that its consent did not extend to the granting of a new trial in the case. Magistrate Judge O'Hara disagreed:

> To the contrary, defendant consented to have the undersigned "conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings[.]" A motion for a new trial is a common, and indeed almost a standard, type of post-trial motion. Admittedly, the grant of a new trial on the basis that the jury's verdict was against the weight of the evidence is rare, but it is by no means a post-judgment proceeding that is unforeseeable.

(*Id.*) Magistrate Judge O'Hara then stated his understanding of what constitutes "extraordinary circumstances":

10

> [W]hile the extraordinary circumstances standard has not been precisely defined, it would make sense to construe this standard to be consistent with the notion that a party's waiver of the right to proceed before an Article III tribunal must be knowing and voluntary. Thus, a party's consent ought to be deemed to extend to the full panoply of proceedings and circumstances that a party could and should know might arise during the course of ordinary litigation. **On the other hand, a party should be allowed to withdraw consent if proceedings or circumstances arise that the party neither could nor should have conceivably foreseen at the time the party executed the waiver (i.e., extraordinary circumstances).**

(*Id.*, n. 32 (emphasis added).)

Following the reasoning of the *Rivera* opinion, "could or should [GC Services] have conceivably foreseen" at the time it was deemed to consent to magistrate jurisdiction over Plaintiff's "poorly drafted," "barely … recognizable," single-violation, individual FDCPA claim, that the case was going to morph into a national FCRA class action? Surely the answer is "No."

When the August 1, 2008 referral Order was entered, Plaintiff's case was an individual, one-count FDCPA claim. GC Services' liability was capped at up to $1,000 in statutory damages for the named Plaintiff, actual damages if proven, and reasonable attorney's fee and costs. *See* 15 U.S.C. § 1692k(a)(1)(2)(A). This is no longer the case.

Discovery has been ordered as to a putative nationwide FRCA class. The class size is unclear and there is extensive discovery required even as to that preliminary issue. The class-related discovery exponentially alters GC Services' potential exposure and the putative damages equation. The oral and written discovery needed to determine the class's "viability" has inevitably increased the amount of attorney's fees and costs that both Plaintiff and GC Services will incur. The attorney's fees and costs expended for a class case are much higher than for an individual case, and GC Services could end up bearing the burden of this on both ends (through

it s own fees and costs and, should Plaintiff prevail, through an award of fees and costs expended by Plaintiff and the putative class).

Moreover, under the FCRA, if a plaintiff class successfully demonstrates a defendant's allegedly wrongful actions were willful, that defendant may be liable for an award of between $100 and $1000 per class member. *See* 15 U.S.C. § 1681n(a)(1)(A). Punitive damages can also be entered against a defendant under the FCRA. *See* 15 U.S.C. §§ 1681n(a)(1)(B)(2) and 1681o. As of August 2008, GC Services did not face a potential punitive damages award coupled with a potential class award in the millions of dollars.

In addition to the lack of consent, other factors weigh in favor of vacating the referral under the extraordinary circumstances of this case. Legislative history underlying enactment of Section 636 suggests that the power to vacate referral to a magistrate judge should be exercised "where it is appropriate to have the trial before an article III judicial officer because of the extraordinary questions of law at issue and judicial decision making is likely to have wide precedential importance." *See* S. Rep. 74, 96th Cong., 1st Sess., 14, *reprinted in* 1979 U.S. Code Cong. & Admin. News 1469, 1483. Obviously, a nationwide class action is likely to have wide precedential importance, and to present extraordinary questions of law. As framed in Plaintiff's proposed Second Amended Complaint, the Court will be called upon to determine, in the context of a class action against GC Services, whether "Experian Address Update[s]," "Lexis-Nexis Accurint [reports]," "Lexis-Nexis Banko [reports]," and "MicroBilt Credit Commander [reports]" constitute "consumer reports" for purposes of the FCRA. Indeed, Magistrate Judge Lauck has already decided in the context of Plaintiff's individual claim an issue of first impression in the Fourth Circuit. In granting Plaintiff's Motion to Quash a subpoena *duces tecum* served on one of Plaintiff's physicians, the Magistrate Judge ruled that a plaintiff who

claims emotional distress and mental anguish does not necessarily waive the psychotherapist-patient privilege.  (*See* February 23, 2009 Mem. Opinion 12-17 [Document 91].)  This issue has not yet been addressed by the Fourth Circuit or any federal court sitting in Virginia (*Id.*), and presumably will become the law of the case for purposes of the putative class.

GC Services has located one case with a factual pattern somewhat similar to that presented here.  In *Davis v. Eastman Kodak*, C.A. No. 04-CV-6098 (W.D.N.Y., Mar. 4, 2005) (unpublished), an individual Title VII case was initiated by a *pro se* plaintiff.  Based on the written consents of the parties, characterized in the decision as "for all purposes" (*See* Decision and Order 2 (Document 64 in Case 6:04-cv-06098-JW(F))), the district court first referred the case to a magistrate judge "for all pre-trial matters, and non-dispositive motions," and later transferred the case to the magistrate judge "for all matters."  *Id*.  Plaintiff later retained counsel, who informed defense counsel that plaintiff was considering an amendment of its complaint to assert a class action.  Defense counsel agreed to extend the deadline for seeking leave to amend in return for a somewhat vague "stipulation" that ostensibly would permit the parties, in the event of amendment, to revisit all issues addressed in a standing pretrial scheduling order.  In the mind of defense counsel, this included the option of revisiting the issue of consent to magistrate jurisdiction.  The "stipulation" was entered by the magistrate judge.  Plaintiff later amended the complaint to add class allegations and ten additional plaintiffs, and as a result defendant sought to withdraw its prior consent to magistrate jurisdiction.

Defendant contended that "it never consented to magistrate judge jurisdiction 'following the filing of the Amended Complaint,'" and that the stipulation agreed to by the parties and entered by the magistrate judge evidenced defendant's "'explicit preservation' of its right to not consent."  *Id.* 7.  The district court judge disagreed, ruling he had not signed any stipulation and

13

that the magistrate judge "did not have the authority … to readdress his own jurisdiction…." *Id.* 8. "Once a case is referred to a magistrate under section 636(c), the reference can be withdrawn only by the district court, and only 'for good cause shown on its own motion, or under extraordinary circumstances shown by any party.'" *Id.* (citation omitted.) Noting that "there is no dispute that all the parties have consented", the district court ruled that the amended case "was the same one to which the parties had originally consented to magistrate jurisdiction and not a new action." *Id.* 9, 10. The district court found "no extraordinary circumstances justifying vacatur of the referral."

The situation in *Davis v. Eastman Kodak* is distinguishable from that in the present case (*e.g.*, it involved express written consents, and the efficacy of a vague "stipulation"); it is not binding on this Court and, frankly, it is not persuasive. Congress has recognized that a class action is different than an individual case, and that litigants in a class action should be afforded their Article III rights. As described above, this case has undergone extraordinary changes to the discovery, liability and exposure that GC Services will face in defending against a putative nationwide class. Plaintiff's proposed Second Amended Complaint "**obviously changes the nature of the case ….**" (February 24 Mem. Opinion 12 (emphasis added).) Furthermore, the parties to this action did not consent, expressly or impliedly, to the jurisdiction of a magistrate judge to oversee the discovery and adjudicate the outcome of a putative nationwide class action.

Accordingly, this Court should enter an order vacating the referral to the Magistrate Judge and re-assigning the case to a District Court Judge. No prejudice to either party will result if this Court vacates the magistrate referral. No dates have been set for expert discovery, summary judgment or trial, and discovery remains ongoing.

14

**IV.     Good Cause exists to vacate the magistrate judge referral.**

GC Services submits that the present circumstances are "extraordinary," justifying vacatur of the referral to the Magistrate Judge. If, however, the Court does not find them "extraordinary," then GC Services submits those same circumstances meet the less "stringent" standard for "good cause" under § 636(c)(4), and requests that the Court vacate the referral on its own motion. *See Murret* 894 F.2d at 695, n. 4 ("We have analyzed the district court's vacation of the reference to the magistrate under the more stringent 'extraordinary circumstances' condition. By doing so, we do not suggest that a district court is constrained to use that more stringent standard simply because the issue before the district court is precipitated by the motion of a party.").

## CONCLUSION

WHEREFORE, Defendant GC Services Limited Partnership respectfully requests that this Court enter an Order vacating the referral to the Magistrate Judge, re-assigning the case to a United State District Judge, and vacating the parties' consent pursuant to U.S.C. § 636(c)(4) and Fed. R. Civ. P. 73(b), and that this Court award such other and further relief as it deems just and proper.

Respectfully submitted,

GC SERVICES LIMITED PARTNERSHIP

By: /s/_____
    James C. Skilling (VSB No. 27998)
    Rebecca H. Royals (VSB No. 71420)
    Zev H. Antell (VSB No. 74634)
    Attorneys for GC Services Limited Partnership
    BUTLER, WILLIAMS & SKILLING, P.C.
    100 Shockoe Slip, 4th Floor
    Richmond, Virginia 23219
    Telephone: (804) 648-4848
    Facsimile: (804) 648-6814

E-mail: jskilling@ butlerwilliams.com
rroyals@butlerwilliams.com
zantell@butlerwilliams.com

David M. Schultz (admitted *pro hac vice*)
Attorney for GC Services Limited Partnership
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, IL  60601-1081
Telephone: (312) 704-3000
Facsimile: (312) 704-3000
E-mail:  dschultz@hinshawlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of April, 2009, I electronically filed the foregoing Defendant's Memorandum in Support of its Motion to Vacate Referral to the Magistrate Judge pursuant to Fed. R. Civ. P. 73(b)(3) and 28 U.S.C. § 636(c)(4) with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Matthew J. Erausquin, Esquire
CONSUMER LITIGATION ASSOCIATES, P.C.
10560 Main Street, PH-15
Fairfax, Virginia  22030

Leonard A. Bennett, Esquire
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia  23606

Jason M. Krumbein, Esquire
KRUMBEIN CONSUMER LEGAL SERVICES
1650 Willow Lawn Drive, Suite 300
Richmond, Virginia  23230

*Counsel for Plaintiff*

/s/_____
James C. Skilling (VSB No. 27998)
Attorney for GC Services Limited Partnership
BUTLER WILLIAMS & SKILLING, P.C.
100 Shockoe Slip, 4th Floor
Richmond, Virginia  23219
Telephone: (804) 648-4848
Facsimile: (804) 648-6814
Email: jskilling@butlerwilliams.com