IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PAMELA G. CAPPETTA                )
                                  )
            Plaintiff,            )
                                  )
      v.                          )        Civil Action No. 3:08cv288
                                  )
GC SERVICES, LP                   )
                                  )
            Defendant.            )
_____)

## MEMORANDUM IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant GC Services, LP ("GC Services") respectfully submits this memorandum of law in support of its Motion for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c).

### INTRODUCTION

The facts alleged in plaintiff's complaint (if true) suggest a disturbing scheme on the part of plaintiff's husband, and very possibly might even give plaintiff a defense to the underlying debt at issue. The facts alleged in plaintiff's Second Amended Complaint ("SAC") also establish, as a matter of law, that GC Services did not violate any legal duty owed to her.

The allegations are straightforward. GC Services contacted the plaintiff in an effort to gather information concerning an American Express account on which plaintiff was listed as an authorized user and which had appeared on plaintiff's consumer report with a balance of $10,444.59. (SAC ¶¶ 5, 10, 17, 31.) As a debt collector for American Express, the actual creditor on the account, GC Services had no direct information to

suggest plaintiff was not responsible for that debt; however, plaintiff represented to GC Services that she was unaware of the existence of the account or any charges made on the account.  (*Id*. ¶ 31.)  Plaintiff nonetheless agreed to pay the full amount.  (*Id*. ¶ 50.)  "Upon reflection," plaintiff changed her mind and, several months later, requested a refund from GC Services.  (*Id*. ¶¶ 55, 67.)

Plaintiff's allegations are consistent with a garden-variety debt dispute: Plaintiff contends that she remitted $10,449.59 to satisfy a debt to American Express she now maintains she did not owe.  What renders plaintiff's complaint extraordinary is that, rather than disputing her debt with American Express, or pursuing recourse against her husband (who, so far as can be ascertained from the complaint, opened a supplemental card account in her name and incurred the debts at issue), plaintiff instead has attempted to assert numerous claims -- including a late-breaking class claim under the Fair Credit Reporting Act -- against GC Services under a multitude of federal and state statutes with only dubious connections to the core allegations asserted in her complaint.

As plaintiff's allegations make clear, those claims are now due to be dismissed. *First*, plaintiff's Fair Credit Reporting Act ("FCRA") claim should be dismissed, because plaintiff's allegations, judged under established Fourth Circuit law, make clear that GC services had a permissible purpose to obtain a consumer report relating to her; the mere fact that plaintiff disputes her legal liability for a debt that had been reported to the credit bureaus in her name does not make it improper for GC Services to have obtained such a consumer report.[1]  (*See* Section I *infra*.)  *Second*, the remaining counts of plaintiff's

---

[1]     While GC Services has numerous other defenses available to it (including, for example, that the information it obtained here was not a "consumer report" for purposes of the FCRA), it has limited its arguments here to those that are cognizable under Fed. R. Civ. P. 12(c).  The evidentiary record developed during discovery would give GC Services additional dispositive arguments beyond those presented here.

complaint should be dismissed pursuant to the voluntary payment doctrine, because plaintiff paid the now-disputed amount in full awareness of the facts on which the present dispute is based. (*See* Section II *infra*.) **Third**, plaintiff's claim under the Texas Debt Collection Act ("TDCA") claim should be dismissed on the independent ground that, under Virginia's choice of law rules, the TDCA is simply not applicable to the conduct alleged in the complaint, none of which took place in Texas and which allegedly affected plaintiff in Virginia. **Finally,** plaintiff's Credit Repair Organizations Act ("CROA") claim must be dismissed because plaintiff's allegations make clear that GC Services was not acting as a "credit repair organization," and thus, is not subject to CROA with respect to the conduct alleged in the complaint.

In short, plaintiff may or may not be liable for the delinquent credit card balance she voluntarily paid, but any defenses she has to that debt cannot transform a commonplace debt dispute into affirmative claims against GC Services, an innocent party, that plaintiff's allegations make clear did nothing more than investigate and attempt to collect a debt that – by plaintiff's own admission – existed and was reported to credit bureaus in her name.

**ARGUMENT**

A motion for judgment on the pleadings under Rule 12(c) is decided according to the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See, e.g., Independence News, Inc. v. City of Charlotte*, No. 08-1654, 08-1655, 2009 U.S. App. LEXIS 11842, at *10-11 (4th Cir. June 3, 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

---

As the Supreme Court noted in *Bell Atlantic Corp v. Twombly,* defendants should be spared "the potentially enormous of expense of discovery," where, as here, the complaint allegations themselves make clear that

3

obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not

do. Factual allegations must be enough to raise a right to relief above the speculative

level on the assumption that all allegations in the complaint are true (even if doubtful in

fact)." *Bell Atl. Corp.*, 550 U.S. at 555 (citations omitted; alterations in original).  Under

the standard, this action must be dismissed for the reasons set forth below.

## I.     PLAINTIFF'S FCRA CLAIM MUST BE DISMISSED BECAUSE GC SERVICES ACCESSED HER INFORMATION FOR A PERMISSIBLE PURPOSE.

As plaintiff herself points out (SAC ¶ 9), debt collectors are permitted to access a

consumer report when the user "intends to use the information with a credit transaction

involving the consumer  . . . and involving . . . the collection of an account" or "otherwise

has a legitimate business need for the information in connection with a business

transaction involving the consumer."   15 U.S.C. §§ 1681b(a)(3)(A) & (E); *see also*

*Korotki v. Thomas, Ronald & Cooper, P.A.*, No. 96-1877, 1997 U.S. App. LEXIS 34157,

at *4 (4th Cir. Md. Dec. 5, 1997).  Plaintiff contends that GC Services did not have a

permissible purpose to access her consumer report because, according to her, she has a

defense to the debt – namely, that it was incurred by her husband without her knowledge.

(SAC ¶¶ 5, 11, 23.)  Plaintiff's argument puts the cart before the horse:  GC Services

accessed information about plaintiff because, as she admits, she was listed as an

authorized user or supplemental cardmember on a delinquent account.  GC Services

therefore contacted her to gather information concerning the debt and the whereabouts of

any other obligors on the account.  The fact that plaintiff now disputes the debt is of no

relevance.  Indeed, even if plaintiff's debt were to be found invalid, that would not render

---

the plaintiff cannot establish a right to relief as a matter of law.  550 U.S. 544 (2007).

GC Services's conduct improper.

The Fourth Circuit has expressly held that seeking to collect a disputed debt is a permissible purpose under the FCRA. *Korotki*, 1997 U.S. App. LEXIS 34157, at *6. The mere fact that the debt is disputed does not preclude a debt collector from obtaining a consumer report since, as the Fourth Circuit noted in *Korotki*, a debt collector is not required to wait until "[the] disputed claim ha[s] been reduced to judgment before obtaining a consumer report." *Id.* at *7; *see also Baker v. Bronx-Westchester Investigations, Inc.*, 850 F. Supp. 260, 262-63 (S.D.N.Y. 1994). The fact that plaintiff now contends that the debt was owed by her husband (estranged or otherwise) is also of no moment. In *Smith v. GSH Residential Real Estate Corp.*, the Fourth Circuit held that a landlord could permissibly obtain the consumer report of a prospective tenant's spouse despite the fact that they were legally separated, where the landlord had no reason to know of the plaintiff's separation. *See* No. 90-1166, 1991 U.S. App. LEXIS 12885, at *7 (4th Cir. Va. June 20, 1991); *see also Simoneaux v. Brown*, 403 F. Supp. 2d 526, 537 (M.D. La. 2005) (defendants' use of spouse's consumer report was for permissible purposes where "the defendants were in good faith relying on the presumption of a community obligation under Louisiana law, making it reasonable for the defendants to believe accessing plaintiff's credit information in a joint report was a 'permissible' purpose under the Act."); *Short v. Allstate Credit Bureau*, 370 F. Supp. 2d 1173, 1179-80 (M.D. Ala. 2005) (noting that it is permissible to access a spouse's credit report in relation to an account not held by that spouse in "circumstances where the spouse will use the account or be contractually liable on the account").

Plaintiff alleges that GC Services accessed her consumer report to gather

information concerning a debt on an account upon which both plaintiff and her former spouse were listed in the relevant credit bureau files as obligors. Fourth Circuit law makes it clear that this is a permissible purpose, whether or not the debt is later deemed invalid or is deemed to be owed by another. Plaintiff's FCRA claim must therefore be dismissed.

## II.    CLAIMS II THROUGH IV ARE BARRED BY THE VOLUNTARY PAYMENT DOCTRINE.

### A.    THE VOLUNTARY PAYMENT DOCTRINE PRECLUDES DAMAGES ACTIONS BASED ON A DISPUTE ABOUT THE LEGALITY OF AN OBLIGATION THAT WAS VOLUNTARILY PAID.

Plaintiff's TDCA, FDCPA and CROA claims must be dismissed under the voluntary payment doctrine because, according to the complaint, plaintiff voluntarily paid the debt with a full understanding of the facts on which she now bases her dispute. The voluntary payment doctrine has been "well developed in Virginia case law at least since the early 19th century." *Williams v. Consolvo*, 379 S.E.2d 333, 336 (Va. 1989). The doctrine holds that someone who pays money with full knowledge of facts, even if laboring under a mistake of law or paying under protest, is deemed to be a volunteer and is barred from pursuing money damages based on a later dispute about the payment:

> Where a person with full knowledge of the facts voluntarily pays a demand unjustly made upon him, though attempted or threatened to be enforced by proceedings, it will not be considered as paid by compulsion, and the party thus paying is not entitled to recover back the money paid, though he may have protested against the unfounded claim at the time of payment made.

*Id*. (emphasis omitted; quoting *Wessel, Duval & Co. v. Winborne & Co.*, 99 S.E. 719, 721 (Va. 1919)). Thus, no action for recovery lies for "a party making a payment of a demand rather than resort to litigation, and under the supposition that the claim, which

subsequently turned out to be unauthorized by law, was enforceable against him or his property." *Id.* (citations and emphasis omitted); *see also Commonwealth v. Conner*, 174 S.E. 862, 864 (Va. 1934) ("Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back. And the fact that the party at the time of making the payment, files a written protest, does not make the payment involuntary.") (citations and internal quotation marks omitted).

Exceptions to the voluntary payment doctrine "are decidedly few," *Williams*, 379 S.E.2d at 336, and involve situations "where payment is demanded ***upon threat of immediate loss*** of the property*," Lamont v. Seabury*, 64 Va. Cir. 243, 249 (2004) (emphasis added), or when the payor "did not have the time and opportunity to relieve himself from his predicament by resorting to legal methods." *Vick v. Siegel*, 62 S.E.2d 899, 901 (Va. 1951). Where, as here, a plaintiff was not faced with "such ***imminent*** consequences," the payment was voluntary and cannot later be recovered in a subsequent action for damages. *Lamont*, 64 Va. Cir. at 249 (emphasis added) (dismissing a claim for recovery of payments as voluntary when plaintiff knew that the demanded payments on a note were in excess of the amount due but nonetheless paid them under protest); *see also Qualichem, Inc. v. Xelera, Inc.*, 62 Va. Cir. 179, 183 (2003) (payments made under a mistaken belief that they would ultimately benefit plaintiff were voluntary and unrecoverable).

**B.    THE COMPLAINT ESTABLISHES THAT PLAINTIFF HAD FULL KNOWLEDGE OF THE RELEVANT FACTS.**

In applying the voluntary payment doctrine, courts in Virginia have held that "all payments are presumed to be voluntary until the contrary is made to appear." *See City of Va. Beach v. Octo, Inc.*, 30 Va. Cir. 507, 509 (1981) (citations omitted). "[K]nowledge of *all* the facts" is not required for a payment to be voluntary. *Amica Mut. Ins. Co. v. Liberty Mut. Fire Ins. Co.*, 72 Va. Cir. 154, 159 (2006) (emphasis in original). "The 'with full knowledge of the facts' element requires that a person have knowledge of enough facts to make him a volunteer. This would not require knowledge of absolutely every fact in order to be considered a volunteer." *Id.* In *Amica*, the court denied recovery to a plaintiff secondary insurer that had settled a claim with a claimant and later sought recovery of the settlement amount on the theory that it had been unaware of the existence of a primary insurance policy. *Id.* at 158-59. The court rejected the argument on the ground that the plaintiff could have assured itself of being the only carrier on the claim by filing a declaratory judgment action but that instead, it made a "business decision" to settle. *See id.* at 160.

Here, plaintiff's allegations make it abundantly clear that she was aware of all facts she now contends render unlawful GC Services' attempt to collect the debt from her. *See Commonwealth v. Conner*, 174 S.E. 862, 864 (Va. 1934) (voluntary payment doctrine applies "[w]here a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal"). According to plaintiff's allegations,

- Plaintiff had never applied for the disputed American Express account. (Compl. ¶ 19.)

- Plaintiff had never held or used a card related to the disputed American Express Account. (*Id.* ¶¶ 19-20.)

- Plaintiff had no knowledge of the charges on the disputed American Express account that GC Services had contacted her to collect. (*Id.* ¶ 30.)

- Plaintiff had no knowledge that the disputed American Express account even existed before GC Services contacted her. (*Id.*)

With full knowledge of these facts, plaintiff elected to pay the disputed amount. While plaintiff apparently seeks to plead around the voluntary payment doctrine by alleging that her decision to pay was based on supposed threats that her credit score would be affected if she did not, that cannot revive her claims; the Virginia Supreme Court has made clear that even if a payment is made because a debt was "attempted or threatened to be enforced by proceedings," a later action for damages is barred. *Williams*, 379 S.E.2d at 336. Here, that is all that is alleged; plaintiff contends that GC Services stated it would take various formal steps if she did not pay the disputed amount. Under controlling Virginia law, that is insufficient to avoid application of the voluntary payment doctrine.

### C. PLAINTIFF WAS NOT UNDER AN IMMEDIATE THREAT TO HER PROPERTY.

Plaintiff's payment was voluntary because she was not facing a threat of immediate loss of her property and legal avenues for disputing her obligations on the debt were fully available to her – indeed, had she chosen not to pay the disputed amount, the burden would have been on GC Services or American Express to bring legal action to collect the debt, and to bear the burden of proof in such an action. "The compulsion contemplated by law exists where the party called upon must pay, or suffer his property or person to be taken." *Va. Brewing Co. v. Commonwealth*, 73 S.E. 454, 456 (Va. 1912). Plaintiff obviously does not – and cannot – allege that she was threatened with immediate deprivation of her property or liberty if she did not pay. Absent a "demand[] upon threat

9

of immediate loss of property" depriving the payor of "the time and opportunity to relieve himself from his predicament by resorting to legal methods," *Lamont*, 64 Va. Cir. at 249; *Vick*, 62 S.E.2d at 901, the payment is voluntary and not obtained through compulsion. Thus, in *City of Charlottesville v. Marks' Shows, Inc.*, the owner of an itinerant amusement show claimed that he was wrongfully forced to pay $50 dollars per day to the city of Charlottesville for the privilege of exhibiting his show. 18 S.E.2d 890, 897 (Va. 1942). When, in protest to the demand of the license fee, the owner asked "If I don't pay what will happen," he was told "If you don't pay it we are going to close you up and levy on all of your stuff." *See id*. The owner paid and later brought an action to reclaim the payments. The Supreme Court of Virginia denied recovery holding that the payments were voluntary. *See id*.

A similar outcome occurred in *Wessel*, where the sellers of commodities demanded that the buyer purchase war insurance or face the cancellation of their purchase agreements. *See* 99 S.E. at 719. Despite the buyer's repeated attempts to deny any responsibility for insurance, the court held the buyer's payment voluntary because "[i]t had the option to pay or else have the contract rescinded, and it elected to make the payment." *Id*. at 721. By the same token, in *Virginia Brewing*, the court held that a liquor dealer's license tax incorrectly assessed against plaintiff on the threat of criminal prosecution and fines and penalties was not made "under such compulsion as the law contemplates" because the dealer's "property was not seized" and "no penalty had been adjudicated against it." *See* 73 S.E. at 455-56.

As these cases demonstrate, even accepting plaintiff's allegations as true for purposes of this motion, plaintiff's contention that she was threatened with a "collection

notation on her credit report" and had only 7 days to pay the debt (*see* SAC ¶¶ 32-33) are a far cry from the circumstances where "immediate and urgent necessity" or a need "to prevent an immediate seizure of [one's] person or property" or other "imminent consequences" preclude the debtor from "resorting to legal methods" to dispute the debt. *Conner*, 174 S.E. at 864 (citations omitted); *Lamont*, 64 Va. Cir. at 249; *Vick*, 62 S.E.2d at 901.  Plaintiff's attempt to inject an element of compulsion into her transaction with GC Services by referring to an alleged upcoming refinancing of her home (*see* SAC ¶ 50) is particularly unavailing. Indeed, this very argument was squarely rejected in *Lamont*. There, the plaintiff claimed that, although she paid what she contended were excessive amounts on a note and a deed of trust on her home, the voluntary payment doctrine should not apply because she was involved in a time-sensitive refinancing transaction. *See* 64 Va. Cir. at 243-45.  The court disagreed, holding instead that she had not shown "any exigent circumstance" necessitating the refinancing of defendants' note and because "[p]rior to effectuating the refinancing, [plaintiff] might have filed suit to vindicate her rights but elected not to do so."  *Id*. at 249.

Plaintiff's allegations demonstrate both that she acted with full knowledge of all relevant facts and that she was free of threats of an immediate loss to her property. Therefore, her claims for recovery are barred by the voluntary payment doctrine and should be dismissed.

## III.   PLAINTIFF, A VIRGINIA RESIDENT ALLEGEDLY INJURED IN VIRGINIA, CANNOT INVOKE REMEDIES UNDER THE TEXAS DEBT COLLECTION ACT.

Plaintiff's TDCA claim must be dismissed because, under applicable Virginia choice of law rules, the TDCA simply does not apply.  Plaintiff, a Virginia resident, is suing in a federal district court in Virginia for an alleged injury she claims she suffered in

Virginia. Federal courts either sitting in diversity or exercising supplemental jurisdiction

over state-law claims must apply the choice of law rules of the forum state. *See Klaxon*

*Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *In re Merritt Dredging Co.*, 839

F.2d 203, 206 (4th Cir. 1988); *Terry v. June*, 420 F. Supp. 2d 493, 500 (W.D. Va. 2006).

Virginia applies the rule of *lex loci delicti* – the law of the place of the wrong – to tort

actions. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir.

2007); *McMillan v. McMillan*, 253 S.E.2d 662, 663 (Va. 1979) ("[T]he settled rule in

Virginia is that the substantive rights of the parties in a multistate tort action are governed

by the law of the place of the wrong."). Under Virginia law, "[t]he place of the wrong or

injury is the place where the injury was suffered . . . ." *Rahmani v. Resorts Int'l Hotel,*

*Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998); *Diaz Vicente v. Obenauer*, 736 F. Supp.

679, 690 (E.D. Va. 1990) ("[T]he place of the injury supplies the governing law in tort

actions.").

     Plaintiff specifically alleges that "the Defendant's violations of the law occurred

in this jurisdiction." (SAC ¶ 2.). The gist of her allegations is that a call was placed to

her at her place of employment in Virginia; a conversation ensued; and as a result of the

conversation, she made a payment which caused her an injury in Virginia. (*Id.* ¶¶ 17-40,

50-51.) There can be no doubt therefore that the place of the alleged wrong is Virginia

and that the "substantive law" governing this claim is that of Virginia. *See Terry*, 420 F.

Supp. 2d at 500 ("[O]nce the court has determined which choice of law rules apply, it

must apply these rules to the facts of the case to determine the appropriate substantive

laws."). Texas law simply does not apply. *See Jones v. R.S. Jones & Assocs.*, 431 S.E.2d

33, 34 (Va. 1993) ("According to the settled rule, the *lex loci delicti* will govern as to all

matters going to the basis of the right of action itself.").

The Fourth Circuit has applied the doctrine of *lex loci delicti* to dismiss a debt collection claim asserted under a state that was not the state where the alleged injury occurred. In *Withers v. Riggs National Bank,* the Fourth Circuit denied recovery to a Maryland plaintiff who had attempted to assert a claim under the Maryland debt collection statute when the place of the wrong was the District of Columbia. *See* 829 F.2d 37 (Table), No. 87-2530, 1997 WL 44689, at *1 (4th Cir. 1987) (per curiam; unpublished). The plaintiff was a resident of Maryland employed at the New Zealand Embassy in Washington, D.C. Collecting on a debt owed by plaintiff, the defendant had written a letter to the New Zealand Ambassador in Washington, D.C., advising him of plaintiff's unpaid debt. The district court held that plaintiff could not assert a claim under the Maryland debt collection statute because the injury had occurred in the District of Columbia. The Fourth Circuit agreed, explaining: "We agree . . . that Maryland applies the traditional rule of *lex loci delicti* in tort actions and that the substantive rights of the parties are to be determined by the law of the state in which the tort took place. The district court correctly found that the alleged tort took place in Washington, D.C., where the impact of the letter produced the injury." *Id.* (citation omitted).

Likewise, in a case involving a claim raised under the Massachusetts Consumer and Business Protection Act, Judge Cacheris of this Court held that "[p]laintiff's unfair trade practices claim is a tort claim, with injuries suffered in Virginia, and therefore is governed by Virginia substantive law. As Virginia does not recognize a cause of action for deceptive trade practice, [the Massachusetts] claim must be dismissed." *Corinthian Mortg. Corp. v. Choicepoint Precision Mktg., LLC*, 543 F. Supp. 2d 497, 503 (E.D.Va.

2008); *see also, e.g., United Dominion Indus., Inc. v. Overhead Door Corp.*, 762 F. Supp. 126, 131 (W.D. N.C. 1991) (dismissing plaintiff's North Carolina statutory claim for unfair and deceptive acts when Texas was the place of the wrong); *see generally In re Bridgestone/Firestone Tire Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules.").

Plaintiff's attempt to assert a claim under the TDCA must fail for those same reasons. All of the conduct alleged in her complaint was directed to and consummated in, and had its alleged effect in, Virginia. Virginia is thus the place of the alleged wrong, and a claim for relief under Texas law cannot proceed. The TDCA claim therefore must be dismissed.

## IV.    PLAINTIFF'S CROA CLAIM MUST BE DISMISSED BECAUSE GC SERVICES IS NOT A CREDIT REPAIR ORGANIZATION.

Plaintiff's CROA claim must be dismissed for the independent reason that GC Services is not a "credit repair organization" as defined by CROA. CROA defines "credit repair organization" as:

> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of--(i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i). . . .

15 U.S.C. § 1679a(3)(A). GC Services plainly does not fall within that definition because, according to plaintiff's allegations, GC Services did not provide credit advice in exchange for a fee.

14

The courts have consistently held that a business organization cannot be held liable as a credit repair organization if the business did not collect a fee or other charge in connection with providing any alleged credit repair services. *See, e.g. Sannes v. Jeff Wyler Chevrolet, Inc.*, No. C-1-97-930, 1999 U.S. Dist. LEXIS 21748, at *8 (S.D. Ohio Mar. 31, 1999) (auto dealer was not a credit repair organization because it did not collect a fee in connection with its financing advice). Merely informing a delinquent borrower that their credit will be adversely affected if they refuse to pay their debt does not transform a debt collector into a credit repair organization for purposes of CROA. *See, e.g., White v. Fin. Credit Corp.*, No. 99 C 4023, 2001 U.S. Dist. LEXIS 21486, at *16-17 (N.D. Ill. Dec. 20, 2001) ("Although credit reporting is quite unremarkable in the business world, it does not render all businesses 'credit repair organizations' if they tell delinquent accounts holders that such reports are made. . . . Because it is not performing (and is not offering to perform) a service for [the plaintiff] with respect to his credit report, [the defendant debt collector] is not a credit reporting organization as defined by the statute.").

Plaintiff's CROA claim here is based solely on the allegation that GC Services informed her that her credit would be negatively affected if she did not pay the disputed American Express card balance. Plaintiff does not – and cannot – allege that GC Services collected any fee for providing plaintiff with a service designed to improve her credit rating. Her CROA claim therefore fails as a matter of law. *See Nixon v. Alan Vester Auto Group*, Inc., No. 1:07CV839, 2008 U.S. Dist. LEXIS 79294, at *24 (M.D.N.C. Oct. 8, 2008) ("[O]nly a credit repair organization or a 'person' associated with a credit repair organization can violate the CROA.") (*quoting Henry v. Westchester*

*Foreign Autos, Inc.*, 522 F. Supp. 2d 610, 613 (S.D.N.Y. 2007)).

CONCLUSION

For the foregoing reasons, GC Services respectfully requests that its motion for judgment on the pleadings be granted, and that plaintiff's Second Amended Complaint be dismissed in its entirety, with prejudice.

Dated: July 2, 2009

Respectfully submitted,

GC SERVICES, LP

By:_____ /s/_____

John "Jack" M. Robb, III, Esq. (VSB No. 73365)
Charles M. Sims, Esq. (VSB No. 35845)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Post Office Box 2499
Richmond, Virginia 23219
(804) 915-4138 Telephone
(804) 916-7238 Facsimile
jack.robb@leclairryan.com
Charles.Sims@leclairryan.com

David M. Schultz, Esq.
Todd Stelter, Esq.
Hinshaw & Culbertson, LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
Telephone: (312) 704-3527
Facsimile: (312) 704-3001
dschultz@hinshawlaw.com
tstelter@hinshawlaw.com

16

James C. Skilling, Esq.
Rebecca H. Royals, Esq.
Zev H. Antell, Esq.
Butler Williams & Skilling PC
100 Shockhoe Slip, 4th Floor
Richmond, Virginia 23219
Telephone:  (804) 648-4848
Facsimile:  (804) 648-6814
jskilling@butlerwilliams.com
rroyals@butlerwilliams.com
zantell@butlerwilliams.com
***Counsel for Defendant GC Services***
***Limited Partnership***

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Leonard A. Bennett, Esq.
Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
3615-H Chain Bridge Road
Fairfax, Virginia 22030
Telephone:  (703) 273-7770
Facsimile:  (888) 892-3512
lenbennett@cox.net
matt@clalegal.com

Jason M. Krumbein, Esq.
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Drive, Suite 300
Richmond, Virginia 23230
Telephone:  (804) 673-4358
Facsimile:  (804) 673-4350
KrumbeinLaw@gmail.com

Richard J. Rubin, Esq.
1300 Canyon Road
Santa Fe, New Mexico 87501
Telephone:  (505) 983-4418
Facsimile:  (505) 983-2050
dickrubin@cs.com
***Counsel for Plaintiff Pamela G. Cappetta***

_____ /s/ _____
John "Jack" M. Robb, III, Esq. (VSB No. 73365)
Charles M. Sims, Esq. (VSB No. 35845)
LECLAIRRYAN, A PROFESSIONAL CORPORATION
951 East Byrd Street, 8th Floor
Post Office Box 2499
Richmond, Virginia 23219
(804) 915-4138 Telephone
(804) 916-7238 Facsimile
jack.robb@leclairryan.com
charles.sims@leclairryan.com
***Counsel for Defendant GC Services Limited
Partnership***