IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| PAMELA G. CAPPETTA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action |
| ) | No. 3:08cv288 |
| GC SERVICES, LP ) | |
| ) | |
| Defendant. ) | |
| _____) | |

### PLAINTIFF'S FINAL REPORT ON STATUS OF DISCOVERY

COMES NOW the Plaintiff, by counsel, and pursuant to the Court's Order of May 15, 2009, she provides the following final status report as to outstanding discovery:

On May 15th, this Court ordered the Defendant to fully respond "forthwith" to Interrogatory No. 24 and Request for Production No. 30. As of July 17th, 2009, the Defendant remains in clear non-compliance with this Court's order. From the day the order was issued, the Plaintiff engaged in a continuous meet and confer dialogue with the Defendant through its former counsel Butler Williams & Skilling (until such point as the firm withdrew from the representation), and thereafter with the Defendant's national counsel, Mr. Schultz. During this effort, Plaintiff made numerous concessions to accommodate the Defendant, including that she would accept a rolling production of the STAR collection records, broken out by year, on a weekly basis. Despite the considerable concessions made by the Plaintiff, the Defendant produced incomplete and redacted data, such that Plaintiff received the first complete account list nearly five weeks after this Court's order.

By the Defendant's own admission in its response to the first status report, the entirety of the production made by the Defendant over the course of the first month following this Court's order was largely deficient, as follows:

**Interrogatory No. 24**

Deficiency #1 - The list of accounts provided by the Defendant omitted literally tens of thousands of accounts placed with the Defendant during the 2007 calendar year, and duplicated accounts placed in 2008 and 2009;

Deficiency #2 - The list of accounts did not list the full name of the supplemental cardholder(s) for each account, or their addresses as ordered;

**Request for Production No. 30**

Deficiency #3 - No "12—21" screens were produced at all from the STAR system, including even the 12-21 screen which regards Pamela Cappetta;

Deficiency #4 - The Defendant produced "Debtor Detail Listings" from the STAR system which record the collection activity taken on the accounts but it removed several fields from these reports, including parts of the address field for the basic cardmember (obligor), as well as the account status field; and

Deficiency #5 - The Debtor Detail Listings were not provided at all for various periods of time between 2006 and 2009.

In the Defendant's first two status report updates, it represented to the Court through its former counsel that it was correcting these deficiencies as of June 19th, and with regard to Deficiency #3, it explicitly promised this Court and opposing counsel that "**GC Services is attempting to extract the 1221 information for production to Plaintiff and is overnighting DVD(s) to its counsel which should be delivered to Plaintiff's counsel on Friday, June 19.**"   This, however, did not occur as promised.

Instead, the information that was subsequently sent to Plaintiff was a massive plain text file consisting of literally hundreds of thousands of incomprehensible strings of data.  The Defendant included a piece of paper inserted into the DVD jacket which instructed Plaintiff that for these lines of data, she could attempt to parse out the meaning of these strings of data by counting the characters in the line to determine which subsets of the string should be associated with a certain data field.  Even if Plaintiff (or the jury) were capable of performing this exercise, the Defendant provided nothing that

even explained the meanings of these fields. More to the point -- no 12-21 screen prints as the collector would have viewed them were ever provided, for the Plaintiff or any of the putative class members, as promised by the Defendant's former counsel.

Since the last status report, the Defendant has twice amended its account list and has supplemented the Debtor Detail Logs, but the following deficiencies remain:

Deficiency #2 – To date, the Defendant has still failed to provide a clean list of the supplemental cardholders for each account. There are just over 500,000 American Express accounts in the relevant time period. Of these, approximately 225,000 accounts contain text within the "Name 2" field. The Defendant previously testified that the "Name 2" contains the names of the supplemental cardholder. However, for more than half of these 225,000 accounts, the data found in this field is not the name of a natural person. Instead, this field contains data such as "3 supps – see 12-21 screen", "not liable" or in many cases, contains incomprehensible strings of letters or numbers. In fact, the name of a natural person appears in approximately only 95,000 of the 225,000 accounts that contain text in this field.

The Defendant has responded that these anomalies exist because it allows its collectors to "free-text" data in this field as they collect on the account. The Defendant position is that since the present state of its database now contains non-responsive data in these fields, it is not able to produce the over-written data in response to the Court's order.

The Defendant's position fails to account for the fact that it had a duty to avoid the spoliation of evidence from the outset of this case (filed in May of 2008). It also fails to acknowledge that it has testified previously in this case that its systems are backed up to tape every evening, these backup tapes are picked up by a third-party vendor, and then stored off-site. Therefore, the full names and addresses of the supplemental cardholders are clearly available to the Defendant -- the simple reason that this Court's order has not been obeyed is that providing the data will require more work than the Defendant

is willing to undertake in order to comply with discovery.

Deficiency #3 – The Defendant has still failed to produce a single 12-21 screen for the Plaintiff or any other putative class member. The Defendant's testimony throughout this case has been that the 12-21 screen contains the names of the individuals listed as supplementals (consistent with the free-text notes entered by the collectors in the "Name 2" field such as "3 supps, see 12-21 screen").

Additionally, the Defendant has testified that in some cases, American Express provided information that contrasted the amount spent by the basic cardmember vs. the supplemental for the 6-month period preceding the placement of the account with the collector. Plaintiff has sought this information since the early stages of this case because the Defendant has consistently taken the position that Plaintiff may even have used the account herself and has refused to admit that Plaintiff did not use the account in response to a request for admissions.

On July 14th, the Defendant delivered yet another DVD which purported to contain the information which would appear on the 12-21 screen in the form of a spreadsheet. Again, screen prints were not produced. The only improvement that the Defendant made to the strings of incomprehensible data produced on June 19th is that it divided the data strings up into fields and placed them into spreadsheet form.

This data was similarly unresponsive. For example, the Defendant has provided no evidence as to what information should be displayed within the 12-21 screen in the regular course of business. It has not even provided any information as to the meanings of these newly produced data fields (e.g. "ALIAS SSN" and "DES UPDATED". If Plaintiff's counsel cannot determine which individual the field simply labeled "Name" is intended to identify after months of poring over the Defendant's computer records, the jury will certainly have the same difficulty. Further, the data produced for the

first time just 3 days ago contains invalid and incomprehensible data in the "Name 2" (supplemental cardholder) field such as:

POS SPS JAYSANNA
NO CO-X
SINGLE
VNU-NLE
NLE**SAFEWAY
UBS AG

Plaintiff's concern is that the Defendant has sought to assert a defense that hypothetically, a supplemental cardholder might have made charges on the account, that these charges would have been displayed in the 12-21 screen, and that its collectors might have concluded that the supplemental cardholder was therefore responsible for the account. If the Defendant intends to rely on this defense (which completely ignores the statute's "account of the consumer" permissible purpose requirement), the Defendant must produce the 12-21 screens which demonstrate that this use by supplemental cardholders is more than theoretical, and further, that its collectors actually relied on this in mistakenly concluding that the supplemental cardholder was responsible. If the Defendant will not produce the information as ordered by the Court, this defense should be stricken as provided by Fed. R. Civ. P 37. If the Defendant intends to pursue this defense, it must produce the screen prints.

## THIRD PARTY DISCOVERY

Following the Defendant's provision of the complete account list for the first time on June 19th, Plaintiff has been in close contact with Joseph Clark of Jones Day, counsel for Experian Information Solutions, Inc. with regard to the outstanding subpoena. Mr. Clark has worked diligently with Plaintiff's counsel to coordinate extraordinary cooperation from his client, a third-party to this litigation. As a result, Experian is now in the process of generating the full list of the names and current addresses of all individuals regarding whom the Defendant obtained an Address Update report

in the relevant time period. Experian is working to provide the data in an expedited fashion and expects to be able to provide this shortly.

Experian has also agreed to make a corporate designee available to testify further regarding the Defendant's representations to Experian regarding its permissible purpose for obtaining these reports which more often than not, regarded the parents, siblings, children and neighbors of the Defendant's collection targets, and to make clear that Experian would never have provided a consumer report regarding these innocent and un-related consumers absent the Defendant's representation as to its permissible purpose.

Third-party Microbilt has agreed through its outside counsel Oscar Marquis to similarly cooperate and to provide documents on an expedited basis to satisfy the outstanding subpoena. It will also provide a corporate designee to testify regarding the Defendant's alleged permissible purpose and the Defendant's use of its systems. Thus, Plaintiff expects that third-parties Experian and Microbilt will be able to provide evidence in this case prior to the extended July 31st discovery deadline, notwithstanding the Defendant's delay and non-compliance with this Court's order.

        Respectfully submitted,
        **PAMELA G. CAPPETTA**,


        _____/s/_____
        Matthew J. Erausquin, VSB#65434
        Leonard A. Bennett, VSB#37523
        Counsel for the Plaintiff
        CONSUMER LITIGATION ASSOCIATES, P.C.
        3615-H Chain Bridge Road
        Fairfax, VA 22030
        Tel: 703-273-7770
        Fax: 888-892-3512
        matt@clalegal.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of July, 2009 I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:

John MacDonald Robb, III
LeClair Ryan P.C.
951 E Byrd St.
Richmond, VA 23218-2499
jack.robb@leclairryan.com

David Matthew Schultz
Hinshaw & Culbertson LLP
222 N LaSalle St., Suite 300
Chicago, IL 60601
dschultz@hinshawlaw.com

Charles Michael Sims
LeClair Ryan P.C.
P.O. Box 2499
Richmond, VA 23218-2499
charles.sims@leclairryan.com

Todd Stelter
Hinshaw & Culbertson LLP
222 N LaSalle St., Suite 300
Chicago, IL 60601
tstelter@hinshawlaw.com

                                          /s/
                              Matthew J. Erausquin, VSB#65434
                              Leonard A. Bennett, VSB#37523
                              Counsel for the Plaintiff
                              CONSUMER LITIGATION ASSOCIATES, P.C.
                              3615-H Chain Bridge Road
                              Fairfax, VA  22030
                              Tel:   703-273-7770
                              Fax:   888-892-3512
                              matt@clalegal.com