1-13907/675      713 776 6535

# SUBSCRIBER SERVICE AGREEMENT

This Subscriber Service Agreement ("Agreement") is entered into by Experian Information Solutions, Inc., acting through its Information Solutions Division ("Experian"), and the subscriber indicated below at the signature line ("Subscriber").

Experian and Subscriber agree as follows:

1. **Experian Services.** Experian will furnish services to Subscriber involving the supply of consumer credit information, identification information, account review services, scoring services, or other data stored in Experian's consumer credit reporting database ("Services").

2. **Charges to Subscriber.** Subscriber agrees to pay Experian the applicable charge for the various services rendered to Subscriber (including "no record" responses) for each Subscriber inquiry to an Experian database. Such charges will be agreed to by the parties and are subject to change upon thirty (30) days notice to Subscriber. Subscriber's payment to Experian is due not later than ten (10) days from Subscriber's receipt of Experian's invoice. Subscriber will be solely responsible for all federal, state and local taxes levied or assessed in connection with Experian's performance of the Services, other than income taxes assessed with respect to Experian's net income, for which income taxes Experian will be solely responsible.

3. **Data Contribution.** If the parties have indicated at the signature line below that Subscriber will contribute data to Experian, then Subscriber agrees to make available to Experian at mutually agreeable times, but not less often than monthly, and in a mutually agreeable format, its credit experience records, and updates thereof, pertaining to individuals with whom it has a credit relationship, including information on new credit accounts opened by Subscriber ("Subscriber's Records"). Subscriber shall provide accurate information in compliance with the Fair Credit Reporting Act, 15 U.S.C. Section 1681 et seq. ("FCRA"). Subscriber shall bear the expense of preparing and delivering Subscriber's Records to Experian. Experian may, at its option and expense, incorporate Subscriber's Records into its credit reporting system. Information so incorporated will be Experian's exclusive property. At Experian's request, and within a reasonable amount of time, Subscriber will promptly verify the accuracy of Subscriber's Records provided to Experian.

4. **Subscriber Use.**

   A. **Subscriber Use.** Subscriber hereby certifies and warrants that it will request and use credit information received from Experian solely in connection with credit transactions, or, if applicable, for employment purposes (e.g., hiring, promotion, transfer or security-related issues), or for other "permissible purposes" as defined by the FCRA. Further, Subscriber hereby certifies and warrants that it will request and use information received from Experian solely in connection with transactions involving the consumer as to whom such information is sought and will not request or use such information for purposes prohibited by law. All such information shall be maintained by Subscriber in strict confidence and disclosed only to employees whose duties reasonably relate to the legitimate business purposes for which the information is requested, and Subscriber will not disclose, sell or otherwise distribute to third parties any information received hereunder, except as otherwise required by law; provided, however, that if Subscriber has purchased a consumer report from Experian in connection with a consumer's application for credit, and the consumer makes a timely request of Subscriber, Subscriber may share the contents of that report with the consumer as long as it does so (a) after verifying and authenticating the consumer's identification; and (b) without charge. Subscriber hereby certifies and warrants that it will take all reasonable measures to identify consumers and to obtain and accurately provide Experian with complete consumer identification as well as appropriate identifying information. Subscriber agrees to provide such information in the form specified by Experian when requesting the Services, and will enter the appropriate type code when requesting the Services to indicate the reason it is obtaining the Services. Experian reserves the right to modify the standard inquiry format to be used by Subscriber, and Subscriber agrees to abide by such modifications. Subscriber further agrees that it will comply with all applicable federal, state and local laws, rules, and regulations relating to its use of the Services and to the provision to Experian of Subscriber's Records. Subscriber certifies and agrees to comply with the FCRA and corresponding state laws whenever adverse employment decisions are based in whole or in part on information received from Experian. Subscriber will notify applicants/employees of their right to a copy of the Experian report, at no charge, within sixty (60) days of the decision. This notification will include the address and telephone number of Experian's consumer assistance office.

   B. **Storage and Security.** Without limitation of the foregoing, Subscriber hereby warrants that it will not, either directly or indirectly, itself or through any agent or third party, without the prior written consent of Experian: (a) request, compile, store, maintain or use the Services (including any of the information therein) to build its own database; or (b) copy or otherwise reproduce the Services (including any of the information therein). Subscriber shall be solely responsible for assuring the storage and delivery or transmission of information to its authorized employee users and to those consumers identified in Section 4.A above in a secure and confidential manner that complies with Experian security procedures, including but not limited to Experian's Access Security Requirements.

Subscribers Initials: _____

CONFIDENTIAL                    CAPPETTA_EXP-0073

C. **FACS+ and Fraud Shield Use.** If Subscriber uses Experian's FACS+ or Fraud Shield Services, which are designed to be fraud detection tools, Subscriber may not use the non-permissible purpose version of the Services to grant or deny credit and may only use the permissible purpose version of the Services in conjunction with other credit information to make a credit granting decision.

5. **Experian Use.** Experian may use Subscriber's Records for any purpose consistent with applicable federal, state and local laws, rules, and regulations; provided, however, that Experian will use its best efforts not to release a list that specifically identifies individuals as Subscriber's customers.

6. **Term.** This Agreement shall continue in force without any fixed date of termination, but either Experian or Subscriber may terminate this Agreement upon thirty (30) days prior written notice to the other. If Experian believes that Subscriber has breached a material obligation contained in this Agreement, Experian may terminate this Agreement immediately by providing Subscriber notice of termination.

7. **Disclaimer of Warranty.** Experian warrants to Subscriber that Experian will use commercially reasonable efforts to deliver the Services promptly. Because the Services involve conveying information provided to Experian by other sources, Experian cannot and will not, for the fee charged for the Services, be an insurer or guarantor of the accuracy or reliability of the Services, data contained in its database, or data provided with the Services. THE WARRANTY IN THE FIRST SENTENCE OF THIS PARAGRAPH IS THE ONLY WARRANTY EXPERIAN HAS GIVEN SUBSCRIBER WITH RESPECT TO THE SERVICES AND SUCH WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, EXPERIAN MIGHT HAVE GIVEN SUBSCRIBER WITH RESPECT THERETO, INCLUDING, FOR EXAMPLE AND WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

8. **Limitation of Liability.** Subscriber acknowledges that Experian maintains a database, updated on a periodic basis, from which Subscriber solicits information, and that Experian does not undertake a separate investigation for each inquiry or request for Services made by Subscriber. Subscriber also acknowledges that the prices Experian charges Subscriber for the Services are based upon Experian's expectation that the risk of any loss or injury that may be incurred by use of the Services will be borne by Subscriber and not Experian. Subscriber therefore agrees that it is responsible for determining that the Services are in accordance with Experian's obligations under this Agreement. If Subscriber reasonably determines that the Services do not meet Experian's obligations under this Agreement, Subscriber shall so notify Experian in writing within ten (10) days after receipt of the Services in question. Subscriber's failure to so notify Experian shall mean that Subscriber accepts the Services as is, and Experian shall have no liability whatsoever for the Services. If Subscriber so notifies Experian within ten (10) days after receipt of the Services, then, unless Experian disputes Subscriber's claim, Experian shall, at its option, either reperform the Services in question or issue Subscriber a credit for the amount Subscriber paid to Experian for the nonconforming Services. This reperformance or credit constitutes Subscriber's sole remedy and Experian's maximum liability for any breach of this Agreement by Experian. If, notwithstanding the above, liability is imposed on Experian, then Subscriber agrees that Experian's total liability for any or all of Subscriber's losses or injuries from Experian's acts or omissions under this Agreement, regardless of the nature of the legal or equitable right claimed to have been violated, shall not exceed the amount paid by Subscriber to Experian under this Agreement during the six month period preceding the alleged breach by Experian of this Agreement. Subscriber covenants that it will not sue Experian for any amount greater than permitted by this Agreement. NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, UNDER NO CIRCUMSTANCES WILL EITHER PARTY HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER HEREUNDER FOR ANY INCIDENTAL, INDIRECT, CONSEQUENTIAL OR SPECIAL DAMAGES INCURRED BY THE OTHER PARTY (INCLUDING DAMAGES FOR LOST BUSINESS, LOST PROFITS OR DAMAGES TO BUSINESS REPUTATION), REGARDLESS OF HOW SUCH DAMAGES ARISE AND REGARDLESS OF WHETHER OR NOT A PARTY WAS ADVISED SUCH DAMAGES MIGHT ARISE.

9. **Indemnification.** Subscriber shall indemnify, defend and hold Experian harmless from and against any and all claims and expenses, including reasonable attorney fees, which may be asserted against or incurred by Experian, based upon the use by Subscriber of the Services or other information furnished by Experian for purposes not permitted by law.

10. **Intellectual Property.** Subscriber acknowledges that Experian has expended substantial time, effort and funds to create and deliver the Services and compile its consumer credit reporting database. The Services and the data in Experian's consumer credit reporting database are and will continue to be Experian's exclusive property. Nothing contained in this Agreement shall be deemed to convey to Subscriber or to any other party any right, title or interest, including any patent, copyright or other proprietary right, in or to the Services or data in Experian's consumer credit reporting database. Subscriber will not use or permit its employees, agents and subcontractors to use, the trademarks, service marks, logos, names, or any other of Experian's or its affiliates' proprietary designations, whether registered or unregistered, without Experian's prior written consent.

11. **Waiver.** Either party may at any time waive compliance by the other with any covenant or condition contained in this Agreement, but only by written instrument signed by the party waiving such compliance. No such waiver, however, shall be deemed to constitute the waiver of any such covenant or condition in any other circumstance or the waiver of any other covenant or condition.

Subscribers Initials: _____

CONFIDENTIAL    CAPPETTA_EXP-0074

12. **Successors and Assigns.** This Agreement will be binding upon and will inure to the benefit of the parties hereto and their respective heirs, representatives, successors and permitted assignees. This Agreement may not be assigned, transferred, shared or divided in whole or in part by Subscriber without Experian's prior written consent.

13. **Audit Rights.** Experian will have the right to audit Subscriber's use of the Services to assure compliance with the terms of this Agreement. Subscriber will be responsible for assuring full cooperation with Experian in connection with such audits and will provide Experian or obtain for Experian access to such properties, records and personnel as Experian may reasonably require for such purpose.

14. **Excusable Delays.** Neither party shall be liable for any delay or failure in its performance under this Agreement (other than for payment obligations hereunder) if and to the extent that such delay or failure is caused by events beyond the reasonable control of the party including, without limitation, acts of God or public enemies, labor disputes, equipment malfunctions, computer downtime, software defects, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

15. **Dispute Resolution.** With the exception of any action taken under paragraphs 4 and 6 or any alleged violation of paragraph 10 of this Agreement, the parties will resolve any dispute arising out of or relating to this Agreement in a binding arbitration conducted under the auspices of the American Arbitration Association in Orange County, California. Disputes arising out of or resulting from actions taken under paragraphs 4, 6 and 10 may be resolved informally by the parties or through the courts.

16. **Severability.** This Agreement shall be deemed to be severable and, if any provision is determined to be void or unenforceable, then that provision will be deemed severed and the remainder of the Agreement will remain in effect.

17. **Contract in Entirety; Law.** This Agreement sets forth the entire understanding and agreement between Experian and Subscriber concerning the Services, and supersedes any prior or contemporaneous oral or written agreements or representations. It may be modified only by a written amendment executed by both parties. This Agreement shall be interpreted in accordance with the laws of the State of California.

18. **Effective Date.** This Agreement is effective beginning on ___Feb.___ ___6___, ___2002___ (the "Effective Date").

IN WITNESS WHEREOF, the parties authorized representatives have executed this Agreement on the date indicated above.

Subscriber ___ will ✓ will not contribute data to Experian.

**EXPERIAN USE ONLY**

Experian Information Solutions, Inc., acting through its Information Solutions Division

By: _____ (Signature)
Title: Bradley J. Goff
       Director, Contracts
Address: 505 City Parkway West
         Orange, CA 92868
         Attn: General Counsel

Subscriber: GC Services LP
(Company Name)

a _____ corporation (list state)

By: _____ (Signature)
Title: CFO
Physical Address: 6330 Gulfton
                  Houston, TX 77081

**EXPERIAN USE ONLY**
Subscriber Number: _____
Company ID: _____

Subscribers Initials: RZ

04.13.00      3 of 3      Subscriber Service Agreement.doc

CONFIDENTIAL      CAPPETTA_EXP-0075



## SUBSCRIBER CERTIFICATION
## OF USE FOR
## EXPERIAN'S FileOne™ REFERENCE PRODUCTS

WHEREAS, the federal Gramm-Leach-Bliley Act, 15 U.S.C.A. Section 6801 et. seq. (2000), ("GLB Act") was enacted to protect the use and disclosure of non-public personal information, including, in certain instances, the use of identifying information only; and

WHEREAS, the GLB Act provides limited exceptions under which such information may be used;

NOW, THEREFORE, __GC SERVICES__ ("Subscriber") hereby certifies to Experian Information Solutions, Inc. ("Experian"), that Subscriber has determined that Subscriber's use of Experian's FileOne™ identification-only products ("Reference Products"), including but not limited to, Social Search, Address Update, Connect Check, ID Profile, FACS+ or Fraud Shield is pursuant to an exception under the GLB Act and:

These Reference Products constitute individual reference products under the Individual Reference Services Group Principles, dated December 15, 1997 ("IRSG Principles"). Subscriber acknowledges that it is in its best interest to implement the IRSG Principles and agrees, that in addition to using these Reference Products pursuant to a GLB Act exception, it will use these Reference Products in compliance with the IRSG Principles. Subscriber hereby certifies that its use of the Reference Products shall be for the GLB Act exception designated below:

*[Check applicable box]*
- ☐ (1) to protect against or prevent actual or potential fraud, unauthorized transactions, claims or other liability; or
- ☐ (2) for required institutional risk control or for resolving consumer disputes or inquiries; or
- ☒ (3) __IN CONNECTION WITH COLLECTIONS__ *[Identify other exception. Any other exception identified is*
  __PER FTC rule 313.14(b)(vi)__ *subject to approval by Experian]*;

**REQUIRED.** *Describe in your own words the specific purpose(s) for which the Reference Products will be used.*

__COLLECTION OF DEBTS__

This certification shall be treated as confidential information and Subscriber shall not directly or indirectly disclose to any third party the terms of this certification without Experian's prior written consent. This certification shall amend any agreement or Individual Reference Services Products Addendum which pertains to the subject matter hereof which is currently in existence between Experian and Subscriber.

IN WITNESS WHEREOF, the parties hereto have executed this Certification as of _____ by their duly authorized representatives.

__GC SERVICES LP__
(Name of Subscriber Company)

__[signature]__
(Signature)

__Chief Financial Officer__
(Title)

__6330 GULFTON__
(Address)

__HOUSTON, TX 77081__
(City, State and Zip Code)

__Company ID 14296__
(Subscriber Number)

Experian Information Solutions, Inc., acting through its Information Solutions Division

_____
(Signature)

_____
(Title)

> Return this signed Certification to:
> Experian Information Solutions, Inc.
> Attn: Compliance Department
> 500 City Parkway West, 1st Floor
> Orange, CA 92868

07.19.01

IRSG GLB Cert.doc

CONFIDENTIAL

CAPPETTA_EXP-0076



3981052
Fd 14296

# SUBSCRIBER CERTIFICATION OF USE
# FOR
# EMPLOYMENT INSIGHT REPORTS

In compliance with the Federal Fair Credit Reporting Act as amended by the Consumer Credit Reporting Reform Act of 1996 (the "Act"), _GC SERVICES_ ("Subscriber") hereby certifies to Experian Information Solutions, Inc. ("Experian") that it will comply with the following provisions:

1. Subscriber will ensure that prior to procurement or causing the procurement of a consumer report for employment purposes (an Employment Insight Report):

   (a) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

   (b) the consumer has authorized in writing the procurement of the report by the Subscriber.

2. In using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the Subscriber shall provide to the consumer to whom the report relates

   (a) a copy of the report; and

   (b) a description in writing of the rights of the consumer under the Act, a copy of which is attached hereto ("Summary of Consumer Rights").

3. The information from the consumer report will not be used in violation of any applicable federal or state equal employment opportunity law or regulation.

Subscriber hereby acknowledges receipt of the Summary of Consumer Rights.

_GC SERVICES, L.P._
(Name of Subscriber)

_Don H Maroney_  DON H. MARONEY
(Signature)

_DIR OF HUMAN RESOURCES_
(Title)

_9/17/97_
(Date)


**RECEIVED**

SEP 2 3 1997

CONTRACTS DEPT.

CONFIDENTIAL

CAPPETTA_EXP-0077