IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

PAMELA G. CAPPETTA    )
    )
    Plaintiff,    )
    )    Civil Action No. 3:08cv288
    v.    )
    )
GC SERVICES, LP    )
    )
    Defendant.    )
    )

## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 12, 2009 ORDER

### INTRODUCTION

GC Services, LP, ("GCS"), by counsel, respectfully submits its Reply Memorandum in Support of its Motion for Reconsideration of the Court's August 12, 2009 Order.

### ARGUMENT

Plaintiff's response to GC Services, LP'S ("GCS") Motion for Reconsideration reveals a pattern that has now become all too familiar to GCS throughout this litigation. Plaintiff initially shoots for the moon in her discovery requests by seeking information well beyond what is reasonably necessary to evaluate her claims and defenses or the viability of a class, completely unmoved by the burden and expense she is imposing upon GCS. When GCS objects, Plaintiff then rushes into court to paint GCS as a lying obstructionist and seek sanctions, thereby using "discovery" as a sword rather then for its legitimate purpose, which is to gather relevant evidence pertinent to the issues in the case in a manner that is not overly broad, burdensome or expensive. The fact that Plaintiff's lead argument in her response to GCS's Motion for Reconsideration is a demand for sanctions and preclusion of evidence under Rule 37 of the Federal Rules of Civil

Procedure underscores how her efforts to obtain the so called "12" –"21" screens is purely tactical to gain strategic advantage in the litigation, rather then designed to obtain information that Plaintiff does not already possess.

The unreasonableness of Plaintiff's request, which draws into question her good faith in continuing to seek an order on production "12"-"21" screens, is made clear by Plaintiff's admission that, notwithstanding her demand for production of the "12"-"21"screen shots "for literally months," (D.N. 192, p. 1), Plaintiff now concedes that all she really wants is "no more than four/tenths of 1 percent (0.4%) of the screen shots" she initially sought and of what was ordered by the Court to be produced. *See* D.N. 192, p. 4. As demonstrated below, even to accomplish what Plaintiff now seeks is a labor intensive task that imposes an unnecessary and unreasonable burden on GCS, because GCS already has provided Plaintiff with all of the data that would be displayed on the screens.

Indeed, while Plaintiff suggests in her motion for class certification that she believes the "number of individuals in the 'non-basics' class is at least 12,732 and conservatively believed will ultimately exceed 50,000 individuals" (D.N. 175, p. 9), she has demanded all of the data in GCS's computer system for no less than 566,000 accounts. Plaintiff already has received this data. Now Plaintiff demands "as a compromise," the so-called screen prints for "only" 130,000 accounts, a number that exceeds her expected class by nearly a factor of three. Plaintiff makes no attempt to limit her request to the purported class, or to those who fall within the time period she now espouses in her brief. Nor does Plaintiff attempt to limit her request to consumer accounts or anything closely relevant to this case. Even if she did limit her request to 50,000 accounts, Plaintiff already has the information, so the request would be merely duplicative of

what she already has received in discovery. By requesting screen prints, Plaintiff demands the production of the same data in a format that is unduly burdensome to GCS to produce.

Accordingly, this Court should require Plaintiff to identify no more that 1000 accounts that Plaintiff would like to see the "supp spend" screen shot. This Court should also order Plaintiff to pay GCS' costs and expenses in having to comply with this Order to date.

## 1. GCS HAS DILIGENTLY WORKED TO COMPLY WITH THE COURT'S ORDER, BUT IT CANNOT REASONABLY BE DONE

Immediately upon receipt of the Court's August 12, 2009 Order, GCS investigated what resources would be necessary to comply with the Court's Order. GCS quickly learned, as it had suspected when asserting its objections to Plaintiff's discovery requests, that it was impossible to reasonably comply with the Order, and GCS's counsel filed the Motion for Reconsideration. In the interim, GCS has committed 6 employees to the task of pulling up each of the 566,000 accounts GCS produced to Plaintiffs and then printing all of the "12"-"21" screens for each account as requested by Plaintiff and ordered by this Court. Plaintiff never indicated to GCS, or its counsel, or this Court before the August 12, 2009 Order that she did not need screen prints for all the "12" –"21" screens. Nor did Plaintiff communicate that she was only interested in a screen print for the "supp spend" fields, which her counsel had seen in the data already provided by GCS. As indicated in GCS' Memorandum in Support of Reconsideration, the task was monumental. GCS will not belabor the points already made, except to say that its efforts have only confirmed what was stated in the affidavit of Liana Waldberg.

As of Thursday, August 27, 2009, GCS's reviewers had "printed", by saving as Word files, all the "12"- "21" screens for approximately 1,800 accounts, a mere 0.3% of all of the 566,000 accounts produced to the Plaintiff. The smallest number of pages for an account "print"

was 3, and the largest was 91, with the average being anywhere from 15 – 30 pages.  Thus, the

"12" –"21" screen prints for just 1,800 accounts was approximately 27,000 pages.

The actual protocol (with personal information redacted) used by the reviewers is set

forth below.  Even a cursory review of the protocol reveals the manually intensive nature of the

whole process.

### Beginning of Protocol[1]

---

[1] The protocol is inserted here as presented to GCS employees.  All spelling and punctuation is as contained in the original.

Make sure CAPS is on before beginning this process
 I have added a folder to the DED scan folder on GCSNAS01 for this project. Here is the path:
\\Gcsnas01\scan\DED\AMEX Project 0809

Logon to STAR, login: CRP
Then I need you to make the screen white and the letters black. In order to do this you will need
to select Options on the top Toolbar, then Session Properties, in the pop window, click on the +
beside color, then select General, then click on Normal, then for Foreground Color select black,
for Background color select white



Next select Bold, then for Foreground Color select black, for Background color select white,
then click the OK button
Now you are ready to begin the project

Type 066 for office code and hit enter

On the next screen type T2ACM; where it asks for you to
ENTER EMPLOYEE NUMBER

Enter the number 9 (Reactivate Accounts) on the DCD SUPPORT MENU screen

Now before you go any further you need to open a word document and save it as the GC#, in my example the name of my document is 308906101000351, you will be pasting your screen shots in this document.

On the screen CANCELLATION REVERSAL ROUTINE enter the GC# you wish to get contact information on (you will get these from the spreadsheet I placed in the DED folder listed above)

I have entered GC# 308906101000351

On the next screen select 1 for display, hit enter



On the next screen type 21 and enter, this is for contact info



On the next screen you will have 1 or more listed contacts, you must go through each one and get a screen print of each page and copy it into the word document you created for this GC#. I have included an example in your DED folder.

You need to capture this screen and then each of the 5 screens for each of the contacts listed. To take a screen shot hold the ALT key and hit the Print Screen key, now click on the word document you created and select paste, a picture of the screen should be there.



This account has 6 contacts that you will need to get screen shots of. Now start getting the contact info by selecting 1 and enter, you will be prompted with "EXHAUST PHONE" type N and enter



This will bring up your next screen, take a screen print, again hold down the ALT key and hit the Print Screen key, then go paste this into the word document, please note that there are 5 screens with contact info for each of the 6 contacts listed above, each screen must be captured and put into the word document. These documents must be saved in the folder I created on GCSNAS01 that I list at the top of these instructions. Here is the screen shot and you can see that it is the first of 5 screens for info



To get to then next screen you must type /F and enter

NOTE: Be sure to watch when you get to screen 5 of 5, once you have captured that screen and saved it you will need to enter just / to get back to the screen with all of the contacts on it. Now you need to enter 2 and follow the directions above, you will need to do this for each contact listed. Once you have captured all of the contact info screens and saved your document you will need to enter / on each screen until you are back to the following screen:



Here you will enter your next GC# and start the process again. Be sure to start a new word document named with this GC# before you start getting screen shots.

## End of Protocol

As the above protocol demonstrates and the actual results of GCS' efforts prove, it is objectively impossible for GCS to reasonably comply with the Court's Order to print the "12" – "21" screens for each of the 566,000 accounts it has produced to the Plaintiff. While not conceding that point, Plaintiff does not dispute it. Rather, Plaintiff argues that GCS "adopted the broadest possible interpretation of [the] Court's order, presumably so as to artificially create the burden of which it complains in the present motion." D.N. 192, p. 2. Plaintiff's argument belies logic and common sense. If GCS could reasonably interpret the Court's Order to limit what it must produce to the Plaintiff, it would have done so. Moreover, the Order was unambiguous,

and GCS's efforts thus far have been consistent with the Court's Order. Not surprisingly,

Plaintiff does not tell the Court which screen prints attached by GCS to its Memorandum should

not have been printed under the Court's Order.

### 2. PLAINTIFF'S MODIFIED REQUEST IMPOSES AN UNREASONABLE BURDEN ON GCS

Plaintiff now reveals that she would be satisfied with obtaining only a screen print of the

"12" –"21" screen that shows the "supp spend" information for the approximately 130,000

accounts that contain that information. Plaintiffs request is unreasonable, because there is no

automated way to pull up each account that has "supp spend" information, and then "print" the

"12" –"21" screen to a Word file. Moreover, Plaintiff already has the information, which has

been provided to her in two different formats, both .txt and Excel. Like GCS, Plaintiff can create

programs to identify the accounts that contain this information. Indeed, Plaintiff's counsel

concedes he has done as much in his brief. (D.N. 192, p. 3).[2] There is no way, however, to create

a program that would automatically pull up the "12" –"21" screen for each account that has

"supp spend' information, scroll to the correct page, and print that page.

It is worth reiterating what has been presented to the Plaintiff and the Court on a number

of occasions: GCS's computer software, while effective for its purposes, is antiquated and based

on the PICK system. The software does not display data in a "Windows" format. The data is not

meant to be printed, and indeed, the system is wholly inefficient when the data contained in the

system is printed. Rather, the data in the system will populate fields in the "12" – "21" screens

as information is requested by the user. For that reason, the data may wrap around when it is

---

[2] Plaintiff's counsel's email clearly indicates that he is able to review the "12" – "21" in the formats GCS has provided to the Plaintiff. As Plaintiff's counsel notes in his August 21, 2009 email: "The supp spend information appears on a single screen for each account. Your client can identify this screen by finding each instance in which 'REL' field = 'Sup', and the 'ADR' field = 'SPD.'" Plainly, if Plaintiff contends that GCS can perform the above operation, then the Plaintiff can as well.

converted to different formats or printed. This explains why the same data appears numerous times in the "12"-"21" screens when they are printed.

Because of its existing software and difficulty printing the data, GCS converted the data into a format -- .txt and Excel -- that would be most usable to a person who is not operating the GCS software used to display the data.   While Plaintiff does not want to acknowledge that GCS has provided Plaintiff with all the same data that is used to populate the "12" – "21" screens, this Court has now seen for itself the impossible  burden placed on GCS in trying to print the "12 – "21" screens.  GCS provided the information to Plaintiffs in the .txt and Excel formats not because it was trying to hide anything or be obstructionist, but because it is basically an impossible task to print down the screens.

To print even 130,000 screens as Plaintiff now requests would require a GCS employee to pull up the account, go through the same manipulations outlined in the above protocol, find the screen or screens that has "supp spend" information, and verify that there are not multiple screens containing the information, and then print the screens with the information by creating a Word file and saving the "screen" shot as a Word file.  It goes without saying that Plaintiff's counsel would never trust GCS to perform the task, so GCS would be back here again with the Plaintiff asking for even more screen shots.  Moreover, at 2 minutes per account, which is very conservative, it would take an excess of 260,000 minutes or 4,333 hours, to perform this request. Twelve employees working 12 hour shifts would take at least 30 days to accomplish this task alone. And, for what purpose?   Plaintiff already has the data.

Throughout all of this, Plaintiff has never really explained why she needs to have the screens printed, when the information displayed in the screen prints is readily accessible and

searchable in the .txt and Excel formats GCS already provided to the Plaintiff, and where this information can be displayed to a jury using a computer and the Excel or .txt format.

Finally, Plaintiff misstates GCS emails when it argues that GCS made "no concession of its own" in response to Plaintiff's unreasonable requests in the second round of emails. Presumably, Plaintiff assumed that the Court would not read GCS counsel's email, where he proposed that the Plaintiff "identify 500 to 1000 accounts that you want us to print the "12" – "21" screens for and we can accomplish that in probably a week." Given that the Plaintiff has the information as to which accounts contain the "supp spend" information, to the extent that Plaintiff's counsel wishes to display the information for the witnesses he intends to call at trial, or if Plaintiff wants a sample to demonstrate the screens, then a sampling of 500 to 1000 screens should be more than sufficient to accomplish this purpose.

## CONCLUSION

WHEREFORE, based on the foregoing reasons, GCS respectfully requests that this Court reconsider and vacate its August 12, 2009 Order. GCS will be prepared to argue its motion at the September 1, 2009 hearing, if the Court chooses to hear argument on this issue, and it will have a representative available to address its processes should any questions arise.

Dated: August 28, 2009                    Respectfully submitted,

GC SERVICES, LP

By:_____ /s/ _____
Charles M. Sims, Esq. (VSB No. 35845)
John "Jack" M. Robb, III, Esq. (VSB No. 73365)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Post Office Box 2499
Richmond, Virginia 23219
(804) 915-4138 Telephone
(804) 916-7238 Facsimile

14

jack.robb@leclairryan.com
Charles.Sims@leclairryan.com

David M. Schultz, Esq.
Todd Stelter, Esq.
Hinshaw & Culbertson, LLP
222 N. LaSalle Street, Suite 300
Chicago, IL  60601
Telephone:  (312) 704-3527
Facsimile:  (312) 704-3001
dschultz@hinshawlaw.com
tstelter@hinshawlaw.com

Brian P. Brooks, Esq.
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006
(202) 383-5127 Brooks
BBrooks@omm.com
***Counsel for Defendant GC Services, LP***

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of August, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Leonard A. Bennett, Esq.
Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
3615-H Chain Bridge Road
Fairfax, Virginia 22030
Telephone: (703) 273-7770
Facsimile: (888) 892-3512
lenbennett@cox.net
matt@clalegal.com

Jason M. Krumbein, Esq.
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Drive, Suite 300
Richmond, Virginia 23230
Telephone: (804) 673-4358
Facsimile: (804) 673-4350
KrumbeinLaw@gmail.com

Richard J. Rubin, Esq.
1300 Canyon Road
Santa Fe, New Mexico 87501
Telephone: (505) 983-4418
Facsimile: (505) 983-2050
dickrubin@cs.com
**Counsel for Plaintiff Pamela G. Cappetta**

_____/s/_____

Charles M. Sims (VSB No. 35845)
LECLAIRRYAN, A PROFESSIONAL CORPORATION
951 East Byrd Street, 8th Floor
Post Office Box 2499
Richmond, Virginia 23219
(804) 343-5091 Telephone
(804) 783-7655 Facsimile
jack.robb@leclairryan.com
**Counsel for Defendant GC Services, LP**