IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

PAMELA G. CAPPETTA,

                              Plaintiff,

        v.                                              Action No. 3:08–CV–288

GC SERVICES LIMITED PARTNERSHIP,

                              Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant's Motion for Judgment on the

Pleadings (Docket No. 161), filed July 2, 2009, and Plaintiff's oral motion for voluntary

dismissal with prejudice as to Counts II and IV, offered at the hearing of this matter

September 1, 2009.  For the reasons that follow, the Court will GRANT Plaintiff's Motion,

DISMISS WITH PREJUDICE Counts II and IV, and DENY the Motion for Judgment on the

Pleadings as to Counts I and III.

## I.  BACKGROUND

Plaintiff is a natural person who resides in the Commonwealth of Virginia.  Defendant

is a limited partnership with its primary headquarters in Texas doing business in the

Commonwealth through its registered offices in Glen Allen, Virginia.

Plaintiff filed her Complaint May 9, 2008, alleging Defendant violated the Fair Debt

Collection Practices Act.  According to Plaintiff, on May 21, 2007, a representative of

Defendant called her place of business regarding a $10,444.59 debt owed to American Express

1

by her estranged husband, Robert Cappetta ("Mr. Cappetta"), by virtue of a credit card account ("Account") he had opened.  Defendant, having failed to persuade Mr. Cappetta to pay the bill, told Plaintiff through its representative that she needed to pay the debt within seven days because Plaintiff's social security number was on the application for the credit card and Defendant possessed the Account's application with her signature.

Apparently, this was not true.  Defendant never possessed the application, and Plaintiff's social security number never appeared thereon.  Unbeknownst to Plaintiff, Mr. Cappetta had applied for the Account utilizing a P.O. Box he maintained although he had previously claimed to close it.  Plaintiff alleges Defendant had obtained her personal information used during the May phone call through a "skip trace" consumer report ("Skip Trace").  Utilizing the information contained in the Skip Trace, Defendant obtain a full credit report ("Credit Report") from Experian Information Solutions, Inc. ("Experian").  In order to obtain the Credit Report, Defendant represented to Experian that it was collecting on an account resulting from Plaintiff's credit transactions.

Responding to the representative's claims during the call, Plaintiff requested the documentation demonstrating she was obligated to pay on the Account in order to review it with her attorney.  Defendant's representative stated that Plaintiff's attorney would likely advise her not to pay the Account but would fail to explain to Plaintiff the severe negative implications of failing to pay off the Account.  According to this representative, Plaintiff could only avoid receiving derogatory information on her heretofore excellent credit report by paying the full amount demanded within seven days.

In addition to utilizing information from the Skip Trace and Credit Report, Defendant's representative also stated, in her conversation with Plaintiff, that she had faced a similar circumstance in the past and had determined the best course was to pay the charges in order to have closure.  At Defendant's urging, even though she had not applied for, used, and had knowledge of the Account prior to Defendant's call, Plaintiff paid the debt demanded during the May 21, 2007 phone call.  She did so, not only because of Defendant's various falsehoods or misrepresentations (including Defendant's representative's fabricated identity, the claim that she possessed Plaintiff's signature and social security number on the Account application, and the story about her analogous situation in the past), but also because she was then in the process of refinancing her home and depended upon her favorable credit score to successfully complete the process.  Plaintiff argues the following representations were also false:  (1) the effect the threatened collection notation would have on Plaintiff's credit score, (2) the sworn certification to Experian stating a credit relationship existed between American Express and Plaintiff, and (3) the seven-day time frame for payment of the Account.

Despite Plaintiff's request, Defendant never furnished the documentation that supposedly demonstrated Plaintiff's obligation on the Account, although its representative had promised to do so.  After consulting with several individuals, Plaintiff called Defendant and again asked for the documentation of her obligation on the Account.  Through another representative, Defendant refused to provide the documentation and stated Plaintiff had to contact American Express directly.  Defendant further suggested that doing so would likely be unavailing because American Express would only respond to a subpoena.  Defendant's

3

representative stated the only documentation it would send Plaintiff is a letter stating that the payment had been received.

Thereafter, Plaintiff contacted American Express directly.  Initially, American Express representatives would not discuss the account with Plaintiff because she was not listed on the account, but, eventually, an American Express official informed Plaintiff that the Account did not list her as an obligor and that American Express did not have her social security number. In addition, American Express stated that the Account only listed Plaintiff as an "authorized user" and, accordingly, it had at no time provided Defendant with her social security number.

Based on these facts, Plaintiff, on or about August 8, 2007, wrote Defendant and demanded a refund of the money she had paid.  Defendant has refused to return it.

## II.  LEGAL STANDARD

A court reviews a motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, under the same standard as a Rule 12(b)(6) motion to dismiss.  Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002); Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  When considering the motion, the court views the facts presented in the pleadings in the light most favorable to the nonmoving party.  Edwards v. City of Goldsboro, 178 F.3d 231, 248 (4th Cir. 1999).

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).  Thus, in ruling on a Rule 12(b)(6) motion, a court must regard as true all of the factual

allegations in the complaint, <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007).  Conversely, the court does not have to accept legal conclusions couched as factual allegations, <u>Twombly</u>, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," <u>E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship</u>, 213 F.3d 175, 180 (4th Cir. 2000).

While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations.  <u>Ashcroft v. Iqbal</u>, 556 U.S. ___, ___, 129 S. Ct. 1937, 1950 (2009).  Since a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," the plaintiff must allege facts that show a plausible, not merely speculative, claim for relief.  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555–57 (2007) (internal citations omitted); <u>see</u> Fed. R. Civ. P. 8(a)(2).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950.  While Rule 8(a)(2) requires a showing, not simply a blanket assertion of "entitlement to relief," the plaintiff is not required to show that it is likely to obtain relief.  <u>Twombly</u>, 550 U.S. at 556 n.3; <u>Iqbal</u>, 129 S. Ct. at 1949.  If the complaint alleges—directly or indirectly—each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim. <u>Twombly</u>, 550 U.S. at 563 n.8.

## III.  <u>DISCUSSION</u>

Because Plaintiff has voluntarily dismissed her other theories of recovery, the Court will only address Counts I and III of the Second Amended Complaint, which allege violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(f) (2006) ("FCRA"), and Fair

Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (2006) ("FDCPA"), respectively.

## A. Fair Credit Reporting Act[1]

The FCRA allows access to a consumer's credit report only under specific circumstances where a permissible purpose exists.  15 U.S.C. § 1681b(a) (2006) ("[A]ny consumer reporting agency may furnish a consumer report under the following circumstances and no other").  As for "permissible purposes," Congress declared a credit reporting agency may provide a consumer's credit report:

> To a person the credit reporting agency has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;" or "otherwise has a legitimate business need for the information in connection with a business transaction that is initiated by the consumer."

15 U.S.C. §§ 1681b(a)(3)(A), (a)(3)(F)(i) (2006).  According to § 1681b(f), "A person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification."

Relying on Korotki v. Thomas, Ronald & Cooper, P.A., 131 F.3d 135 (table), 1997 WL 753322 (4th Cir. Dec. 5, 1997) (per curiam) ("Korotki 2")), Defendant argues that the Court should dismiss this claim because it had a permissible purpose for obtaining Plaintiff's

---

[1]     This Count is the subject of Plaintiff's Motion to Certify Class.  (See Compl. ¶¶ 72-91; Pl.'s Mot. Certify Class (Docket No. 174), filed July 31, 2009.)

6

credit report under §§ 1681b(a)(3)(A) and (E).[2]  According to Defendant, "The Fourth

Circuit has expressly held that seeking to collect a disputed debt is a permissible purpose

under the FCRA."  ((Def.'s Mem. Supp. Mot. J. on Pleadings ("Def.'s Mem. Supp.") 5.)

"The fact that plaintiff now contends that the debt was owed by her husband (estranged or

otherwise) is . . . of no moment," Defendant claims, because Korotki 2 counsels that

Defendant did not need to wait until a claim has "been reduced to judgment before

obtaining a consumer report."  (Id. (citing Korotki 2, 1997 WL 753322, at *2; Baker v.

Bronx-Westchester Investigations, Inc., 850 F. Supp. 260, 262-63 (S.D.N.Y. 1994)).)

Moreover, Defendant argues that the Fourth Circuit and other courts have allowed access to

a spouse's credit report under certain circumstances where either or both spouses owed a

debt.  (Id. (citing Smith v. GSH Residential Estate Corp., No. 90-1166, 935 F.2d 1287

(table), 1991 WL 106191 (June 20, 1991) (finding permissible purpose for landlord

accessing credit report of spouse of prospective tenant where landlord had no reason to

know of plaintiff's separation); Simoneaux v. Brown, 403 F. Supp. 2d 526, 537 (M.D. La.

2005) (finding permissible purpose for accessing spouse's credit report based on

presumption of community obligation under Louisiana law); Short v. Allstate Credit Bureau,

370 F. Supp. 2d 1173, 1179-80 (M.D. Ala. 2005) (finding permissible purpose for accessing

---

[2]     As Plaintiff points out, Defendant must have mistakenly cited § 1681b(a)(3)(E) (granting permission to obtain credit report where person "intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation").  That portion of the statute has no relevancy to the instant facts, unless the Court looks to the statute before its amendment in 1996.  Instead, it appears Defendant refers to § 1681b(a)(3)(F), which would apply.

spouse's credit report where spouse will use the account or be contractually liable on the account)).)

Plaintiff responds that Defendant violated the FCRA because it "willfully and intentionally" obtained Plaintiff's credit report knowing that it lacked a permissible purpose for doing so.  (Pl.'s Mem. Opp'n Def.'s Motion Judgment Pleadings ("Pl.'s Opp'n Mem.") 2.)  Moreover, Plaintiff posits that Defendant failed to satisfy the certification requirement under § 1681e(a)[3] in that it could not—and did not—certify that it was obtaining the credit report for a purpose appropriate under § 1681b(a)(3).  (Id. 3-4.)  Plaintiff's argument here has at least four parts:  (1) Defendant could not claim it had a "legitimate business purpose" for Plaintiff's credit report because that provision requires that Plaintiff initiate the business transaction that serves as the alleged basis for obtaining the credit report (Pl.'s Opp'n Mem. 5); (2) Defendant failed to certify it was obtaining Plaintiff's credit report on the basis of § 1681b(a)(3)(F) (id. 5-6); (3) Section 1681b(a)(3)(F) cannot be used independently of § 1681b(a)(3)(A) – (C) (id. 6 n.6); (4) Section 1681b(a)(3)(A) does not provide a permissible purpose because Defendant knew the American Express Card did not belong to Plaintiff but instead belonged to her estranged husband (id. 6-10).

Defendant replies, first, that the amended version of § 1681b(a)(3)(F) does not bar its access to Plaintiff's credit report because—even if she "neither 'initiated' nor was

---

[3]      Section 1681e(a) requires, "Every consumer reporting agency . . . .  shall require that prospective users of [a consumer's credit] information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. . . .   No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title."

'involved' in making charges to the American Express credit card"—the correct FCRA inquiry is whether Defendant had a "reasonable basis" to believe that a permissible purpose existed at the time it requested the report.  (Def.'s Reply Supp. Mot. J. on Pleadings ("Def.'s Reply Mem.") 2, 6.)  In short, Defendant submits Plaintiff's actual situation at that time matters not because Plaintiff's name appeared as an authorized user on the American Express credit card, the account was delinquent, and American Express had reported the account to the credit bureaus in Plaintiff's name, giving Defendant a "reasonable belief" that a permissible purpose existed.  (Id.)

1.    *A "Permissible Purpose" Via Section 1681b(a)(3)(F)*

The pleadings do not support Defendant's contention that a permissible purpose existed under 1681b(a)(3)(F).

Congress amended the FCRA in 1996.  See Pub. L. No. 104-208, § 2403, Aug. 22, 1996, 110 Stat. 3009 (codified as 15 U.S.C. § 1681b(a)(3)(F)).  Prior to that amendment, § 1681b(a)(3)(E) stated a credit agency could furnish a consumer's credit report when it had reason to believe the person seeking the report had an otherwise "legitimate business need for the information in connection with a business transaction *involving* the consumer." Pub. L. No. 90-321, Title IV, § 604, as amended Pub. L. 91-508, Title VI, § 601, 84 Stat. 1129 (codified as 15 U.S.C. § 1681b(3)(E)) (Oct. 26, 1970); see Korotki v. Att'y Servs. Corp. Inc., 931 F. Supp. 1269, 1275 (D. Md. 1996) ("Korotki 1"), aff'd No. 96-1877, 131 F.3d 135 (table), 1997 WL 753322 (4th Cir. Dec. 5, 1997).  Congress amended this language to state a credit report could be furnished where an "otherwise . . . legitimate

business need for the information" existed "in connection with a business transaction that is *initiated by* the consumer"—a stricter standard.  15 U.S.C. § 1681b(a)(3)(F).

Congress clearly directs the relevant portion of the FCRA toward "credit reporting agencies."[4]  See § 1681b(a) ("Subject to subsection (c) of this section [inapplicable here], any *consumer reporting agency* may furnish a consumer report under the following circumstances and no other.") (emphasis added).  Specifically, subsection (a) allows the credit reporting agency to provide a credit report "[t]o a person which *it has reason to believe* . . . (F) otherwise has a legitimate business need for the information." § 1681b(a)(3)(F) (emphasis added).  The statute requires that the credit reporting agency (antecedent of the third person singular pronoun "it") have "reason to believe" the "person" to which it provides a credit report "has a legitimate business need for the information."  Without having such a belief, a credit reporting agency may be held liable.

The statute here, however, says nothing about the standard to which the relevant "person" or "user" must be held when certifying a permissible purpose.  Even though this section only specifically addresses the requisite intent for violations committed by credit reporting agencies, the Fourth Circuit has relied on § 1681b(a)(3) for guidance where the "person" or "user" who obtained credit report has been sued for impermissibly accessing a consumer's credit report.  See Korotki 2, 1997 WL 753322, at *2 ("While this language

---

[4]     According to § 1681a(f), "The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

might arguably apply only to consumer agencies, we conclude that the wording is equally applicable to a user.") (citing Yohay v. City of Alexandria Employees' Credit Union, Inc., 827 F.2d 967, 972 (4th Cir. 1987); Hanson v. Morgan, 582 F.2d 1214, 1216 (9th Cir. 1978)).  The parties have somewhat different views as to whether, for the purposes of this Motion, the Court must determine that the pleadings sufficiently allege Plaintiff did not initiate the American Express account (Plaintiff's position) or that Defendant lacked a reason to believe Plaintiff initiated the account (Defendant's position).

In Korotki 2, the Fourth Circuit affirmed the district court's grant of summary judgment but did not explicitly state that a user need only have "reason to believe" a permissible purpose exists when it seeks a consumer's credit report—as opposed to a demonstration that the permissible purpose actually existed prior to certifying its existence. See Korotki, 1997 WL 753322, at *2; cf. Korotki, 935 F. Supp. at 1276 ("[S]o long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA.").  The court instead focused more squarely on the parties' dispute over whether the FCRA applied to users, not credit reporting agencies exclusively.  In its brief explanation, the Fourth Circuit states, "[W]e conclude that the wording [of § 1681b] is equally applicable to a user.  Under § 1681(b) [sic], a user may only obtain a consumer report for a permissible purpose therein enumerated."  The Fourth Circuit does not expressly adopt the district court's language in Korotki 1 to state that a user may obtain a consumer report where it *has reason to believe* a permissible purpose therein enumerated *exists*.  See 935 F. Supp. at 1276-77.  It did not need to reach that specific

question to affirm summary judgment based on the facts presented by the record.  Korotki,

1997 WL 753322, at *2 ("Appellant has made no showing that the report was obtained for

an impermissible purpose.  We experience no difficulty under the facts of this case in

concluding that seeking to obtain an alternate address at which to serve appellant was 'a

legitimate business need for the information in connection with a business transaction

involving[5] the [appellant]'; and, therefore, a permissible purpose for its use.") (internal

citation omitted; alteration in original).

Both the district court and the Fourth Circuit relied on the Fourth Circuit's reasoning

in Yohay, 827 F.2d 967.  There, the Fourth Circuit explicitly incorporated the "permissible

purposes" under § 1681b into the civil liability provisions of the FCRA found in

Sections 1681n and 1681o of the contemporaneous version of statute which applied to

"any . . . user of information" that willfully or negligently failed to comply with the statute's

requirements.[6]  Id. at 971-72 (finding civil liability lies where a "user's individual

noncompliance with section 1681b was willful").  The Fourth Circuit here clearly states that

a violation of the FCRA occurs when a user either willfully or negligently fails to comply with

§ 1681b—that is, where a user either willfully or negligently obtains a consumer's credit

---

[5]      The pre-1996 version of the FCRA applied in this case.  See Korotki 2, 1997 WL
753322, at *2 (citing 15 U.S.C. § 1681b(3)(E)).

[6]      The current versions of these sections continue to address willful or negligent
noncompliance with the FCRA's provisions. 15 U.S.C. §§ 1681n(a) ("Any person who *willfully*
fails to comply with any requirement imposed under this subchapter with respect to any
consumer is liable to that consumer. . . ."), 1681o ("Any person who is *negligent* in failing to
comply with any requirement imposed under this subchapter with respect to any consumer is
liable to that consumer. . . .") (emphasis added).

12

report without a permissible purpose, the user is civilly liable to the consumer.[7]

In light of the Fourth Circuit's approach in Yohay, the Court finds that the Plaintiff may state a claim for relief under § 1681b(a)(3)(F) (and survive the present Motion), if she has alleged, with sufficient factual support, that Defendant either willfully or negligently obtained her credit report without having a legitimate business purpose for doing so.  Here, that means Plaintiff must have proffered factual allegations (taken as true along with reasonable inferences drawn therefrom) supporting that, at the very least,[8] Defendant obtained her credit report when it reasonably should have known that Plaintiff had not initiated a business transaction with American Express.

Plaintiff has satisfied this burden.  The Complaint alleges:  "At the time it obtained the Plaintiff's consumer report pursuant to this certification [under § 1681b(a)(3)(A)], the Defendant *knew* it was not in possession of any application on the account and that Plaintiff was only listed, at most, as a supplemental cardholder on the account" (Compl. ¶ 10) (emphasis added); "American Express does not issue joint accounts" (id. ¶ 12); "[i]n response to the electronic communication containing the *false* certification, Experian furnished to the Defendant a consumer report. . . ." (id. ¶ 13) (emphasis added); "American

---

[7]     Inapplicable here, the Court also incorporates the criminal liability provision found in § 1681q into the civil liability provisions located at §§ 1681n and 1681o.  Yohay, 827 F.2d at 971-72.

[8]     "To prove willfulness, Plaintiff must 'show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer.'" Ausherman v. Bank of Am. Corp., 352 F.3d 896, 900 (4th Cir. 2003) (citing Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 418 (4th Cir.2001)).  This would obviously be a stricter standard than a demonstration of negligence.

Express never represented to the Defendant that Plaintiff was obligated on the Robert Cappetta account" (id. ¶ 21); "American Express never provided Plaintiff's social security number to the Defendant regarding the Robert Cappetta account" (id. ¶ 22); "[t]he Defendant never possessed a copy of any application with regard to the account at any time and was not in possession of the same when its employee spoke to the Plaintiff [and stated that Defendant in fact possessed the application]" (id. ¶¶ 26-27); "[t]he Defendant *willfully* and *intentionally* violated the [FCRA] by using or obtaining one or more consumer reports that regarded Plaintiff . . . without a permissible purpose" (id. ¶ 70) (emphasis added). Even though Plaintiff does not explicitly or formulaically state in the Complaint "Defendant should have known Plaintiff did not initiate a business transaction with American Express," these facts, alleged to have occurred *prior* to Defendant obtaining the credit report, along with reasonable inferences drawn from them in Plaintiff's favor,[9] establish that Defendant either knew or should have known that Plaintiff had not initiated the Account.[10]

Defendant makes much of the fact that the Complaint states, "Plaintiff had learned a few days earlier in conjunction with a mortgage application that American Express was reporting that she was an authorized user on an unknown account within her credit file. . .

---

[9]    The Court may reasonably infer that Defendant, as a person in the business of regularly collecting debts for American Express knew that:  (1) American Express did not issue joint accounts; (2) a supplemental cardholder would not have been the party to initiate a credit card account with American Express; (3) American Express would have provided Plaintiff's name to Defendant, if Plaintiff had initiated the account; and (4) American Express would have provided Plaintiff's social security number, if Plaintiff had initiated the account.

[10]    Even if the Court accepted Defendant's statement of the standard—that the Complaint must show that Defendant did not have reason to believe Plaintiff initiated a transaction with American Express—these allegations defeat the current Motion as to the FCRA claim.

14

." (id. ¶ 31.)  Presumably on the basis of this allegation, Defendant argues the Complaint demonstrates "an American Express account was opened" and "that Plaintiff's name was associated with the account as an authorized user who could have incurred charges on the account" thereby supporting the contention that it reasonably believed it had a permissible purpose for accessing the report.  (Def.'s Reply Mem. 6.)  It takes this position in spite of the fact that the question at this juncture—as it acknowledges—is what *Defendant* should have known *before* it obtained Plaintiff's credit report.  (Id. 6.)  Because the relevant question is what Defendant reasonably should have known prior to attempting to access the report, it seems circularly-misguided to justify Defendant's access to Plaintiff's credit report based upon what apparently appeared in that report and Defendant could not have observed prior to accessing it.  Moreover, this portion of the Complaint refers to Plaintiff's knowledge, not Defendant's.  Clearly, what Plaintiff knew about her credit report does not elucidate the knowledge Defendant had prior to contacting Experian.  The Complaint does not allege that Defendant knew the Account had been opened, that Defendant knew it was delinquent, or that Defendant knew Plaintiff's name appeared on the Account as an authorized user; that, of course, would likely be dispositive.  Plaintiff states quite the contrary.  (See Compl. ¶¶ 5, 10, 21, 27.)  Because Defendant can only rely on what information the Complaint alleges Defendant possessed prior to obtaining Plaintiff's credit information, neither what the Credit Report contained nor what Plaintiff knew about the contents of the Credit Report support Defendant's position.

2.      *A "Permissible Purpose" Via Section 1681b(a)(3)(A)*

To survive the Motion with regard to § 1681b(a)(3)(A), the Complaint must allege

facts sufficient to demonstrate that Defendant should have known either that it did not

intend to use the credit report "in connection with a credit transaction involving" Plaintiff or

"involving . . . the collection of an account of" Plaintiff.  A user must certify both parts in

order to obtain a consumer's credit report.  See § 1681b(a)(3)(A) ("Any consumer reporting

agency may furnish a consumer report . . .  To a person which it has reason to believe . . .

intends to use the information in connection with a credit transaction involving the

consumer on whom the information is to be furnished *and* involving the . . . collection of an

account of, the consumer.") (emphasis added).  This means, specifically, that Plaintiff

withstands the instant Motion if the pleadings demonstrate that Defendant should have

known the Account did not "involve" Plaintiff or should have known that the Account did

not belong to Plaintiff.

Based on the facts recited above (see Compl. ¶¶ 10, 12, 21-22, 26-27, 70), taken as

true with inferences drawn in Plaintiff's favor (excluding the information contained in the

credit report itself), Plaintiff has successfully pleaded that Defendant should have known the

Account did not belong to Plaintiff.  Even if Plaintiff was an "authorized user," that does not

amount to obligor status.  See Barrer v. Chase Bank USA, Inc., 566 F.3d 883, 885 n.1 (9th

Cir. 2009) ("Cheryl Barrer was an "Authorized User," and therefore not legally responsible

for the account."); cf. Permissible Purpose for Judgment Creditor - FCRA § 604(a)(3)(A),

Staff Op. Ltr., F.T.C. Division of Credit Practices, 1998 WL 34323750 (Aug. 5, 1998)

16

(opining that collection from nonliable spouse not a permissible purpose under FCRA). Because the allegations recited above allege that Plaintiff was not an obligor on the Account, they reasonably imply that Defendant should have known that the Account did not belong to Plaintiff.[11]

In summary, Defendant's basic argument is that whether or not Plaintiff initiated or was obliged to pay this account, the Complaint demonstrates that it had a basis for believing it could access Plaintiff's credit report under the provisions it now cites.  The Court has applied a reasonableness standard based upon Yohay finding that Plaintiff has stated a claim if she alleges sufficiently that Defendant negligently averred a permissible purpose. She has done so.  Taking the allegations as true and drawing reasonable inferences in Plaintiff's favor, the Complaint alleges that Defendant should have known that Plaintiff did not initiate the American Express account and that Defendant should have known that the Account did not belong to Plaintiff.

Thus, Plaintiff has alleged enough to survive the Motion as to her FCRA claim. Therefore, the Court will DENY the Motion with regard to Count I.

## B.  Fair Debt Collection Practices Act

### 1.  Voluntary Payment Doctrine Applicability and Preemption

Defendant argues that the voluntary payment doctrine precludes any recovery to Plaintiff pursuant to the FDCPA claim.  To the contrary, Plaintiff argues that, to the extent the doctrine is inconsistent with the FDCPA, the doctrine has been preempted.

---

[11]     The Court need not determine whether or not the Complaint establishes that Defendant should have known that the Account did not involve Plaintiff.

As Defendant correctly states, Virginia courts recognize the Voluntary Payment Doctrine.  See, e.g., Williams v. Consolvo, 379 S.E.2d 333, 336 (Va. 1989) (citing Wessel, D. & Co. v. Winborne & Co., 99 S.E. 719, 721 (Va. 1919)).  Defining the contours of the doctrine in Wessel, the Supreme Court of Virginia stated:

> Where a person with full knowledge of the facts voluntarily pays a demand unjustly made upon him, though attempted or threatened to be enforced by proceedings, it will not be considered as paid by compulsion, and the party thus paying is not entitled to recover back the money paid, though he may have protested against the unfounded claim at the time of payment made. Where money has been paid under a mistake of the facts, or under circumstances of fraud or extortion, or as a necessary means to obtain the possession of goods wrongfully withheld from the party paying the money, an action may be maintained for the money wrongfully exacted. But such action is not maintainable in the naked case of a party making a payment of a demand rather than resort to litigation, and under the supposition that the claim, which subsequently turned out to be unauthorized by law, was enforceable against him or his property.

99 S.E. at 721.  However, at least with regard to Counts I and III, the Court here exercises jurisdiction by virtue of a federal question, not diversity of citizenship.  See 28 U.S.C. § 1331 (2006), 15 U.S.C. §§ 1679b, 1679g, 1681p, 1692k(d); cf. 28 U.S.C. § 1332.  Thus, nothing obliges the Court here to apply state substantive law (including affirmative defenses) to those Counts.  The result would be different if the Court exercised jurisdiction pursuant to § 1332, thereby triggering the Erie Doctrine.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938) ("Except in matters governed by . . . acts of Congress, the law to be applied in any case is the law of the state.") (emphasis added); cf. Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 540 n.1 (2d Cir. 1956) (opining "the Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in

state law."). Because Federal statutes supply the elements of Plaintiff's causes of action in

Counts I and III, they find no "source in state law" and Erie does not apply. Cf. Maternally

Yours, 234 F.2d at 540 n.1.

Moreover, Defendant has presented no authority demonstrating that Congress has

incorporated the voluntary payment doctrine as a defense to the FDCPA claim. During the

hearing of this matter, Defendant cited Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437

(D.N.J. 2009), for the proposition that the voluntary payment doctrine at least implicitly

applies to the FDCPA. Defendant misunderstands this case. There, the court refused to

certify the "Refund Interest Subclass" that was "limited to prospective class members to

whom [two of the defendants] paid a refund without interest as a result of such person

being billed an amount in excess of the stated patient responsibility on an Explanation of

Benefits." Id. at 470 (internal citations and quotation marks omitted). The court refused to

certify the subclass because the defendants "ha[d] raised the defense of voluntary payment"

by one of the putative class representatives. Id. at 472-73. However, the "Refund Interest

Subclass" the court refused to certify did not relate to the FDCPA claim at all. In fact, the

defendants did not raise a voluntary payment defense with regard to the "Debtor Subclass,"

the subclass that actually asserted FDCPA claims. See id. at 446-47 (identifying the claims

of the "Refund Interest," "Equitable Remedy," "Medicare Part B," and "Debtor"

subclasses), 478-79 (discussing specific reasons for denying "Debtor" subclass certification,

lack of ascertainability). Accordingly, Defendant's reliance on this case is grossly misguided.

Furthermore, even if the voluntary payment doctrine were applicable, the Court

19

would be inclined to agree with <u>Scott v. Fairbanks Capital Corporation</u>, 284 F. Supp. 2d 880 (S.D. Ohio 2003), and <u>Gonzalez v. Codilis & Assocs., P.C.</u>, No. 03 C 2883, 2004 WL 719264, at *3-4 (N.D. Ill. Mar. 31, 2004), which held that the FDCPA preempted the voluntary payment doctrine to the extent the doctrine afforded less protection to consumers than the FDCPA.

2.      <u>Sufficiency of the Pleadings</u>

The question now remains whether Plaintiff has alleged facts sufficient to sustain a claim for violation of the FDCPA.  She has.  Plaintiff alleges Defendant:  (1) failed to give initial notice, as required by 15 U.S.C. § 1692g, that she had a right to validate the debt; (2) misrepresented that she was an obligor on the American Express account; (3) misrepresented that American Express had provided it with Plaintiff's social security number; (4) misrepresented that American Express had named her as an obligor on the credit card account; (5) misrepresented that it possessed the credit card application. (Compl. ¶ 93.)  These misrepresentations, if true, clearly violate 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.").  Defendant fails to state any ground other than the voluntary payment doctrine to support this Motion as to the FDCPA claim.

Therefore, finding the doctrine either inapplicable or preempted and, more importantly, the allegations sufficient to sustain the claim, the Court will DENY the Motion with regard to Count III.

IV.  <u>CONCLUSION</u>

20

For the foregoing reasons, the Court will DENY the Motion for Judgment on the Pleadings as to Counts I and III , GRANT Plaintiff's oral motion for voluntary dismissal with prejudice as to Counts II and IV, and, therefore, DISMISS WITH PREJUDICE Counts II and IV.

Let the Clerk send a copy of this Order to all counsel of record.

It will be SO ORDERED.

> _____ /s/
> James R. Spencer
> Chief United States District Judge

ENTERED this __4th__ day of September 2009

21