IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| Pamela G. Cappetta, ) | Civil Action No. 3:08cv288 |
| ) | |
| Plaintiff, v. ) | |
| ) | |
| GC Services, L.P., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR ENFORCEMENT OF
PROTECTIVE ORDER AND SANCTIONS**

Defendant, GC Services, LP ("GCS"), by counsel, respectfully submits this Reply Brief in support of its Motion for Enforcement of this Court's Protective Order and Sanctions ("GCS' Motion") (D.N. 205).

### I. INTRODUCTION

Rather than exonerating counsel's egregious conduct, the facts and arguments raised by Cappetta in her Opposition to GCS' Motion for Enforcement of Protective Order and Sanctions demonstrate her counsel's disregard of not only the letter, but the spirit of this Court's Protective Order. (D.N. 44). It defies logic and common sense to believe that a defendant entering into a protective order would believe that the plaintiff's counsel could obtain confidential information produced by the defendant and use it to make a mass mailing that solicits new clients to bring new claims against the defendant. The Protective Order was entered not only to protect GCS from having Plaintiff's counsel fish through 566,000 files in an effort to harvest new clients, but to also protect those persons from being bombarded with solicitation letters from Plaintiff's counsel.

Counsel's argument that he was sending out 3,400 solicitation letters to basic card members identified in records GCS produced under the Protective Order so that Cappetta can

rebut GCS' arguments at trial rings hollow. The letter from Plaintiff's counsel does not ask the recipients to call with information related to this case. Rather, it reads as an indictment against GCS and its clear purpose is to bring in new clients. Notably, Cappetta does not even attempt to argue that the letter was targeted to specific persons who may potentially have knowledge of relevant facts. It is simply a mass mailing for clients.

Further belying the thinly veiled contention that the solicitation letter was directed toward discovering evidence to be used at trial, Cappetta does not even attempt to show this Court in her Opposition Memorandum one fact that her counsel has learned as a result of the mass mailing that would or could be used at the trial of this case. Indeed, after completing the mass mailing, and the filing of two new, unrelated class action complaints against GCS, Plaintiff has not supplemented her answers to interrogatories in this case to reveal new persons with knowledge of any claims or defenses; she has not supplemented her Rule 26(a)(1) disclosures in this case with any such information; nor has she supplemented any other discovery response, for that matter, with additional information learned as a result of Plaintiff's counsel's communications with the recipients of the mass mailing. That is not surprising, because the obvious purpose for the mailing, as demonstrated by the letter attached to GCS' Memorandum, is to obtain new clients:

> I would like to speak with you in further detail about the conduct that GC Services engaged in when it attempted to collect the American Express debt from you, and to address *any particular concerns* you may have.

(Ex. C to GCS' Memo. Supp. Mot. to Enforce Protective Order)(D.N. 206)(emphasis added). That request, plainly, is not for information, but rather a hook to bring in a new client by suggesting that the letter's recipient should have concerns about GCS' conduct in collecting the debt owed by the recipient.

2

## II. UNDISPUTED FACTS

Plaintiff's Memorandum in Opposition to Defendant's Motion (D.N. 210) does not deny the following facts set forth in GCS' Memorandum in Support of its Motion (D.N. 206):

- This Court entered a Stipulated Protective Order (D.N. 44) providing that all Confidential materials and Confidential-AEO materials shall not be used directly or indirectly for any business, commercial, or competitive purposes or for any purpose whatsoever other than solely for the preparation of the trial of this action in accordance with this Order.

- Pursuant to this Court's May 15, 2009 Order, GCS produced millions of pages of data and documents and disclosed the names, addresses and telephone numbers for individuals listed on approximately 566,000 American Express accounts, including accounts with both basic and supplemental card members.

- GCS' data production included information for vastly more individuals than were potentially covered by the class proposed in the Second Amended Complaint filed on June 8, 2009.

- On June 18, 2009, Plaintiff's attorney Leonard Bennett sent a letter to James Skilling, a copy of which is attached as Exhibit B to GCS' initial Memorandum in support of its Motion (D.N. 206-2).

- In June or July of 2009, one of Plaintiff's attorneys, Matthew J. Erausquin of Consumer Litigation Associates, sent a letter to numerous individuals, now disclosed by Plaintiff as approximately 3,400 individuals. (Ex. C to GCS' Memo. Supp. Mot. to Enforce Protective Order)(D.N. 206-3)

- Plaintiff admitted that he was retained to represent many of the persons who responded to the solicitation letter, most of whom are unrelated family members, friends and neighbors of the American Express obligor. Plaintiff's Reply Brief in Support of Motion for Sanctions at 4, n. 2 (D.N. 191).

- On September 23, 2009, Cappetta's counsel filed two new complaints against GCS, the *Thomas* action and the *Lestyk* action, which contain allegations brought on behalf of non-basic American Express cardholders.

### III. ARGUMENT

A.  **The Fact That Plaintiff's Counsel Sent a Mass Mailing To Basic Card Members and Not Supplemental Card Members Belies Plaintiff's Assertion That Her Counsel Acted In Accordance With The Protective Order.**

The thrust of Cappetta's argument is that her counsel's use of GCS' confidential discovery information – allegedly to prepare Cappetta's case – was permitted by the Protective Order. The facts demonstrate just the opposite.

Plaintiff admits that her counsel sent the mass mailing to 3,400 basic cardholders. (Opp'n Mot. to Enforce Protective Order at 8). Plaintiff states that her counsel's purpose for sending the mass mailing was to learn how GCS interacted with other consumers in collecting on the accounts, particularly supplemental cardholders. (*Id.* at 7). But even though Plaintiff's counsel had information for over 8,000 supplemental cardholders, Plaintiff's counsel did not contact those persons. One would think that simple phone calls would be sufficient to discover whether the supplemental cardholder would have facts relevant to a resolution of the issues in this case. But that is not what Cappetta's counsel did. Instead, he directed a mass mailing at over three thousand people who were *basic* cardholders – not supplemental cardholders – Thus, Cappetta's counsel's actions are inconsistent with their stated purpose for the mass mailing.

The Protective Order provides that all "Confidential Materials" and "all information derived therefrom . . . shall not be used, directly or indirectly, by any person for any business, commercial or competitive purposes or for any purpose whatsoever other than *solely* for the preparation and trial of this action in accordance with this Order." (emphasis added)(D.N. 206-2). Plainly, neither the letter nor the spirit of the Protective Order authorizes Cappetta's counsel to send out a mass mailing to American Express basic card members, which is Confidential Information it obtained from GCS, for the purpose of informing those persons that Consumer Litigation Associates is "litigating a federal case against GC Services in Richmond…" and that

"[o]ver the course of the case, we've learned that GC Services regularly contacts family members and neighbors in order to put pressure on the consumer to pay the debt allegedly owed to American Express." (Ex. C to GCS' Memo. Supp. Mot. to Enforce Protective Order)(D.N. 206-3). The letter goes on to suggest that "[i]n a large number of these cases, GC Services also illegally obtains the Experian credit reports of family members who are completely un-related to the debt in order to learn how to contact them and will also even do so with regard to the 'supplemental cardholder,' or authorized user, who GC Services knows very well is not an American Express account holder." (*Id.*). The letter goes on to tell the basic cardholder, to whom the letter is directed, and who is not a member of the putative class in this case, to call Consumer Litigation Associates with concerns that the basic cardholder may have. (*Id.*). As a result of this mailing, Consumer Litigation Associates is now prosecuting two new class actions and "approximately 60 persons have retained Plaintiff's counsel to pursue litigation for them." (Opp'n Mot. to Enforce Protective Order at 9). Consumer Litigation Associates has used GCS' Confidential Information directly or indirectly for its business or commercial purposes, and not *solely* for the preparation of the trial of this action.

One can only ask: Where is the request for information in the Consumer Litigation Associates' letter related to the Cappetta case? There is no request, because this letter is being sent by Consumer Litigation Associates for the sole purpose of drumming up business. If there is any doubt as to this, the letter states that Consumer Litigation Associates is "a consumer protection firm that litigates extensively in federal courts across the Commonwealth of Virginia on behalf of consumers who have been the victims of unfair, abusive, or deceptive collection or credit practices." (*Id.*). It goes without saying that when GCS produced confidential information on the 566,000 accounts that had been assigned to it for collection by American Express it never

5

envisioned that the Protective Order authorized Plaintiff's counsel to send out a mass solicitation letter to those persons that strongly suggested wrongdoing on the part of GCS and invited the recipients to contact Plaintiff's counsel with their concerns.

Plaintiff's argument that her lawyers were fishing for information to use at the trial of this matter also rings hollow for the reason that Plaintiff had information on the supplemental card holders. Plaintiff's counsel, therefore, did not need to first go through the basic cardholders. Indeed, Mr. Erausquin's Declaration (D.N. 175-7) filed in support of Plaintiff's Motion for Class Certification (D.N. 175) admits that GCS' account list produced in discovery disclosed supplemental cardholders (*Id.* at 3, ¶8). Mr. Erausquin then compiled, based upon the data produced, a "Basics Table" and a "Supp Table" (*Id.* at 3, ¶9). He declared that he had personal knowledge that the number of individuals in the non-basics class was at least 12,732, and that the number of individuals in the "supplemental only subclass" is at least 8,067 (*Id.* at 5, ¶¶ 14, 15). Cappetta does not allege her counsel contacted any of these supplemental cardholders.

Moreover, basic card members are not likely to have facts remotely similar to those alleged in this case. Cappetta's contention is that she was **not** a basic card holder, and was not even aware of the account's existence. In an attempt to get around this obvious hole her rationalization of her lawyer's conduct, Plaintiff cites a passage from the treatise, 5 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions,* § 15.12, at 53-53 (4th Ed. 2002). (Opp'n Mot. to Enforce Protective Order at 5). That quoted passage refers to notifying "absent class members" and responding to "inquiries from absent class members." Here, the letter sent by Plaintiff's counsel was not directed toward absent class members, but to basic cardholders, who are not members of the putative class. Its *sole* purpose is to solicit business for Consumer Litigation Associates. To put any other spin on the letter is mere sophistry.

B. **The Court Should Ignore Plaintiff's Attempts to Confuse the Issues and Apply Inapplicable Case Law.**

Plaintiff attempts to obfuscate the issue before the Court when, in her Memorandum (at 6), she discusses GCS' defense, insurance coverage and the relationship between the Cappetta, Thomas and Lestyk Complaints. None of this is relevant to whether Plaintiff's counsel's actions violated the Protective Order, which it did.

Plaintiff also attempts to distract the Court from the issue by again rearguing discovery issues that simply have no bearing on whether her counsel complied with the Court's Protective Order. (Opp'n Mot. Enforce Protective Order at 7). It is unclear what Plaintiff hopes to accomplish by this rhetoric, especially in light of Mr. Erausquin's Declaration in support of Plaintiff's Class Certification Motion setting forth his protocol for reviewing the thousands of supplemental and other accounts disclosed on a confidential basis by GCS. In any event, GCS' response to discovery and compliance with the Court's Orders have been set forth in previous papers filed with this Court and are unrelated to this issue.

Plaintiff's argument that there was no "active solicitation" of consumers simply does hold water given the clear language of the solicitation letter. (*Id.* at 9). The filing of two new lawsuits by Plaintiff's counsel against GCS confirms the effect of the letter. Further evidencing the intent and purpose of the mass mailing is Mr. Bennett's June 8, 2009 letter (Ex. B to GCS' Memo. Supp. Mot. to Enforce Protective Order) referring to over 130 lawsuits being filed after his filing the *Williams v. Lexis Nexis* case.[1]

---

[1] Plaintiff states that approximately 60 persons have retained Plaintiff's counsel to pursue litigation for them. (Opp'n Mot. Enforce Protective Order at 9). Those new clients, whose identities Plaintiff's counsel revealed to GCS' counsel, include 16 non-supplemental cardholders, 16 supplemental cardholders and 25 individuals who were neither.

Plaintiff argues that had GCS wished to prohibit counsel from contacting potential witnesses or otherwise developing the case, it could have sought to do so. (Opp'n Mot. to Enforce Protective Order at 10). That is not the issue. Had Plaintiff contacted supplemental card holders for the purpose of learning the facts relevant to the trial of this case, that would be one thing. Here, the communication by Consumer Litigation Associates does not come close to asking for information about supplemental cardholders. It is not even directed to supplemental cardholders. Rather, the letter is an indictment on GCS and it seeks to generate new clients for the firm. Again, the letter is directed to basic cardholders. It suggests that GCS is acting illegally in collecting debts and requests that the basic cardholder call Consumer Litigation Associates with any "concerns you may have."

The case cited by Plaintiff, *Ruehman v. Village of Palos Park,* 1994 WL 395172, at *1 (N.D.Ill. 1994), is inapplicable to the facts before the Court. *Ruehman* involved the plaintiff's counsel sending a fax to opposing counsel informing him that he was contacting certain witnesses and confirming a telephone conversation of the same day. The opposing party made no objection to the contact of witnesses until a month later. Under these circumstances, the Court found that plaintiff's counsel did not act unreasonably in assuming that the opposing party had acquiesced to a modification of a protective order prohibiting contacting potential witnesses named in certain documents. The Court also recognized that the plaintiff's counsel was working under a time limitation imposed in a different case and was trying to work out a settlement of that other case. (*Id.* at *1-2). No such facts are before this Court. Plaintiff's counsel certainly did not contact GCS' counsel to discuss sending out the mass mailing to basic cardholders based on Confidential Information provided under the Protective Order.

Contrary to Plaintiff's assertion, the "gravamen of GCS' grievance" is not that counsel for Plaintiff now represents a number of persons who allegedly have claims identical to Ms. Cappetta's. (Opp'n Mot. to Enforce Protective Order at 11). Rather, the point of GCS' Motion is that counsel for Plaintiff used confidential information regarding other American Express cardholders to direct a mass mailing to them for the purposes of soliciting new clients and filing two completely new purported class actions on behalf of the same individuals disclosed in discovery.[2] Consumer Litigation Associates used Confidential Information for its business purposes.

The Plaintiff is wrong in implying that excluding her lawyers as class counsel from representing putative class members is equivalent to an unethical restriction. (Opp'n Mot. to Enforce Protective Order at 12). This Court entered a Protective Order. Plaintiff's counsel breached the Protective Order by sending a mass mailing to non-supplemental cardholders after GCS produced millions of pages of data and information on American Express cardholders, and Plaintiff's counsel thereafter filed two new lawsuits on behalf of American Express non-basic cardholders. Cappetta's counsel has demonstrated a gross disregard for this Court's Order. Under these circumstances, seeking sanctions for violating a court order is not akin to an unethical restriction upon a lawyer's future representation of clients.

Plaintiff also asserts the hollow argument that the filing of related cases only serves to benefit Ms. Cappetta and all other absent putative class members, and that practical, legal and ethical considerations encouraged counsel's conduct. (*Id.*). Plaintiff's argument is built upon an untenable premise – if it serves my objectives or is advantageous to my case, I can disregard the

---

[2] Plaintiff cites *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323-24 (11th Cir. 2008). (Opp'n to Mot. to Enforce Protective Order at 11). In that case, the court rejected an argument that the court should find the named plaintiff inadequate to represent the class, not class counsel. The court did not address whether the plaintiff's counsel should be ordered not to represent plaintiff in the class action. (*Id.* at 1323-24).

9

Court's orders. Moreover, Plaintiff does not explain how her counsel's conduct in filing two new suits benefits Ms. Cappetta, nor does she adequately explain why or how her counsel's conduct is to be encouraged. The Plaintiff's reliance on *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 930-31 (7th Cir. 1972), is misplaced. In that case, the Court found that the lawyer committed a "slight" breach of ethics in communicating with members of a franchise association, which association already had been his client. GCS' motion does not implicate ethical issues. Rather, what is at issue here is the failure of one party to comply with the Court's Order and the detrimental impact that has on GCS. [3]

Finally, the Plaintiff does not actually distinguish the case law GCS cites, which support the relief sought under both Rule 37 and the inherent power of this Court. The fact that class counsel in *Kaufman v. American Family Mut. Ins. Co.*, U.S. Dist. LEXIS 32497 (D. Colo. 2008), initiated contact by telephone with persons disclosed in discovery rather than by letter is hardly a distinction supporting Plaintiff's counsel's conduct herein.

### C.  GCS Complied With the Intent of the Local Rules.

Local Rule 37(e) provides for an attorney conference regarding motions concerning discovery matters so that counsel can confer to explore the possibility of "resolving discovery matters in controversy." To be sure, GCS brought its Motion under Rule 37 of the Rules of Civil Procedure. However, as Plaintiff concedes, GCS does not seek fees or to bar the use of evidence. (Opp'n Mot. to Enforce Protective Order at 1). Nor does GCS' Motion seek relief on discovery matters regarding depositions, interrogatories, or document requests.

---

[3] To be clear, GCS is not accusing Plaintiff's counsel of ethical violations. While it could be argued the mass mailer should have been labeled "Advertising Material," or should have included a statement that "the necessity and advisability of legal action depends on variant factors that must be evaluated individually," this is not GCS' position in its Motion. *See* Virginia Rules of Professional Conduct § 7.2(d) and Comment [1a]. GCS' position in its Motion is that Plaintiff's counsel went beyond this Court's Protective Order and misused confidential information.

GCS is not trying to untangle discovery matters, or to obtain or prevent discovery, but to enforce an order of this Court. This Court can enforce its Protective Order through Rule 37 or through its inherent powers. *See American Science and Engineering, Inc. v. AutoClear, LLC*, 606 F. Supp.2d 617, 620 (E.D. Va. 2008). GCS is seeking to limit the harm that has been done and prevent any further litigation that could be spawned by a breach of this Court's Protective Order. The harm to GCS has been done. The only remedy available to rectify the harm is to have Cappetta's counsel disqualified as class counsel of record in this case and to preclude Plaintiff's counsel from representing any of the clients he obtained through use of protected information. A meet and confer, under these circumstances, would be a futile act. Indeed, Plaintiff's counsel does not suggest that he would be willing to do anything to remediate the breach of this Court's Protective Order.

Plaintiff asserts GCS filed its Motion over two months after it learned of the actions of Plaintiff's counsel. (*Id.* at 2). GCS, however, only filed its Motion after learning that Plaintiff was filing the *Thomas* and *Lestyk* lawsuits. Plaintiff's counsel filing those lawsuits was the first instance of actual harm to GCS arising from Plaintiff's counsel's violating the Protective Order. As Plaintiff states, there have been multiple communications by and between the parties through their counsel in which the retention of Plaintiff's counsel by other class members was discussed. (*Id.* at 4). Indeed, there were at least implicit threats by Plaintiff's counsel to bring other litigation against GCS. (*See, e.g.*, June 18, 2009 letter from L. Bennett, Ex B to GCS' Memo. Supp. Mot. to Enforce Protective Order)(D.N. 206-2).

However, GCS had no idea that Plaintiff's counsel had sent its letter to over 3,400 persons until *after* it filed the motion. It was not until Plaintiff's counsel filed the *Thomas* and *Lestyk* lawsuits that GCS knew actual facts, rather than mere bluster from Plaintiff's counsel,

11

warranting the filing of its Motion. Plaintiff's counsel filed those suits on September 23, 2009. GCS filed its Motion seven days later, on September 29, 2009 (D.N. 205).

Plaintiff also asserts that had GCS complied with Local Rule 37, it would have learned "the details provided herein," and "the purpose for the challenged witness letters," the "dispositive case law," and that GCS' factual assumptions are incorrect. (Opp'n Mot. to Enforce Protective Order at 4). GCS respectfully asks, what details? Was GCS simply to take the word of Plaintiff's counsel as to a 3,400 person mass mailing to non-supplemental cardholders disclosed by GCS, after GCS gave counsel information for 566,000 accounts on a confidential basis, and then was sued twice based upon those disclosed names? To what "dispositive case law" is Plaintiff referring? The cases cited in her Memorandum are distinguishable, as argued above. What "factual assumptions" of GCS are incorrect? As shown above, the basic facts warranting a finding of breach of the Protective Order are exactly as GCS has asserted in support of its motion.

When Plaintiff's counsel filed the *Thomas* and *Lestyk* cases, GCS acted in a prompt and responsible manner to obtain relief from Plaintiff's breach of the Protective Order.

### CONCLUSION

For the foregoing reasons, Defendant GC SERVICES, LP respectfully asks that this Court grant its Motion for Enforcement of Protective Order and Sanctions, and enter the relief requested therein.

Dated: October 21, 2009

Respectfully submitted,

GC SERVICES, LP

By:_____/s/_____
Charles M. Sims, Esq. (VSB No. 35845)
John "Jack" M. Robb, III, Esq. (VSB No. 73365)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower

951 East Byrd Street, 8th Floor
Post Office Box 2499
Richmond, Virginia 23219
(804) 915-4138 Telephone
(804) 916-7238 Facsimile
jack.robb@leclairryan.com
Charles.Sims@leclairryan.com

David M. Schultz, Esq.
Todd Stelter, Esq.
Hinshaw & Culbertson, LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
Telephone: (312) 704-3527
Facsimile: (312) 704-3001
dschultz@hinshawlaw.com
tstelter@hinshawlaw.com

Brian P. Brooks, Esq.
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006
(202) 383-5127 Brooks
BBrooks@omm.com
***Counsel for Defendant GC Services, LP***

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of October, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Leonard A. Bennett, Esq.
>Matthew J. Erausquin, Esq.
>Consumer Litigation Associates, P.C.
>3615-H Chain Bridge Road
>Fairfax, Virginia 22030
>Telephone: (703) 273-7770
>Facsimile: (888) 892-3512
>lenbennett@cox.net
>matt@clalegal.com
>
>Jason M. Krumbein, Esq.
>Krumbein Consumer Legal Services, Inc.
>1650 Willow Lawn Drive, Suite 300
>Richmond, Virginia 23230
>Telephone: (804) 673-4358
>Facsimile: (804) 673-4350
>KrumbeinLaw@gmail.com
>
>Richard J. Rubin, Esq.
>1300 Canyon Road
>Santa Fe, New Mexico 87501
>Telephone: (505) 983-4418
>Facsimile: (505) 983-2050
>dickrubin@cs.com
>**Counsel for Plaintiff Pamela G. Cappetta**

>_____/s/_____
>John "Jack" M. Robb, III, Esq. (VSB No. 73365)
>LECLAIRRYAN, A PROFESSIONAL CORPORATION
>951 East Byrd Street, 8th Floor
>Post Office Box 2499
>Richmond, Virginia 23219
>(804) 915-4138 Telephone
>(804) 916-7238 Facsimile
>jack.robb@leclairryan.com
>**Counsel for Defendant GC Services, LP**