IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| PAMELA G. CAPPETTA ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:08cv288 |
| v. ) | |
| ) | |
| GC SERVICES, LP ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT GC SERVICES' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE TO SERVE INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS ON ABSENT CLASS MEMBERS**

Defendant GC Services, LP ("GC Services") respectfully submits this Reply Memorandum in Support of its Motion for Leave to Serve Interrogatories and Requests for Production of Documents on Absent Class Members.

### INTRODUCTION

As the Court knows from previous briefing and hearings, one of GC Services' principal defense strategies in this action is to establish that most (perhaps nearly all) supplemental cardholders who are members of the certified class are obligated for the debt on which GC Services was retained to collect. Supplemental cardholders are obligated for two different reasons. First, in most cases, the supplemental cardholders made charges using their American Express cards, thus "initiating a business transaction" with American Express providing GC Services a permissible purpose under the Fair Credit Reporting Act ("FCRA") to obtain a supplemental cardholder's address update report. Second, in other cases, class members' spouses – the primary cardholders – made charges for which the class members are legally

responsible under Virginia's doctrine of necessaries, thus providing GC Services a separate permissible purpose under the FCRA, as interpreted by the Federal Trade Commission, to obtain a supplemental cardholder's address update report. GC Services has a due process right to adduce evidence relevant to both of these core trial arguments, and none of plaintiff's arguments to the contrary nullifies that right.

As an initial matter, plaintiff's suggestion that it is improper to propound limited and focused discovery requests on absent class members following class certification is inconsistent with the very authorities they themselves quote, and GC Services' request for such discovery is fully consistent with this Court's discovery and case management orders to date. (*See* Section I *infra*.)

On their merits, GC Services' specific discovery requests are well within the bounds of permissible class discovery. The subject matter of the requests – namely, the use of the relevant American Express cards by absent class members, and the nature of charges made by absent class members' spouses for purposes of assessing application of the doctrine of necessaries – relate directly to class liability issues. And, it has become clear that there is no adequate source for the information sought in the requests – that much is clear from the pending summary judgment motion in the parallel *Thomas v. GC Services* case (No. 3:09cv597), in which GC Services has introduced copies of the plaintiff's American Express bills to establish his use of the card, and plaintiff's counsel has objected on authenticity and hearsay grounds. Given counsel's unwillingness to accept documentary evidence that may be available from either GC Services' own files or from the files of third parties such as American Express, the only logical alternative is to establish the relevant facts using information from the class members themselves. (*See* Section II *infra*.)

In short, GC Services' request for discovery has been carefully tailored to address only issues that will be central at trial and that cannot be satisfactorily obtained from other sources. Simple due process requires that GC Services not be forced into a class trial without access to such basic and relevant evidence.

## ARGUMENT

I. **GC SERVICES' CLASS DISCOVERY REQUESTS ARE CONSISTENT WITH ESTABLISHED CLASS-ACTION PROCEDURE AND THE PRIOR ORDERS OF THIS COURT.**

GCS has a due process right to defend itself at trial by confronting witnesses and presenting to a fact-finder all admissible facts that would tend to prove it is not liable on the claims asserted. In her opposition brief, plaintiff herself acknowledges that "the majority of courts considering the scope of discovery against absent class members have granted discovery via interrogatories or document requests (1) where the information requested is relevant to the decision of common questions, (2) when the discovery requests are tendered in good faith and are not unduly burdensome and (3) when the information is not available from the class representative parties." (Opp'n Brief at 2; *see also* Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d § 1796.1 ("[M]ost courts have recognized that discovery [of absent class members] is proper.")).

Plaintiff resorts to arguing that this Court's prior discovery orders somehow bar any post-class-certification merits discovery. (*See* Opp'n Brief at 4). That argument is untenable, because this Court's prior discovery rulings make clear that the discovery deadlines previously imposed applied to class certification discovery and not to *all* discovery in the action. *See, e.g.*, Order, Docket No. 97 ("Discovery is EXTENDED an additional sixty (60 days) for the purpose of inquiring into the viability of a class claim, and shall end on May 11, 2009); Order, Docket No.

146 at 3 ("Discovery as to a putative class will be extended until Friday, July 10, 2009."); Order, Docket No. 168 ("By consent of the parties and for good cause shown, the Court hereby extends discovery as to a putative class until Friday, July 31, 2009."); Third Joint Stipulation Regarding the Status of Discovery, Docket No. 112 at 2 ("The primary issue addressed in this current discovery dispute relates to Plaintiff's continuing efforts to establish the numerosity element of Rule 23 in her expected Motion to Amend and Motion for Class Certification."). There is nothing in this Court's previous rulings that would preclude the merits discovery that is the subject of this motion.[1]

Allowing the limited merits discovery GC Services now requests is fully consistent with normal class action practice, in which courts commonly authorize separate class-certification and merits phases of discovery, with merits discovery following the certification order. *See, e.g., Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 338 (4th Cir. 2006) (noting availability of post-certification merits discovery and stating that, "[i]f discovery on the merits was to show that information about the [alleged violative] practices varied materially from place to place or from time period to time period in the four relevant states, then the issue of any class certification could be revisited by the district court."); *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 646-47 (D.S.C. 1992) (refusing to address defendant's merits defenses at class certification stage, because "many of the issues raised by the Defendant will require [post-certification] factual discovery to determine the effect of the validity of the arguments presented, as well as the applicability thereof, to each member of the class").

In light of the established practice of allowing targeted merits discovery following a

---

[1] Even if the Court's previous rulings do not expressly provide for the discovery GC Services now seeks, the Court has the power under Rule 23 to permit GC Services to propound the limited discovery requests attached as an exhibit to its initial Memorandum.

ruling on class certification, plaintiff's suggestion of a "dilatory awakening on [GC Services'] need for merits discovery" strains credulity. That is particularly true given the federal court's oft-repeated admonition that courts may not resolve merits issues at the class certification stage. *See, e.g., Eisen v. Carlisle*, 417 U.S. 156, 177 (1974). In this case, the parties' discovery efforts to date have focused on the claims of the named plaintiff and on class certification issues. Now that the Court has certified a limited class, it is proper as a matter of ordinary class action practice to allow GC Services to obtain the limited, crucial merits discovery it seeks from class members.

II. **GC SERVICES' SPECIFIC DISCOVERY REQUESTS ARE WELL WITHIN THE BOUNDS OF APPROPRIATE CLASS MERITS DISCOVERY.**

Plaintiff advances three arguments against GC Services' discovery request: first, that the issues covered by the proposed discovery (such as supplemental cardholders card usage, and the nature of primary cardholder charges for purposes of evaluating the doctrine of necessaries) are not "class issues"; second, that the previous rulings of this court have already determined all liability issues in this case; and third, that GC Services does not need to obtain this information from absent class members. (Opp'n Brief at 4-6.) None of these arguments is persuasive.

    A. **THE REQUESTED DISCOVERY RELATES TO CORE CLASS LIABILITY QUESTIONS INCLUDING WHETHER ABSENT CLASS MEMBERS ARE OBLIGORS UNDER THE DOCTRINE OF NECESSARIES.**

Although plaintiff disputes the proposition that card usage by supplemental cardholders or information relevant to the doctrine of necessaries are "class issues," plaintiff must concede that liability under the FCRA is a class issue. Since FCRA liability depends on whether particular class members are obligors with respect to the American Express debts at issue, it follows ineluctably that discovery on those matters relates to class issues. Indeed, in its recent

summary judgment ruling, this Court acknowledged that obligor status will be an issue at trial: "[T]he Court takes no position as to whether Defendant might be able to establish some [non-contractual] basis on which Plaintiff would be obligated to pay the debt claimed by American Express." (*See* D.N. 229 at 3).

The discovery requested here is very similar to discovery of absent members allowed by other courts. For example, in *Transamerican Refining Corp. v. Dravo Corp.*, 139 F.R.D. 619 (S.D. Tex. 1991), where a plaintiff class of specialty steel users alleged that defendants engaged in kick-back schemes with other conspirators to overcharge plaintiffs for the price of steel on their cost-plus contracts, defendants propounded interrogatories on absent class members inquiring as to (1) the identity of class members; (2) whether they actually purchased specialty steel on a cost-plus basis; (3) from whom the purchases were made; (4) the actual amount of each purchase; and (5) the specific projects to which the purchases related. *See* 139 F.R.D. at 622. The court allowed the interrogatories because they were "limited primarily to the defendants' defenses and the plaintiffs' claims" and "will impact upon common issues at trial":

> The defendants have plead the defenses of waiver, ratification, estoppel, accord and satisfaction, and release. It is relevant to determine from the absent class members whether they received credits from suppliers which the fabricators may have received and not deducted from the costs of specialty steel invoiced to class members, whether the absent class members passed on the alleged overcharged costs, or whether they received restitution or have given releases for their claims. These inquiries, among others, may not be known to the representative class members and only to each absent class member, thus warranting the providing of information by the absent class members via interrogatories.

*Id*. So too here: GC Services, through simple and straightforward questions easily understandable by a lay person, seeks to propound basic questions about the American Express cardholder status of the absent class members, their relationship to the primary cardholder, their usage of the card, and the basic nature of the charges on the card. These facts will help establish

whether absent class members have a valid claim under the FCRA based on their status as obligors or non-obligors, and based on whether charges made by the primary cardholders are covered by the doctrine of necessaries. Since those are the fundamental issues that will be contested at trial, it is fully appropriate to permit limited discovery of absent class members relevant to those issues.

### B. THIS COURT'S PRIOR RULINGS RECOGNIZE THAT GC SERVICES IS ENTITLED TO ESTABLISH CLASS MEMBERS' OBLIGOR STATUS.

Plaintiff also fundamentally misrepresents this Court's holdings to date by maintaining that the "established" "law of the case" is that "use of an authorized user card by a class member did not provide a permissible purpose for GCS to obtain that person's consumer report. (Opp'n Brief at 6.) No such "law of the case" exists, and plaintiff's proposition that class members' status as obligors or nonobligors is irrelevant to the disposition of the case is tantamount to suggesting that a trial in this matter is unnecessary on the ground that liability has already been established. As the Court well knows, nothing of the sort has occurred. On the contrary, the Court's prior summary judgment and class certification rulings were predicated on the existence of disputed factual issues that remain to be tried – the most important of which involve the determination of which class members used their American Express cards in ways that rendered them subject to a consumer report inquiry under the FCRA, and which class members are subject to such an inquiry based on charges made by their spouses based on the FTC's interpretation that the doctrine of necessaries supports a permissible purpose under the FCRA.

### C. PLAINTIFF' COUNSEL'S OWN LITIGATION POSITIONS DEMONSTRATE THAT GC SERVICES HAS NO ADEQUATE SOURCE FOR THE REQUESTED DISCOVERY OTHER THAN THE ABSENT CLASS MEMBERS THEMSELVES.

In theory, one might think that certain information covered by the requested discovery could be obtained from other sources – from American Express, for example, or from GC

Services' own records. But when GC Services tried to introduce such evidence in the parallel *Thomas* matter – evidence of American Express account statements showing card usage, among other things – plaintiff's counsel argued that GC Services' account records, the American Express account statements in GC Services' possession showing named plaintiff's personal charges with his authorized user card, affidavits and other documentation filed by GC Services in that matter constituted inadmissible hearsay (and, in the case of the American Express statements, raised authenticity questions). *See Thomas v. GC Services, LP*, No. 3:09cv597, Docket No. 34 at 3-4. If plaintiff's counsel regards American Express account statements as out of court statements covered by the hearsay rule, then the only way for GC Services to establish individual supplemental cardholders' use of their cards is through document production from their own records and perhaps their own in-court testimony.

Neither does plaintiff even come close to showing how the proposed modest discovery requests are unduly burdensome. The proposed discovery is limited to eleven clear and concise interrogatories and one request for production. The questions are all factual in nature and do not require technical knowledge or require class members to seek legal advice. *See, e.g.,* Proposed Interrogatory # 5 ("Where you a primary cardholder on an American Express credit card account between May 9, 2006 and May 9, 2008?"); Proposed Interrogatory # 7 ("If you were a supplemental or authorized user on an American Express credit card account between May 9, 2006 and May 9, 2008, please identify the primary cardholder listed on the account(s)."). Discovery requests such as these have been commonly allowed. *See, e.g., Boynton v. Headwaters, Inc.*, 2009 U.S. Dist. LEXIS 94949, *3 (W.D. Tenn. 2009) ("Courts have allowed discovery to be taken from unnamed class members . . . [when] the discovery does not require expert technical or legal assistance to respond."); *cf. In re Serzone Prods. Liab. Litig.*, 231 F.R.D.

221, 235 (S.D. W. Va. 2005) ("Providing information regarding the [alleged] injury and the name and address of counsel, if any, does not impermissibly burden a claimant's ability to return the request for exclusion within a reasonable time."); *Easton & Co. v. Mut. Benefit Life Ins.*, 1994 U.S. Dist. LEXIS 12308, *14 (D.N.J. 1994) (denying the plaintiff's request for a protective order because, among other things, "class members need not obtain counsel to answer the interrogatories and document requests.").

Finally, plaintiff's attempt to divert the issue of GC Services' proposed discovery to absent class members into a discussion of the propriety of an opt-out notice in a stipulated proposed class notice pursuant to Fed. R. Civ. P. 23(c) should be rejected. It is practically self-evident that, if discovery will be taken of absent class members, those class members should be informed of that fact. *See, e.g., Hudson v. Capital Mgmt. Int'l, Inc.*, 1984 U.S. Dist. LEXIS 18810, at *31-32 (N.D. Cal. 1984) (approving an opt-out notice that would state "that the court has approved some discovery of absent class members to which they will have an obligation to respond, and the consequences of a failure to respond."). Even a cursory examination of the cases cited by plaintiff shows they are not to the contrary.

## CONCLUSION

For the foregoing reasons and those stated in its opening memorandum, GC Services respectfully requests that its Motion for Leave to Serve Interrogatories and Requests for Production of Documents on Absent Class Members be granted.

Dated: December 28, 2009

Respectfully submitted,

GC SERVICES, LP

By:_____/s/_____
Charles M. Sims, Esq. (VSB No. 35845)
John "Jack" M. Robb, III, Esq. (VSB No. 73365)

LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Post Office Box 2499
Richmond, Virginia 23219
(804) 915-4138 Telephone
(804) 916-7238 Facsimile
jack.robb@leclairryan.com
Charles.Sims@leclairryan.com

David M. Schultz, Esq.
Todd Stelter, Esq.
Hinshaw & Culbertson, LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
Telephone: (312) 704-3527
Facsimile: (312) 704-3001
dschultz@hinshawlaw.com
tstelter@hinshawlaw.com

Brian P. Brooks, Esq.
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006
(202) 383-5127 Brooks
BBrooks@omm.com
***Counsel for Defendant GC Services, LP***

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of December, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Leonard A. Bennett, Esq.
Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
3615-H Chain Bridge Road
Fairfax, Virginia 22030
Telephone: (703) 273-7770
Facsimile: (888) 892-3512
lenbennett@cox.net
matt@clalegal.com

Jason M. Krumbein, Esq.
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Drive, Suite 300
Richmond, Virginia 23230
Telephone: (804) 673-4358
Facsimile: (804) 673-4350
KrumbeinLaw@gmail.com

Richard J. Rubin, Esq.
1300 Canyon Road
Santa Fe, New Mexico 87501
Telephone: (505) 983-4418
Facsimile: (505) 983-2050
dickrubin@cs.com
***Counsel for Plaintiff Pamela G. Cappetta***

/s/
_____
John "Jack" M. Robb, III, Esq. (VSB No. 73365)
LeClairRyan, A Professional Corporation
951 East Byrd Street, 8th Floor
Post Office Box 2499
Richmond, Virginia 23219
(804) 915-4138 Telephone
(804) 916-7238 Facsimile
jack.robb@leclairryan.com
***Counsel for Defendant GC Services, LP***