**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| PAMELA G. CAPPETTA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08cv288 |
| | ) | |
| GC SERVICES, LP | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| LYNN LESTYK | ) | |
| BASIL LESTYK | ) | |
| on behalf of themselves and | ) | |
| those similarly situated | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09cv598 |
| | ) | |
| GC SERVICES, LP, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| JAMES THOMAS, on behalf of himself | ) | |
| and those similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09cv597 |
| | ) | |
| GC SERVICES, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT,**
**AND AN AWARD OF INCENTIVE PAYMENTS, ATTORNEYS FEES AND**
**REIMBURSEMENT OF EXPENSES**

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION…………………………………………………………………8

II.  ARGUMENT……………………………………………………………………....9

    A.  The Proposed Settlement is Fair, Reasonable, and Adequate and Should
    Be Approved. ……………………………………………………………………9

        1.  The Standard for Judicial Approval of Class Action Settlements…………..9

        2.  The Notice Provided to the Class Members was Reasonable……………….12

        3.  An Analysis of the *Jiffy Lube* Factors Demonstrates that the
        Settlement is Fair and Reasonable……………………………………………13

            a.  The Posture of the Case at the Time that the
            Settlement was Reached…………………………………………14

            b.  The Extent of the Discovery that had been Conducted……………15

            c.  The Circumstances Surrounding the Negotiations ………………...16

            d.  Class Counsel's Experience in the Area of
            Consumer Class Action Litigation…………………………………16

        4.  An Analysis of the *Jiffy Lube* Factors Demonstrates that
        the Settlement is Adequate……………………………………………………..17

            a.  The Strengths of the Case on the Merits…………………………….17

            b.  The Existence of any Difficulties of Proof
            or Strong Defenses…………………………………………………..18

            c.  The Anticipated Duration and Expenses of
            Additional Litigation………………………………………………..18

            d.  The Solvency of the Defendant and the Likelihood of
            Recovery on a Litigated Judgment………………………………….20

            e.  The Degree of Opposition to the Settlement…………………………20

    B.  The Court should Approve the Request for an Award of Incentive Payments,
    Attorneys Fees and Reimbursement of Expenses………………………………….20

        1.  The Court should Award Incentive Payments
        to the Class Representatives……………………………………………………21

2.      The Court should Award Attorneys' Fees Using the
        Percentage of Fund Method………………………………………………21

3.      The Court should Approve the Request for
        Reimbursement of Expenses………………………………………………25

C.      The Court Should Grant Final Approval to the Settlement,
        and Certify a Settlement Class ……………………………………………25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alvarado Partners, L.P. v. Mehta,*
  723 F.Supp. 540 (D.Colo. 1989)…….…………………………………………19

*Armstrong v. Bd. of Sch. Dirs.,*
  616 F.2d 305 (7th Cir. 1980) ……...……………………..……………………...10

*Blum v. Stenson,*
  465 U.S. 886 (1984)………………………………..……………………………22

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980)...……………………………..……………………………21

*Camden I. Condo. Ass'n, Inc. v. Dunkle,*
  946 F.2d 768 (11th Cir. 1991) …………………………………………………22

*Cardiology Associates, P.C. v. National Intergroup, Inc.,*
  1987 WL 7030 (S.D.N.Y. 1987)………………………………..………………...19

*West. Virginia. v. Chas. Pfizer & Co.,*
  314 F.Supp. 710 (D.C.N.Y. 1970)………………………………………………...19

*Clark v. Experian,*
  2004 WL 256433 (D.S.C. 2004)………………………………………………...24

*Cook v. Niedert,*
  142 F.3d 1004 (7th Cir. 1998)…………………………………………………21

*DeLoach v. Philip Morris Cos.,*
  2003 WL 23094907 (M.D.N.C. Dec. 19, 2003)…………………………………22

*Fisher v. Va. Elec. & Power Co.,*
  217 F.R.D. 201 (E.D. Va. 2003)……………………………..…………………13

*Flinn v. F.M.C. Corp,*
  528 F.2d 1169 (4th Cir.  1975)……………………..………………………11, 20

*Goldberger v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000)……………………………………….…………….22

*Gottlieb v. Barry*,
    43 F.3d 474 (10th cir. 1994)……………………...……………………………..22

*Gwozdzinnsky v. Sandler Assoc.*,
    159 F.3d 1346 (2d Cir. 1998)……………..……………………………………23

*Henley v. FMC Corp.*,
    207 F. Supp. 2d 489 (S.D. W. Va. 2002)…………...…………………………11

*In re Bancorp Litig.*,
    291 F.3d 1035 (8th Cir. 2002)…………………..……………………………21, 23

*In re CMS Energy ERISA Litig.*,
    2006 WL 2109499 (E.D. Mich. June 27, 2006)…………...…………………………23

*In re Combustion, Inc.*,
    968 F. Supp. 1116 (W.D. La. 1997)……………..……………………………..23

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003)…………….....……………………………22

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*,
    447 F. Supp. 2d 612 (E.D.La. 2006)…………………………………………...23

*In re General Motors Corp. Pick-Up Truck Fuel Tanks Prod. Liab. Litig.*,
    55 F.3d 768 (C.A.3 Pa, 1995)……………………………………………………21

*In re Jiffy Lube Secs. Litig.*,
    927 F.2d 155 (4th Cir. 1991)…………………………..…………………11,13,14

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001)…………..…………………………11,13,19,20

*In Re Microstrategy, Inc. Sec. Litig.*,
    172 F. Supp. 2d 778 (E.D. Va. 2001)…………………...…………..…………...23

*In re Mid-Atlantic Toyota Antitrust Litig.*,
    564 F.Supp. 1379 (D. Md. 1983)………………..……….…………………...13

*In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995)…………………………………………………21, 23

*In re Xcel Energy, Inc.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)……………………………………………23

*Jones v. Dominion Resources Services, Inc.,*
    601 F. Supp. 2d 756 ……………………………………………………………..22

*Kidrick v. ABC Television & Appliance Rental,*
    1999 WL 1027050 (N.D. W. Va. May 12, 1999)…………………………....……..23

*Maley v. Del Global Techs. Corp.,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)……..………...…………………………..23

*Rawlings v. Prudential-Bache Props., Inc.,*
    9 F.3d 513 (6th Cir. 1993)…………………………………………………………21

*Report of the Third Circuit Task Force, Court Awarded Attorney Fees,*
    108 F.R.D. 237 (Oct. 8, 1985)…………..……………………………………21

*South Carolina Nat'l Bank v. Stone,*
    139 F.R.D. 335 (D.S.C. 1991)…………..…………………………………11, 14

*South Carolina Nat'l Bank v. Stone,*
    749 F. Supp. 1419 (D.S.C. 1990)……………………..……………………………..9

*Sala v. National R.R. Passenger Corp.,*
    721 F. Supp. 80 (E.D. Pa. 1989)……………………………………………...20

*San Francisco NAACP v. San Francisco Unified Sch. Dist.,*
    59 F. Supp. 2d 1021 (N.D. Cal. 1999)………..……………………….…………………10

*Shaw v. Toshiba Am. Info. Sys., Inc.*
    91 F. Supp. 2d 942 (E.D. Tex. 2000)……………………………………………21

*Smith v. Krispy Kreme Doughnut Corp.,*
    2007 WL 119157 (M.D.N.C. Jan. 10, 2007)……………………………...………22

*Sprague v. Ticonic Nat'l Bank,*
    307 U.S. 161 (1939)………………………………………………………………21

*Staton v. Boing Co.,*
    327 F.3d 938 (9th Cir. 2003)……………………………………………………21

*Strang v. JHM Mortgage Sec. Ltd. P'ship,*
    890 F. Supp. 499 (E.D. Va. 1995)……………………..……………………11,13,22

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)………………………………………….....23

*Swedish Hosp. Corp v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993)……………….……………………………………….22

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)……………………………………………………21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)………………………………...………………………..16

*Weiss v. Regal Collections*,
    2006 WL 2038493 (D.N.J. July 19, 2006)………………………………………..16

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910)…………………………………………………………………...9

**RULES**

Fed. R. Civ. P.
23(e)……………………………………..……………………………………………9, 10

Fed. R. Civ. P.
23(e)(1)(A)………………………………………………………………………..9

Fed. R. Civ. P.
23(e)(1)(B)………………………………………………………………………..9

Fed. R. Civ. P.
23(e)(2)…….…………………………………………………………………….9

Fed. R. Civ. P. 23(c)..…………………………………………………………………10

**OTHER AUTHORITIES**

Manual for Complex Litigation (Fourth) § 21.312 (2004)………………………………11

**TREATISES**

Alba Conte & Herbert Newberg, Newberg On Class Actions
    § 11.41 (4th ed. 2002)………………………………………………………..10

Plaintiffs Pamela Cappetta, Lynn Lestyk and James Thomas, on behalf of themselves and the Class, respectfully submit this memorandum in support of final approval of the class settlement reached in this case. With the approval of the Plaintiffs, class counsel herein also petition the Court for an award of attorneys' fees and for reimbursement of their out of pocket expenses incurred in furtherance of litigating this matter to the successful result now before this Court for final approval.

## I.   INTRODUCTION

This case was literally as hard fought as any class case that Plaintiffs' counsel has ever litigated in this District. This case was brought pursuant to the Fair Credit Reporting Act based on the Defendant's access of various Experian products, including full Experian credit reports, that Plaintiffs alleged that the Defendant lacked a permissible purpose to obtain. Upon a finding of willfulness – which the Defendant denies - it would conceivably be liable for between $100 to $1,000 per class member in statutory damages, plus such additional punitive damages as the Court might allow. As the Court is aware, this case was both vigorously prosecuted and defended.

It was filed in early 2008 and ultimately spanned three years from start to finish, involved four different defense firms, four substantive merits motions, nine discovery motions, four memorandum opinions, two sanctions motions, the production of more than 7 million pages of documents in discovery, certification of a litigation class, and numerous mediation sessions, including with an outside JAMS mediator, before it was resolved. Plaintiffs hired an expert witness at their own expense who conducted significant work in determining the capabilities of the Defendant's computer systems, including a site inspection that occurred at the Defendant's

headquarters in Texas.  The fact that the parties are now before the Court seeking approval of this settlement is due entirely to the guidance and substantial effort of Magistrate Judge Dohnal at each stage along the way, mediating such issues as discovery disputes, the scope of the site inspection, issues regarding the protective order, and ultimately the final resolution of the case. As explained below, the settlement is an excellent result for the Class by any standard.  It provides relief of genuine value without the risks of extended litigation.

Indeed, response from the class members has been overwhelming positive.  With 51,294 notices delivered nationwide, 5,946 class members have filed claims either through the mail or via an online website portal.  Only 176 class members, or 0.3% of the class members, have requested exclusion.  Not a single objection was made.  Each claimant will receive a check for at least $300.  By any account, this settlement is a resounding success for the class members. Accordingly, Plaintiffs submit this Memorandum in Support of their Motion to the Court, pursuant to the Federal Rules of Civil Procedure, for a final order (1) granting final approval to and directing implementation of the Settlement; (2) approving incentive awards to the Class Representatives; (3) awarding attorneys' fees and (4) ordering the reimbursement of out-of-pocket expenses incurred by Class Counsel.

## II.  ARGUMENT

### A.  The Proposed Settlement is Fair, Reasonable, and Adequate and Should Be Approved.

#### 1.  The Standard for Judicial Approval of Class Action Settlements

There is a strong judicial policy within this Circuit favoring resolution of litigation prior to trial.  *See, e.g., S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("[t]he voluntary resolution of litigation through settlement is strongly favored by the courts") (citing Williams v. First Nat'l Bank, 216 U.S. 582 (1910)). Settlement spares the litigants the

uncertainty, delay and expense of a trial and appeals while simultaneously reducing the burden

on judicial resources. As the court in *S.C. Nat'l Bank* observed:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting Armstrong v. Bd. of Sch. Dirs., 616 F.2d 305, 313 (7th Cir. 1980))

In order to safeguard the interests of the absent class members, all class settlements, and

the corresponding later dismissal of the case, requires Court approval.  Fed. R. Civ. P.

23(e)(1)(A).  The process for that approval is provided for by Rule 23(e), which provides, in

relevant part:

> **(e) Settlement, Voluntary Dismissal, or Compromise.**
>
> (1)(A)  The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.
>
> (B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.
>
> (C) The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.
>
> (2) The parties seeking approval of a settlement, voluntary dismissal, or compromise under Rule 23(e)(1) must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

Rule 23(e) thus imposes two basic requirements on the parties and on the Court before

the approval of a class settlement and dismissal.  First, the Court must determine that notice was

directed "in a reasonable manner to all class members."  Fed. R. Civ. P. 23(e)(1)(B).  Second, the

Court must determine that that the settlement "is fair, reasonable, and adequate."  The parties

herein address each of these requirements.

Federal jurisprudence strongly favors resolution of class actions through settlement. *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999); *see* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Federal Rule of Civil Procedure 23 requires Court review of the resolution of a class action such as this one. Specifically, the Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during the settlement negotiations. *Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 492 (S.D. W. Va. 2002) (*citing In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)). The Court may approve a settlement only after a hearing and on finding that it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances*." In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (*quoting S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991)).

In determining whether a given settlement is reasonable, the court should avoid transforming the hearing on the settlement into a trial on the merits regarding the strengths and weaknesses of each side of the case. *Flinn v. F.M.C. Corp*, 528 F.2d 1169, 1172-73 (4th Cir. 1975). Ultimately, the approval of a proposed settlement agreement is in the sound discretion of

the Court.  *Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995)(citing *Jiffy Lube,* 927 F.2d at 158*).*

### 2.     The Notice Provided to the Class Members was Reasonable.

In a settlement class maintained under Rule 23(b)(3), the class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e).  Rule 23(e) specifies that "[n]o class action may be 'dismissed or compromised without [court] approval,' preceded by notice to class members."  Fed.R.Civ.P. 23(e).  Rule 23(c)(2) requires that notice to the class must be "the best practicable under the circumstances, including individual notice to all member who can be identified through reasonable effort."  Fed.R.Civ.P. 23(c).  The Rule also requires that the notice inform potential class members that (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out; (3) and any member who does not opt out may appear through counsel.  *Id.*  The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient.  *See* Manual for Complex Litigation (Fourth) § 21.312 (2004).

The class list was compiled via a joint effort involving class counsel, Magistrate Judge Dohnal, GC Services, American Express and Experian.  Together, data from multiple sources was cross referenced to identify the unique class members with maximum precision, based on whether they were listed as a primary obligor, supplemental cardholder, or "other" person, and then to supply the most recent address information available.  As the Court is aware, Experian is a national credit reporting agency and is one of the better sources of current address information available.  Experian's database is updated constantly by banks and credit card companies that have financial relationships with the class members.   Once the class list was compiled, notice was provided by direct mail, postage pre-paid.  A professional class action administrator, Rust

Consulting, Inc., was hired and mailed the notices.  Bad addresses were checked against a public records database and the National Change of Address database.      Thompson Decl. ¶ 10-11, Exhibit 1.

 As this Court has held, "[w]hat amounts to reasonable efforts under the circumstances is for the Court to determine after examining the available information and possible identification methods . . . 'In every case, reasonableness is a function of [the] anticipated results, costs, and amount involved.'"  *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003) (citations omitted).  The Parties' efforts to provide class members with notice of the settlement makes it clear that such notice was the best available notice under the circumstances given:  (a) the available information; (b) the possible identification methods; (c) the number of class members; and (d) the amount of the settlement.  The Court should find that the Notice of the Class Action Settlement, and the process followed by Rust Consulting as described in the Thompson Declaration, attached hereto as Exhibit 1, satisfies the requirements of Rule 23.

> **3.      An Analysis of the *Jiffy Lube* Factors Demonstrates that the Settlement is Fair and Reasonable**

The Court's determination of compliance with Rule 23(e)(1)(C) typically requires a two-part analysis, often referred to as the *Jiffy Lube* factors.  The Court must determine whether the settlement is "fair and reasonable" and then whether the settlement is "adequate."   The approval of a proposed settlement agreement is in the sound discretion of the Court.  I*n re Jiffy Lube Sec. Lit.*, 927 F.2d 155, 158 (4th Cir.1991).

The first step in the *Jiffy Lube* analysis is a determination as to the fairness of the settlement.   The fairness factors are critical to the protection of the class members from unscrupulous class counsel and relate to whether there has been arm's length bargaining.  *See In*

*re Mid-Atlantic Toyota Antitrust Litig.,* 564 F.Supp. 1379, 1383 (D. Md. 1983); *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991).  The court must consider four factors: (i) the posture of the case at the time of settlement; (ii) the extent of discovery that has been conducted; (iii) the circumstances surrounding the negotiations; and (iv) the experience of counsel.  *In re Jiffy Lube Securities Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991); *see also In re Microstrategy, Inc. Securities Litig.,* 148 F.Supp.2d 654, 663-64 (E.D. Va. 2001); *Strang v. JHM Mortg. Securities Ltd. Partnership*, 890 F.Supp. 499, 501 (E.D. Va. 1995).   A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's length negotiations.  *See South Carolina Nat'l Bank,* 139 F.R.D. at 339.  As described below, the settlement reached in this case is clearly fair and each of the *Jiffy Lube* factors are satisfied.

> **a.**     **The Posture of the Case at the Time that the Settlement was Reached**

As the Court is aware, the parties engaged in multiple settlement conferences with Judge Dohnal, mediation with a JAMS mediator, a retired Judge, in Washington D.C., counsel-to-counsel mediation conferences, and countless informal exchanges which extended far beyond the simple negotiation of a dollar amount to be paid into the common fund.  It was only after this Court ordered the production of the collection logs of every American Express account, and certified a litigation class that the mediation efforts began to gain serious traction.  At the time that the parties reached agreement on the material terms of settlement, the Plaintiffs had already retained Rust Consulting to begin compiling the class list, and the parties were in the midst of behind the scenes litigation regarding the form and content of the notice to be provided to the members of the certified class.  As noted below, all of this only occurred after significant discovery had been taken, including multiple depositions of the Defendant's employees,

collectors, managers, and even two depositions of its general counsel, Mr. Van Nest.  In short,

settlement of this case only took place after two years of litigation had transpired, a class had

been certified, and multiple mediation efforts had taken place.  This factor weighs highly in favor

of the fairness of the settlement.

### b.  The Extent of the Discovery that had been Conducted

The Court is also aware of the significant motions practice that took place in this case.

The parties had several discovery hearings before Judge Lauck and another before this Court.

The parties engaged in significant briefing regarding the Defendant's efforts to subpoena

Plaintiff Cappetta's medical records.   This resulted in the issuance of a protective order and a

thorough memorandum opinion from this Court regarding the scope of permissible discovery

from third party medical providers related to emotional distress claims.   Plaintiff also issued

multiple sets of discovery, including a notice of site inspection that the Defendant moved to

prevent.  Ultimately, after significant motions practice which necessitated the hiring of an expert

witness, the site inspection went forward.  Following this, the Court ordered and the Defendant

ultimately produced the account records related to approximately 175,000 American Express

accounts that GC Services had recently collected upon.  Together with the GC Services internal

policy and procedures manuals, and the contents of the Paurich laptop, the Defendant produced

more than 7 million pages of documents in this case.

Plaintiffs counsel reviewed literally every single page of every single document produced

from the Paurich laptop, categorized them, flagged them for follow-up discovery and took an

additional deposition of Ms. Paurich with regard to their content.  Plaintiffs also spent an

extensive amount of time culling through the GCS account records and after writing several

search algorithms, they were ultimately able to determine the exact accounts for which the

Defendants had viewed various types of Experian reports, and in many cases, the consumer who was the subject of such reports, enabling Plaintiff's counsel to contact the consumer and verify directly from the source that the consumer's Experian report reflected that the Defendant had accessed it.  Given the facts and posture of the case, Plaintiffs' discovery was more than adequate to determine the strength of his case and thus constructively and fairly participate in settlement negotiations.

<strong>c. The Circumstances Surrounding the Negotiations</strong>

Settlement was reached only after significant litigation, discovery and mediation conferences.  The parties engaged in an early mediation conference before Judge Dohnal, and then later, with a JAMS mediator in Washington D.C.   Following the various post-certification motions filed by the Defendants, the parties then re-engaged with Judge Dohnal over a 2 week period, after which they agreed to the establishment of a common fund for the benefit of the class members.

The Parties fairly reached the Settlement.  The facts and legal issues in the case – (1) whether the Defendant's access of various Experian reports violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, *et seq*., and (2) whether such alleged violations were willful – were both the subject of significant motions practice and discovery. An arms-length negotiation process as in the present instance, before a federal magistrate judge and a JAMS mediator more than satisfies the requirement that the settlement not be one brokered through "collusion or coercion."  *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005); *Weiss v. Regal Collections*, 2006 WL 2038493 (D.N.J. July 19, 2006).

<strong>d. Class Counsel's Experience in the Area of Consumer Class Action Litigation</strong>

Class counsel also satisfies the procedural fairness requirement of competent representation.  Consumer Litigation Associates has extensive class litigation experience, both inside and outside of this District.   Both Mr. Erausquin and Mr. Bennett have been appointed as lead class counsel by numerous federal courts, including this one, in approximately 40 class cases over the past decade.  They are one of only three firms to have tried an FCRA case to a successful verdict in this District.  Their co-counsel, Richard Rubin, is widely regarded as one of the nation's leading consumer advocates, particularly with regard to the Fair Credit Reporting Act and Fair Debt Collection Practices Act.  He has argued numerous appellate cases under these two statutes and wrote much of the leading treatises on the same published by the National Consumer Law Center.  Rubin Affidavit, Exhibit 2

### 4.    An Analysis of the *Jiffy Lube* Factors Demonstrates that the Settlement is Adequate

The Court must also determine whether the proposed class settlement is substantively "adequate", the second prong of the *Jiffy Lube* analysis.   The Fourth Circuit's decision in *Jiffy Lube* teaches that the adequacy inquiry is guided by evaluating:  (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.   Jiffy Lube, 927 F.2d at 159.

### a.    The Strengths of the Case on the Merits

Plaintiffs have at all times believed that this case was very strong in many regards – basic liability, jury appeal, the characteristics of the named Plaintiffs, the fact that Experian has at all

times considered the reports at issue as "consumer reports" regulated by the Fair Credit

Reporting Act, and that the Defendant would arguably be precluded by the self-executing

provisions of Rule 37(c) from introducing any evidence to demonstrate that its access of these

reports was accidental, given that it failed to produce the same in discovery.   At the time that the

parties reached a resolution, it was becoming more likely that new class cases defined

geographically would be filed against the Defendant in Oklahoma, Missouri and California.

**b.**     **The Existence of any Difficulties of Proof or Strong Defenses**

Conversely, the Defendant continued to maintain arguments that some supplemental

cardholders may have made charges on the accounts at issue, and certainly some did.  This Court

has heard from both sides on this issue, including Plaintiffs' arguments as to why this fact is a

red herring, particularly in light of the Ninth Circuit's decision in the *Pintos* decision which

holds that not all "debts" are "credit transactions" sufficient to permit a collector to access that

consumer's credit file.   However, as a practical matter, a jury might be persuaded that the

Defendant at least believed that it was legally entitled to access these reports, particularly when

very few courts have weighed in on the issue.  It would thus be conceivable that a jury could find

that the Defendant violated the Fair Credit Reporting Act, but did so only negligently.  Such a

finding would preclude the class members from recovering statutory or punitive damages at all.

**c.**     **The Anticipated Duration and Expenses of Additional Litigation**

The determination as to when the appropriate time to settle a case is one that is entrusted

to experienced class counsel.  It is often difficult to transition off of a litigation track that is

focused on an upcoming trial and meeting the various burdens of proof to a mindset that

considers that every case – no matter how conceivably strong it may seem – will always have an

element of risk at its core.   Settlement is the only outcome that allows both sides to assure themselves of a certain ending to the litigation, alleviating both the risk and cost inherent in further litigation to both sides, as well as the additional burden on the Court.   This case was no exception, and in fair consideration of the strengths and weaknesses (as well as with significant encouragement from Magistrate Judge Dohnal), Plaintiffs' counsel felt that settlement was appropriate at this juncture.   The old adage, "a bird in hand is worth two in the bush" applies with particular force in this case.   *See Cardiology Associates, P.C. v. National Intergroup, Inc.,* 1987 WL 7030, at *2 (S.D.N.Y. 1987) (concluding that because continued prosecution of the action would have been expensive and time-consuming, and would have involved substantial risks, "it [was] not unreasonable for the plaintiff class to take a 'bird in the hand' "); *Alvarado Partners, L.P. v. Mehta*, 723 F.Supp. 540, 547 (D.Colo. 1989) (noting that "[i]t has been held prudent to take 'a bird in the hand instead of a prospective flock in the bush' " in weighing the value of an immediate recovery against "the mere possibility of future relief after protracted and expensive litigation") (quoting *Chas. Pfizer & Co.*, 314 F.Supp. at 740)."   *In re Microstrategy, Inc. Securities Litigation,* 148 F.Supp.2d at 667.

By its terms, the settlement provides substantial monetary consideration to all class members that filed a claim form.   Additionally – while it does not concede liability – the Defendant has agreed to stop using the Experian products that were at the heart of this case.   This agreement benefits not only the claimants, but also other class members who are currently the subject of collection efforts by GC Services, or who may find themselves in contact with GC Services in the future.   These benefits realized by the class members immediately are significant, particularly given the time value of money.   A dollar realized today is worth considerably more than the same dollar finally collected years later, even assuming the success on the merits and on

appeal, and the ability to collect any judgment that was rendered.  This factor weighs in favor of the adequacy of the settlement.

> **d.      The Solvency of the Defendant and the Likelihood of Recovery on a Litigated Judgment**

The Defendant is this case is worth considerably more than any judgment that might realistically have been rendered and upheld on appeal, at least for the Virginia-only class, particularly when the Court considers the value of any insurance policies which might provide coverage for these claims.  This factor does not heavily weigh for or against the adequacy of the settlement.

> **e.      The Degree of Opposition to the Settlement**

It is telling that despite the confirmed delivery of 51,294 notices, not a single class member has made an objection.  Only 176 class members (0.3%) have asked to be excluded from the settlement.  In contrast, 5,946 class members (11.6%) have filed claims.  "Such a lack of opposition to the partial settlement strongly supports a finding of adequacy, for '[t]he attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court.'  *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir.1975)."  *Id.* at 668.  As Judge Ellis has previously explained, "[b]ecause "the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy," the lack here of any objections to the partial settlement and the small number of class members choosing to opt-out of the case strongly compel a finding of adequacy. *Sala v. National R.R. Passenger Corp.,* 721 F. Supp. 80, 83 (E.D. Pa. 1989)."  *Id.*

> **B.      The Court should Approve the Request for an Award of Incentive Payments, Attorneys Fees and Reimbursement of Expenses**

1.      **The Court should Award Incentive Payments to the Class Representatives**

The Court should also approve the modest incentive or service awards for the named Plaintiffs.  The Settlement will provide each Plaintiff with an incentive award of $5,000 for their service as a named class representative.  Each such representative, particularly Pamela Cappetta, took an active role in the case, participated in the drafting of the factual sections of the pleadings, and reviewed and responded to discovery where appropriate.  Particularly in light of historical incentive awards both within and outside this District, the incentive awards sought are appropriate.  *See e.g. Staton v. Boing Co*., 327 F.3d 938, 976-77 (9th Cir. 2003); *In re Bancorp Litig*., 291 F.3d 1035, 1038 (8th Cir. 2002); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

2.      **The Court should Award Attorneys' Fees Using the Percentage of Fund Method**

The Supreme Court has consistently calculated attorneys' fees in common funds cases on a percentage-of-the-fund basis.  *See Sprague v. Ticonic Nat'l* Bank, 307 U.S. 161, 165-67 (1939); *Boeing Co.,* 444 U.S. at 478-79; *Blum v.* Stenson, 465 U.S. 886, 900 n. 16 (1984); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney* Fees, 108 F.R.D. 237, 242 (Oct. 8, 1985)(noting that fee awards in common funds cases have historically been computed based on a percentage of the fund).  The Supreme Court has never adopted the lodestar method over the percentage of recovery method in a common fund case, even when lower federal courts began using the lodestar approach in the 1970s.  *See Shaw v. Toshiba Am. Info. Sys.,Inc.* 91 F. Supp. 2d 942, 943 (E.D. Tex. 2000); *see also Manual for Complex Litigation (Third)* § 24.121 at 210 (2003).

Since *Blum,* virtually every Circuit Court of Appeals has joined the Supreme Court in affirmatively endorsing the percentage of recovery method as an appropriate method for determining an amount of attorneys' fees in common fund cases. *See In re GMC*, 55 F.3d at 821-22; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002); *In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.,* 56 F.3d 295 (1st Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 515-16 (6th Cir. 1993); *Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993); *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 49 (2d Cir. 2000).

In the Fourth Circuit, attorneys' fees in common fund cases such as this one are almost universally awarded on a percentage-of-the-recovery basis. *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007); *see DeLoach v. Philip Morris Cos*., No. 00-1235, 2003 WL 23094907, at *3 (M.D.N.C. Dec. 19, 2003) (citing, with approval for this same proposition, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003)); *see also Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) ("Although the Fourth Circuit has not yet ruled on this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases.").

The Fourth Circuit has not established a benchmark for fee awards in common funds cases, but district courts within the Fourth Circuit have noted that most fee awards range from 25 percent to 40 percent of the settlement fund. Percentage-fee awards are exactly what the name suggests—class counsel fees are determined as a percentage of the total settlement fund. This Court has recognized the importance of incentivizing experienced class counsel to take on risky

cases. *See, e.g., In Re Microstrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001). In fact, a comprehensive study of attorneys fees in class action cases notes "a remarkable uniformity in awards between roughly 30% to 33% of the settlement amount." Theodore Eisenberg and Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES 27, 31, 33 (2004). This holds true even in instances where the class recovery runs into the hundreds of millions of dollars. *See, e.g., In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 295 (1st Cir. 1995) (approving award of thirty percent of $220 million); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1136 (W.D. La. 1997) (awarding thirty-six percent of $125 million). *In re US Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving award of 36% of $3.5 million settlement fund); *Gwozdzinnsky v. Sandler Assoc.*, 159 F.3d 1346, 1346 (2d Cir. 1998) (affirming district court's award of 25% of $1 million common fund); *In re Educ. Testing Serv.*, 447 F. Supp. 2d at 631 (concluding the customary fee award for class actions "is between 22% and 27%"); *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *1 (E.D. Mich. June 27, 2006) (awarding fee of 28.5% of $28 million settlement fund); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (awarding 25% of $80 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (granting attorneys fees in amount of 33 1/3% of $1.5 million settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33.3% of $3.8 million settlement fund); *Kidrick v. ABC Television & Appliance Rental*, No. 3:97CV69, 1999 WL 1027050, at *1-2 (N.D. W. Va. May 12, 1999) (awarding 30.6% of approximately $400,000 settlement fund, noting that "[a]n award of fees in the range of 30% of the fund has been held to

be reasonable. . . . Fees as high as 50% of the fund have been awarded.") (internal citations omitted).

In this case, the Defendants agreed not to oppose Class Counsel's fee request of up to 30% of the full common fund.   As with any class case that they agree to take on, Plaintiffs' counsel live by the result that they obtain for the class members.[1]   In this case, where they bore the risk of the litigation entirely and advanced significant funds in furtherance of the litigation, Class Counsel submits that a 30% award is reasonable, particularly after nearly three years of litigation in a fiercely fought case.

Class counsel in this case took the entirety of the risk of the litigation on their shoulders, spending nearly three years litigating the case to this conclusion.  As several of the largest FCRA class settlements were litigated and approved in Virginia, the Court is in a position to compare the potential attorneys' fees in this case with those approved in two recent Virginia FCRA cases settled on a class basis.   *Williams v. Lexis Nexis Risk Management*, Civ. No. 3:06cv241 (E.D. Va.  2008)(J. Payne) (Approving a 27.5% of fund fee, in a settlement with a $22 million common fund); *Beverly v. Wal-Mart Stores, Inc*, 3:07-cv-469 (E.D. Va.  May 1, 2009) (Williams) (Approving a 27.5 percentage of fund fee in a settlement with a $6.89 million common fund).  Prior to the first of these settlements, the largest FCRA class settlement was *Clark v. Experian, et al.,* 2004 WL 256433 (D.S.C. 2004)[2], a settlement in which no money was

---

[1] In fact, Plaintiffs' lead counsel, Mr. Bennett and Mr. Erausquin, have remained unwavering in their fee requests as a percentage of the recovery in other class settlements.  For example, both attorneys were also lead counsel in the *Conley v. First Tennessee* class settlement mediated by Magistrate Judge Anderson in Alexandria last month. During the mediation, Plaintiff's counsel disclosed up front that they would not ask for the larger hourly recovery and instead would be compensated based on the cash benefit produced. The same position was taken in *Mayfield v. Memberstrust Credit Union,* 3:07cv506 (November 7, 2008), in which after a small class size was established, the percentage of fee recovery was $8,300, significantly below the actual time in the case.  Class counsel believe that their compensation should always be dependent upon and tied to producing a benefit to their clients, the members of the class.

[2] *Clark* involved the improper reporting of "included in bankruptcy" account notations on the credit reports of co-obligors who had not filed for bankruptcy themselves.

24

paid to the class with $15 million in attorneys fees approved (after only four depositions, one

round of discovery and limited motions practice).  The benefit to justify such a fee was simply

the injunctive relief and remedial changes to the manner in which each national consumer

reporting agency would furnish class member credit reports.[3]  In contrast, despite the greater

success for the Class in this case, Plaintiffs' counsel would be bound to seek only a proportionate

recovery and a percentage below each of these previous cases.  In this case, and in all cases in

which Plaintiffs' counsel will come before this Court, they submit that the proper measure of

compensation should be driven by the benefit actually obtained for the class members.  Because

Class Counsel's requested fee is reasonable under the circumstances of this case and the

applicable law, the Court should award it.

> **3.     The Court should Approve the Request for Reimbursement of Expenses**

Class counsel have also advanced $51,653.74 in furtherance of the litigation in this case,

and ask that the Court approve their request for reimbursement of the same.  Erausquin Decl.,

Exhibit 3.  These funds were expended only for litigation costs that were deemed to be critical to

bringing the case to this conclusion. The primary expenditures included transcripts, copies of

video depositions, and the cost to hire an expert witness who flew to Texas to conduct a site

inspection of the Defendant's mainframe computer system.  The Plaintiffs submit that each of

the expenses itemized in Exhibit 3 were necessarily incurred in furtherance of the prosecution of

this case, and they ask that the Court reimburse these to Class Counsel.

> **C.     The Court Should Grant Final Approval to the Settlement, and Certify a Settlement Class**

---

[3] Present Class counsel, Mr. Bennett, appeared in the case as lead objectors' counsel.  He was successful in forcing some changes to the settlement, but despite objection, he was unable to prevent the payment of such a large fee to the attorneys to the exclusion of the class.

In summary, the Parties have reached a settlement in this case that provides genuine relief to the class members.  The settlement is an excellent result considering the contentiousness of the litigation, the amount of money that will be paid to each claimant, and the fact that this case provided the impetus for the Defendant's agreement to cease the use of the Experian products at issue in the future.  Each class member that filed a claim form is entitled to a cash award of at least $300.00 as a result of the settlement, regardless of whether they were aware that the Defendants' conduct violated the FCRA, whether they knew that their credit file had been accessed or whether they suffered actual harm.  In addition, the terms of the Settlement as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal satisfy the Fourth Circuit's strictures for final approval.  The Plaintiffs respectfully move that the Court grant their motion for final approval of this settlement and order an award of incentive payments, attorneys fees and the reimbursement of their costs as requested herein.

Respectfully submitted**,**
**PAMELA CAPPETTA, JAMES THOMAS, and LYNN LESTYK**
*for themselves and on behalf of all similarly situated individuals*


_____/s/_____
Matthew J. Erausquin, VSB No. 65434
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
(703) 273-7770 - Telephone
(888) 892-3512 – Facsimile
matt@clalegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of April, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

**Brian Brooks**
O'Melveny & Myers LLP (DC-NA)
1625 Eye Street NW
Washington, DC 20006
202-383-5127
202-383-5414 (fax)
bbrooks@omm.com

**David Matthew Schultz**
Hinshaw & Culbertson LLP
222 N LaSalle St
Suite 300
Chicago, IL 60601
312-704-3527
312-704-3001 (fax)
dschultz@hinshawlaw.com

**Charles Michael Sims**
LeClairRyan, A Professional Corporation
PO Box 2499
Richmond, VA 23218-2499
(804) 783-2003
charles.sims@leclairryan.com


_____/s/_____
Matthew J. Erausquin, VSB No. 65434
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
(703) 273-7770 - Telephone
(888) 892-3512 – Facsimile
matt@clalegal.com